EXHIBIT A

Ross C. Anderson (#0109)
LAW OFFICES OF ROCKY ANDERSON
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, Utah 84111
Telephone: (801) 349-1690
Fax: (801) 349-1682
rocky@andersonlawoffices.org

*Attorney for Plaintiffs*

---

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| CALVIN DONALD OSTLER, individually and as personal representative of the Estate of Lisa Marie Ostler, KIM OSTLER, and the minor children of Lisa Marie Ostler, CALVIN KENGIKE, ELIZABETH LAVINIA KENGIKE, and LILLY MARIE OSTLER, through their adoptive parents and next friends, CALVIN DONALD OSTLER and KIM OSTLER, | |
| Plaintiffs, | **PLAINTIFFS' FIRST SET OF INTERROGATORIES** |
| v. | |
| HOLLY PATRICE HARRIS, ZACHARY PAUL FREDRICKSON, TODD ALLAN BOOTH, TODD RANDALL WILCOX, M.D., RONALD PAUL ROUBIDOUX, COLBY GREY JAMES, BRENT LEE TUCKER, JAMES M. WINDER, PAM LOFGREEN, and SALT LAKE COUNTY, a political subdivision of the State of Utah, | Case No. 2:18-cv-00254-001 Judge Bruce S. Jenkins |
| Defendants. | |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that Defendants serve upon the undersigned attorney answers, under oath, to each of the following interrogatories within thirty (30) days of service hereof.

## DEFINITIONS

1.      "Document" is synonymous in meaning and equal in scope to its usage in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure, which states "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form" or any designated tangible things, or entry onto land or other property.

2.      "Defendants," "You," or "Your" shall mean the Defendants listed in the caption.

3.      "Person" means any natural person or any legal entity, including but not limited to any business or governmental entity, organization or association.

4.      "Jail Staff" means any person who provided services at the Salt Lake County Metro Jail at any time as an officer, agent, or employee of Salt Lake County, any of its subdivisions, or any person contracting with Salt Lake County or any of its subdivisions.

5.      "Incarcerated Person" means any person confined, at any time and for any reason, at Salt Lake County Metro Jail.

6.      "Serious Medical Event" shall mean any event that resulted in death, was life threatening, required inpatient hospitalization, prolonged an inpatient hospitalization, resulted in a persistent or significant disability or reduction in capacity, or required timely intervention to prevent permanent impairment or damage.

7.     "Wellcon" shall mean WELLCON, INC., a Utah registered S-Corporation, and shall include all officers, managers, employees, agents, partners, and affiliates of WELLCON, INC.

8.     "Relate" or "relating" means consisting of, referring to, reflecting, concerning or being in any way logically or factually connected with the matter discussed.

9.     "Communication" means the transmission of information or data in any form including, without limitation, written, oral, or electronic transmissions.

10.     "Identify" with respect to a person means to give, to the extent known, the person's (a) full name; (b) current or last known home and business address; (c) current or last known home and business telephone number; (d) current or last known place of employment; (e) job title; (f) job description; and (g) any other contact information, including any other information for any person identified as an emergency or other contact person.

11.      "Identify" with respect to a document means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Rule 33 of the Federal Rules of Civil Procedure.

12.     "Identify" with respect to communications means to give, to the extent known, (a) a description of the substance of the communication; (b) the form of the communication (e.g., telephone, facsimile, e-mail); (c) the identity of all parties to and/or present at the time of the communication, as well as the full name, present or last known address, and the current or last known place of employment of each person; (d) the identity of the person whom you contend initiated the communication; and (e) the time, date and place of the communication.

13.    The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the request all responses that might otherwise fall outside the scope of this request.

14.    The terms "all," "any" or "each" encompass any and all of the matters discussed.

15.    The use of singular form includes plural, and vice versa.

16.    The use of present tense includes past tense, and vice versa.

## INSTRUCTIONS

1.    Each interrogatory is to be answered fully based on information in your possession, custody, or control, or in the possession, custody, or control of your representatives, agents, or attorneys.

2.    If you object to any interrogatory or any portion of an interrogatory on the ground that the answer reflects or would reveal the substance of a privileged communication, identify:

    a.    the nature of the privilege claimed;

    b.    the person who made the communication, whether oral or in writing;

    c.    if the communication was oral, all persons present while the communication was made;

    d.    if the communication was written, the author, addressees, and any other recipients;

    e.    the relationship of the author of the communication to each recipient;

    f.    the relationship of the persons present to the person who made the communication;

    g.    the date and place of the communication; and

    h.    the general subject matter of the communication.

3.    Unless otherwise specified in any of the interrogatories below, these interrogatories cover the time period from ten years prior to March 29, 2016, to the present.

4.      These interrogatories are continuing in nature. If you receive or otherwise become aware of information responsive to any interrogatory after you have served your answers to these interrogatories, you must promptly supplement your answers to these interrogatories to provide such information, as required by Federal Rule of Civil Procedure 26(e).

5.      Answers to these interrogatories shall be served upon the undersigned attorneys within thirty (30) days of service of these interrogatories.

6.      The response to these interrogatories must repeat in full each request to which response is made, and the responding party must also number sequentially each request to which response is made as required by District of Utah Civil Rule 26-1(a).

## <u>INTERROGATORIES</u>

**INTERROGATORY NO. 1:** Identify all Jail Staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.

**INTERROGATORY NO. 2:** For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited to, all failures to act, all information reviewed, all communications made or received, all medical decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.

**INTERROGATORY NO. 3:** Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C.

**INTERROGATORY NO. 4:** Describe in detail the relationship between Salt Lake County Metro Jail or Salt Lake County and Wellcon, including, but not limited to, the services provided by Wellcon, the manner in which compensation to Wellcon is determined, what types of decisions Wellcon is authorized to make, what information is reported by Wellcon, and what information is communicated between Salt Lake County Metro Jail and Wellcon pertaining to medical treatment.

**INTERROGATORY NO. 5:** Identify all communications that occurred from and including March 29, 2016, through and including April 2, 2016, between Wellcon and any Jail Staff.

**INTERROGATORY NO. 6:** Describe in detail all changes within the last ten years to policies, whether written or unwritten, applicable to the medical diagnosis, evaluation, monitoring, and treatment of persons incarcerated at Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Health Services Unit Polices and Procedures, the Salt Lake County Jail Policy Manual, and any other policy, practice, pattern, or custom.

**INTERROGATORY NO. 7:** Describe in detail each instance of conduct or inaction relating to Lisa Marie Ostler by any employee or agent of Salt Lake County, including any person associated with Wellcon, Inc., that violated any policy applicable to the Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Policy Manual, Salt Lake County Jail Health Services Unit Policies and Procedures, and any other applicable policy, practice, or procedure, whether written or unwritten, and identify each policy that was violated.

**INTERROGATORY NO. 8:** Identify all Incarcerated Persons who had a Serious Medical Event in the Salt Lake County Metro Jail in the last 10 years, pursuant to an appropriate protective order if required, including, but not limited to, Incarcerated Persons who died in custody in Salt Lake County Metro Jail, were released from Salt Lake County Metro Jail for medical reasons, or were transported from the Salt Lake County Metro Jail to any hospital or medical facility.

**INTERROGATORY NO. 9:** For each person identified in response to Interrogatory No. 8, pursuant to an appropriate protective order if required, describe in detail the Serious Medical Event, including, but not limited to, the following, if applicable: the dates on which symptoms were reported, to whom the symptoms were reported, what those symptoms were, what diagnoses were made, on what date each diagnosis was made, who made each diagnosis, what treatment was provided, when each treatment was provided, who provided each treatment, all referrals for medical treatment, all transfers to medical units or medical facilities, the medical outcome, and the cause of death.

**INTERROGATORY NO. 10:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person does not eat one or more meals.

**INTERROGATORY NO. 11:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person requests medical assistance, whether formally or informally, whether for herself or for another person.

**INTERROGATORY NO. 12:** Describe in detail any way in which the conduct of any agent of Salt Lake County, including all employees, all officers, all of the individually named Defendants, and all persons affiliated with Wellcon, deviated from the practices or policies described in response to Interrogatories 10 and 11.

**INTERROGATORY NO. 13:** For each instance in the last 10 years in which an Incarcerated Person was known to have not eaten for a period that extended for at least three consecutive meals, pursuant to an appropriate protective order if required, describe in detail the response by Salt Lake County and its agents, officers, and employees, including, but not limited to, all medical evaluations performed, all diagnoses made, and all referrals for treatment made.

**INTERROGATORY NO. 14:** Describe in detail all training provided to each of the individually named Defendants, including, but not limited to, all academic degrees earned, all

certificates awarded, and all vocational training programs completed at any time and all training provided within the last ten years in connection to the individual's employment.

**INTERROGATORY NO. 15:** Describe in detail the job description for the positions held by each of the individually named Defendants for the period of March 29, 2016, to April 2, 2016, including, but not limited to, the position's supervisory responsibilities, duties to respond to requests for medical treatment, duties to provide medical treatment, duties to make referrals for medical treatment, and duties to monitor or evaluate the health and safety of people incarcerated at Salt Lake County Metro Jail,

**INTERROGATORY NO. 16:** Describe in detail the supervisory duties, including what persons or entities are responsible for each aspect of the supervision, of the Salt Lake County Metro Jail, including, but not limited to, the implementation and establishment of policies and procedures applicable to the Salt Lake County Metro Jail and the supervision and training of officers, agents, and employees assigned to work at the Salt Lake County Metro Jail.

**INTERROGATORY NO. 17:** Describe in detail all evidentiary bases for Defendants' denials of the factual assertions in each of the paragraphs of Plaintiffs' Complaint that were denied in their entirety.

**INTERROGATORY NO. 18:** Describe in detail all disciplinary investigations or decisions by any body, whether or not the investigation ultimately resulted in disciplinary action, regarding any of the individually named Defendants.

**INTERROGATORY NO. 19:** Describe in detail all requests that were made by any person to any of the Defendants, including their employees and agents, for Lisa Marie Ostler to receive medical evaluation or assistance.

**INTERROGATORY NO. 20:** Describe in detail all responses, including communications to Lisa Marie Ostler, by Defendants, including their employees and agents, to requests for Lisa Marie Ostler to receive medical evaluation or treatment.

**INTERROGATORY NO. 21:** Describe in detail any evidence or facts that support Defendants' Fifth Affirmative Defense that "Lisa Ostler's own conduct, or that of others, illegal and otherwise, and Ms. Ostler's own contributory negligence and/or affirmative acts, directly caused or contributed to Plaintiffs' alleged injuries."

**INTERROGATORY NO. 22:** Describe in detail the exact sequence of events at the Salt Lake County Metro Jail from April 29, 2016, until April 2, 2016, involving Lisa Marie Ostler.

**INTERROGATORY NO. 23:** Describe in detail the policies and practices implemented at the Salt Lake County Metro Jail relating to discharging from confinement injured or ill Incarcerated Persons to be taken to a hospital or other medical facility.

DATED this 23rd day of August 2018.

/s/ Ross C. Anderson
Ross C. Anderson (#0109)
LAW OFFICES OF ROCKY ANDERSON
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, Utah 84111
Telephone: (801) 349-1690
Fax: (801) 349-1682
rocky@andersonlawoffices.org

*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on August 23, 2018, a true and correct copy of *Plaintiffs' First Set of Interrogatories* was delivered by electronic mail to the following:

jmramos@slco.org

Jacque M. Ramos
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111

Attorney for Defendants

 /s/ Walter M. Mason
Walter M. Mason
Law Clerk
LAW OFFICES OF ROCKY ANDERSON
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, Utah 84111
Telephone: (801) 349-1690
Fax: (801) 349-1682

EXHIBIT B

Ross C. Anderson (#0109)
LAW OFFICES OF ROCKY ANDERSON
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, Utah 84111
Telephone: (801) 349-1690
Fax: (801) 349-1682
rocky@andersonlawoffices.org

*Attorney for Plaintiffs*

---

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| CALVIN DONALD OSTLER, individually and as personal representative of the Estate of Lisa Marie Ostler, KIM OSTLER, and the minor children of Lisa Marie Ostler, CALVIN KENGIKE, ELIZABETH LAVINIA KENGIKE, and LILLY MARIE OSTLER, through their adoptive parents and next friends, CALVIN DONALD OSTLER and KIM OSTLER, | |
| Plaintiffs, | **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| v. | |
| HOLLY PATRICE HARRIS, ZACHARY PAUL FREDRICKSON, TODD ALLAN BOOTH, TODD RANDALL WILCOX, M.D., RONALD PAUL ROUBIDOUX, COLBY GREY JAMES, BRENT LEE TUCKER, JAMES M. WINDER, PAM LOFGREEN, and SALT LAKE COUNTY, a political subdivision of the State of Utah, | Case No. 2:18-cv-00254-001<br><br>Judge Bruce S. Jenkins |
| Defendants. | |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that Defendants respond to the following request for production of documents within thirty (30) days of service hereof.

## DEFINITIONS

1.      "Document" includes all tangible things and is otherwise synonymous in meaning and equal in scope to its usage in FRCP 34(a)(1)(A), which states "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form."

2.      "Defendants," "You," or "Your" shall mean the Defendants listed in the caption.

3.      "Wellcon" shall mean WELLCON, INC., a Utah registered S-Corporation, and shall include all officers, managers, employees, agents, partners, and affiliates of WELLCON, INC.

4.      "Incarcerated Person" means any person involuntarily confined, at any time and for any reason, at Salt Lake County Metro Jail.

5.      "Person" means any natural person or any legal entity, including but not limited to any business or governmental entity, organization or association.

6.      "Relate" or "relating" means consisting of, referring to, reflecting, concerning or being in any way logically or factually connected with the matter discussed.

7.      "Communication" means the transmission of information or data in any form including, without limitation, written, oral, or electronic transmissions.

8.      The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the request all responses that might otherwise fall outside the scope of this request.

9.      The terms "all," "any" or "each" encompass any and all of the matters discussed.

10.     The use of singular form includes plural, and vice versa.

11.     The use of present tense includes past tense, and vice versa.

## INSTRUCTIONS

1.      All objections to the production of documents requested herein shall be made in writing and delivered to the Law Offices of Rocky Anderson at Eight East Broadway, Suite 450, Salt Lake City, Utah, on or before the date set for production.

2.      All documents are to be produced as they are kept in the usual course of business including any labels, file markings or similar identifying features, or shall be organized and labeled to correspond to the categories requested herein. If there are no documents in response to a particular request, or if you withhold any responsive documents or categories of documents based on any objections, you shall state so in writing.

3.      Electronically stored information (ESI) must be produced on USB flash drive or CD in its original native format including its accompanying metadata. For example:

> (a)     documents created using Microsoft Word must be produced as .DOC or .DOCX files and

> (b)     emails must be produced in a form that readily supports import into standard email client programs, or the form of production should adhere to the conventions set out in the internet email standard.

4.      These requests call for the production of all responsive documents in your possession, custody or control, or in the possession, custody or control of your employees, predecessors, successors, parents,  subsidiaries,  divisions,  affiliates,  partners,  brokers,  accountants,  financial  advisors,

3

representatives, and agents or other persons acting on your behalf, without regard to the physical location of such documents.

5.    In responding to these requests, include documents obtained on your behalf by your counsel, employees, agents or any other persons acting on your behalf. If your response is that the documents are not within your possession or custody, describe in detail the unsuccessful efforts you made to locate each such document. If your response is that documents are not under your control, identify who has control and the location of the documents.

6.    If any document was, but no longer is, in your possession, subject to your control or in existence, include a statement:

      (a)    identifying the document;

      (b)    describing where the document is now;

      (c)    identifying who has control of the document;

      (d)    describing how the document became lost or destroyed or was transferred; and

      (e)    identifying each of those persons responsible for or having knowledge of the loss, destruction or transfer of the document from your possession, custody or control.

7.    Each request contemplates production of all documents in their entirety. If only a portion of a document is responsive to one or more requests, the document shall be produced in its entirety.

8.    If any document is withheld in whole or in part for any reason including, without limitation, a claim of privilege or other protection from disclosure such as the work product doctrine or other business confidentiality or trade secret protection, set forth separately with respect to each withheld document:

      (a) the ground of privilege or protection claimed;

      (b) every basis for the privilege or protection claimed;

      (c) the type of document;

(d) its general subject matter;

(e) the document's date; and

(f) other information sufficient to enable a full assessment of the applicability of the privilege or protection claims, as required by Rule 26(b)(5) of the Federal Rules of Civil Procedure, the court's local rules and the judge's individual practice rules.

9.      If the Defendants object to any document request on any ground other than privilege, the Defendants must specify:

> (a)      the part of the request that is objectionable and respond and allow inspection of materials responsive to the remainder of the request; and
>
> (b)      whether any responsive materials are being withheld on the basis of an objection.

10.     To the extent the Defendants assert that a document contains information that should be protected from disclosure (based on the attorney-client privilege, work product doctrine or another protection) and non-privileged information, the non-privileged portions of the document must be produced. For each such document, indicate the portion of the document withheld by stamping the words "MATERIAL REDACTED" on the document in an appropriate location that does not obscure the remaining text.

11.     If there are no documents in response to any particular request, the Defendants shall state so in writing.

12.     Unless otherwise stated herein, all documents requested cover the time period from ten years prior to March 29, 2016, through and including the present.

13.     Requests for production should be read so as to encompass any and all items responsive to the request.

14.     These requests are continuing, and the Defendants' response to these requests must be promptly supplemented when appropriate or necessary in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

15.     The response to these requests for production of documents must repeat in full each request to which response is made, and the responding party must also number sequentially each request to which response is made as required by District of Utah Civil Rule 26-1(a).

## DOCUMENTS REQUESTED

**DOCUMENT REQUEST NO. 1:** All Documents consisting of, containing, or referencing medical records pertaining to Lisa Marie Ostler, including mental health records and records of diagnoses, interviews, screenings, monitoring, medications, medical decisions, triage, requests for treatment, and treatment.

**DOCUMENT REQUEST NO. 2:** The complete Salt Lake County Jail Health Services Unit Policies and Procedures that were in effect on April 2, 2016.

**DOCUMENT REQUEST NO. 3:** The complete Salt Lake County Jail Policy Manual in effect on April 2, 2016.

**DOCUMENT REQUEST NO. 4:** All Documents reflecting any changes, suggested or proposed, orally or in writing, by anyone, whether or not implemented, in the policies, written or unwritten, of the Salt Lake County Metro Jail since April 2, 2016.

**DOCUMENT REQUEST NO. 5:** All Documents relating to any video recordings of Lisa Marie Ostler, including, but not limited to, her intake and booking on March 29, 2016, to March 30, 2016, and her incarceration in the Salt Lake County Metro Jail and including, but not limited to, the video recordings themselves, all communications about the video recordings, all Documents reflecting any maintenance logs, control logs, or access logs pertaining to the video recordings and the video recording

equipment, and all Documents identifying who viewed, maintained, deleted, or destroyed any video recordings.

**DOCUMENT REQUEST NO. 6:** All Documents reflecting the relationship between Salt Lake County Jail and Wellcon as of April 2, 2016.

**DOCUMENT REQUEST NO. 7:** All Documents reflecting any relationship between Wellcon and the medical treatment provided, and not provided, to Lisa Marie Ostler, including all "Tiger Texts", all other communications pertaining to Lisa Marie Ostler that involved any person affiliated with Wellcon, all invoices or other billing documents that reflect payment to Wellcon for services pertaining to Lisa Marie Ostler, all Documents reflecting that persons affiliated with Wellcon provided any service or made any decision relating to providing, or not providing, medical treatment to Lisa Marie Ostler, and all records provided by Wellcon pertaining to Lisa Marie Ostler.

**DOCUMENT REQUEST NO. 8:** For all persons identified in response to Plaintiffs' Interrogatory No. 1, produce photographs of each person sufficient to identify the person based upon how he or she appeared at the Salt Lake County Jail between March 29, 2016, to April 2, 2016.

**DOCUMENT REQUEST NO. 9:** All Documents reviewed in preparing Defendants' responses to Plaintiffs' Interrogatories.

**DOCUMENT REQUEST NO. 10:** All Documents provided to any expert witness, whether the person is merely a potential expert witness or is actually designated as an expert witness, to review in the above-captioned matter.

**DOCUMENT REQUEST NO. 11:** All writings made by any agent of the Salt Lake County Jail, including all employees, the individually named Defendants, and any persons affiliated with Wellcon, that refer in any way to any part of the events of Lisa Marie Ostler's incarceration at the Salt

7

Lake County Metro Jail, her medical condition, and her death, including, but not limited to, all reports, text messages, emails, journal entries, diary entries, letters, log entries, and notes.

**DOCUMENT REQUEST NO. 12:** All Documents reflecting any disciplinary action, including disciplinary investigations and reports that did not lead to any punishment, concerning any agent of the Salt Lake County Jail, including all employees, all individually named Defendants, and Wellcon, that related to a failure to provide adequate medical treatment, medical monitoring, or referral for medical observation, diagnosis, treatment, or evaluation to any Incarcerated Person, including failure to respond to a request, made by any person, for the Incarcerated Person to receive medical treatment, diagnosis, or evaluation.

**DOCUMENT REQUEST NO. 13:** All Documents reflecting any disciplinary action, including disciplinary investigations and reports that did not lead to any punishment, concerning any agent of the Salt Lake County Jail, including all employees, all individually named Defendants, and Wellcon, that related to a failure to adequately respond when an Incarcerated Person refused or otherwise did not take one or more meals.

**DOCUMENT REQUEST NO. 14:** All Documents reflecting the training provided to staff, within the period beginning March 29, 2006, through and until the present, at Salt Lake County Metro Jail relating to inmate health, including, but not limited to, requests for medical assistance, diagnosing medical conditions, making referrals for medical treatment, monitoring health status, providing medical treatment, and responding when an inmate does not take one or more meals.

**DOCUMENT REQUEST NO. 15:** All Documents not otherwise produced that are in the Defendants' possession or control that refer in any way to Lisa Marie Ostler.

**DOCUMENT REQUEST NO. 16:** All Documents not otherwise produced that reflect any policy or procedure relied upon or implemented by any of the Defendants, including, but not limited to, documents provided by Gary DeLand or any person affiliated with him.

DATED this 23rd day of August 2018.

/s/ Ross C. Anderson
Ross C. Anderson (#0109)
LAW OFFICES OF ROCKY ANDERSON
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, Utah 84111
Telephone: (801) 349-1690
Fax: (801) 349-1682
rocky@andersonlawoffices.org

*Attorney for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

       I certify that on August 23, 2018, a true and correct copy of *Plaintiffs' First Set of Requests for Production of Documents* was delivered by electronic mail to the following:

jmramos@slco.org

Jacque M. Ramos
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111

Attorney for Defendants

                         /s/ Walter M. Mason
                        Walter M. Mason
                        Law Clerk
                        LAW OFFICES OF ROCKY ANDERSON
                        The Judge Building
                        Eight East Broadway, Suite 450
                        Salt Lake City, Utah 84111
                        Telephone: (801) 349-1690
                        Fax: (801) 349-1682

EXHIBIT C

Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email: jmramos@slco.org
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CALVIN OSTLER, et al.<br><br>                    Plaintiff,<br>v.<br><br>HOLLY PATRICE HARRIS, et al.,<br><br>          Defendants. | **DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>          Case No. 2:18-cv-00254-001<br><br><br>          Judge:  Bruce S. Jenkins |

Defendants, Holly Patrice Harris; Zachary Paul Fredrickson; Todd Allan Booth; Todd Randall Wilcox, M.D.; Colby Grey James; Brent Lee Tucker; James M. Winder; Pam Lofgreen, and Salt Lake County (collectively "Defendants"), by and through their undersigned counsel, hereby object to and provide responses to Plaintiffs' First Set of Requests for Production of Documents as follows:

<u>GENERAL OBJECTIONS:</u>

1.      Defendants object generally to Plaintiff's First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they are overly broad, compound, unduly

burdensome and purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018. In providing these responses and answers, Defendants give the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s). Additionally, Defendants do not waive their right to object to future interrogatories and/or documents requests propounded on Defendants for exceeding the obligations and number allowed pursuant to the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018.

2.      Defendants object generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or is otherwise privileged, protected or exempted from discovery under Utah or federal law.

3.      Defendants object generally to the Introduction, Instructions, and Definitions contained within Plaintiff's First Set of Interrogatories and/or First Set of Requests for Production of Documents to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure. In providing these responses and answers, Defendants give the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s).

4.      Defendants has made reasonable efforts to answer Plaintiff's First Set of Interrogatories and First Set of Requests for Production of Documents as required by the Federal Rules of

Civil Procedure; but as discovery is ongoing and the investigation continues, Defendants

hereby reserves the right to supplement or amend their responses as discovery progresses.

## DOCUMENTS REQUESTED

**DOCUMENT REQUEST NO. 1:** All Documents consisting of, containing, or

referencing medical records pertaining to Lisa Marie Ostler, including mental health records and

records of diagnoses, interviews, screenings, monitoring, medications, medical decisions, triage,

requests for treatment, and treatment.

**RESPONSE:** A complete set of medical records within the possession and control of

Defendants has been produced as part of Defendants' initial disclosures, including supplements

thereto identified as Bates Nos. SLCo Ostler 000121-214.

**DOCUMENT REQUEST NO. 2:** The complete Salt Lake County Jail Health Services

Unit Policies and Procedures that were in effect on April 2, 2016.

**RESPONSE:** Please see enclosed documents identified as Bates Nos. SLCo Ostler

001576-001762.

**DOCUMENT REQUEST NO. 3:** The complete Salt Lake County Jail Policy Manual in

effect on April 2, 2016.

**RESPONSE:** Please see enclosed documents identified as Bates Nos. SLCo Ostler

000270-001575.

**DOCUMENT REQUEST NO. 4:** All Documents reflecting any changes, suggested or proposed, orally or in writing, by anyone, whether or not implemented, in the policies, written or unwritten, of the Salt Lake County Metro Jail since April 2, 2016.

**RESPONSE:** The County objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. The County further objects to the extent this interrogatory calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, this information, Please see enclosed documents identified as Bates Nos. SLCo Ostler 000270-001995.

**DOCUMENT REQUEST NO. 5:** All Documents relating to any video recordings of Lisa Marie Ostler, including, but not limited to, her intake and booking on March 29, 2016, to March 30, 2016, and her incarceration in the Salt Lake County Metro Jail and including, but not limited to, the video recordings themselves, all communications about the video recordings, all Documents reflecting any maintenance logs, control logs, or access logs pertaining to the video recordings and the video recording equipment, and all Documents identifying who viewed, maintained, deleted, or destroyed any video recordings.

**RESPONSE:** Defendants object to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product. Defendants further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.

3

Without waiving these objections and subject to them, enclosed are 22 videos within Defendants' possession. Additionally, please see jail records previously produced as part of Defendants' initial disclosures identified as SLCo Ostler 000001 – 000120, SLCo Ostler 000215-000258.

**DOCUMENT REQUEST NO. 6:** All Documents reflecting the relationship between Salt Lake County Jail and Wellcon as of April 2, 2016.

**RESPONSE:** These documents are publicly available at

https://www.slcounty.org/sire/portal.aspx.

**DOCUMENT REQUEST NO. 7:** All Documents reflecting any relationship between Wellcon and the medical treatment provided, and not provided, to Lisa Marie Ostler, including all "Tiger Texts", all other communications pertaining to Lisa Marie Ostler that involved any person affiliated with Wellcon, all invoices or other billing documents that reflect payment to Wellcon for services pertaining to Lisa Marie Ostler, all Documents reflecting that persons affiliated with Wellcon provided any service or made any decision relating to providing, or not providing, medical treatment to Lisa Marie Ostler, and all records provided by Wellcon pertaining to Lisa Marie Ostler.

**RESPONSE:** Defendants object to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product. Defendants further objects to this interrogatory as overly broad, vague, unduly burdensome, not proportionate, and calls for expert opinions.

4

Without waiving these objections and subject to them, documents responsive to this request within Defendants' possession and control have been produced as part of Defendants' initial disclosures and these responses, including supplements thereto, including documents identified as SLCo Ostler 000001-000258. Additionally, on May 7, 2018, pursuant to Mr. Calvin Donald Ostler's GRAMA request Defendants informed Plaintiffs that TigerText is an instant messaging application that is paid for and operated by Wellcon, Inc. and its Licensed Independent Practitioners ("LIPs") under an agreement between Wellcon, Inc. and TigerText. Consequently, neither the Salt Lake County Sheriff's Office, nor the County Jail ultimately own, control or retain the subject records, it is not a record under the Government Records Access and Management Act, Utah Code § 63G-2-103(22)(a)(i). Wellcon, Inc. is not a defendant in this action. Please direct your request to Wellcon, Inc. A copy of the May 7, 2018, response is produced herewith as Bates Nos. 002100-002101.

Additionally, our present understanding is that in its default setting in TigerText automatically drops all instant messaging 5 days after being sent. Accordingly Defendants are not in possession of any records responsive to your request.

**DOCUMENT REQUEST NO. 8:** For all persons identified in response to Plaintiffs' Interrogatory No. 1, produce photographs of each person sufficient to identify the person based upon how he or she appeared at the Salt Lake County Jail between March 29, 2016, to April 2, 2016.

**RESPONSE:** Defendants objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.

Without waiving these objections and subject to them, Defendants are not in possession of photographs depicting individuals as they appeared between March 29, 2016 – April 2, 2016. However, please see Defendants' response to document request No. 5 where individuals who interacted with Ms. Ostler are depicted.

**DOCUMENT REQUEST NO. 9:** All Documents reviewed in preparing Defendants' responses to Plaintiffs' Interrogatories.

**RESPONSE:** Please see all documents produced as part of Defendants' initial disclosure or herewith as responses to Defendants' Requests for Production of Documents, including supplements thereto.

**DOCUMENT REQUEST NO. 10:** All Documents provided to any expert witness, whether the person is merely a potential expert witness or is actually designated as an expert witness, to review in the above-captioned matter.

**RESPONSE:** Defendants object to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product.

Without waiving these objections and subject to them, please see all documents produced as part of Defendants' initial disclosure or herewith as responses to Defendants' Requests for Production of Documents, including supplements thereto.

**DOCUMENT REQUEST NO. 11:** All writings made by any agent of the Salt Lake County Jail, including all employees, the individually named Defendants, and any persons affiliated with Wellcon, that refer in any way to any part of the events of Lisa Marie Ostler's

6

incarceration at the Salt Lake County Metro Jail, her medical condition, and her death, including, but not limited to, all reports, text messages, emails, journal entries, diary entries, letters, log entries, and notes.

**RESPONSE:** Defendants object to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product.

Without waiving these objections and subject to them, please see documents produced as part Defendants' initial disclosures, including documents identified as SLCo Ostler 000001 – 000258.  Additionally, please see documents produced in response to Plaintiff Calvin Ostler's GRAMA requests on April 22, 2016, February 27, 2017, November 30, 2017, March 7, 2018, March 26, 2018, May 7, 2018 and August 23, 2018.

**DOCUMENT REQUEST NO. 12:** All Documents reflecting any disciplinary action, including disciplinary investigations and reports that did not lead to any punishment, concerning any agent of the Salt Lake County Jail, including all employees, all individually named Defendants, and Wellcon, that related to a failure to provide adequate medical treatment, medical monitoring, or referral for medical observation, diagnosis, treatment, or evaluation to any Incarcerated Person, including failure to respond to a request, made by any person, for the Incarcerated Person to receive medical treatment, diagnosis, or evaluation.

**RESPONSE:** Defendants object to this request to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product. Defendants further objects to this interrogatory as overly broad, vague, unduly burdensome, and

not proportionate.  Moreover, Defendants object to the request because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions and/or expert opinion.

Without waiving theses objections and subject to them, to the best of Defendants' present knowledge, there are no documents responsive to this request that involve the named Defendants.

**DOCUMENT REQUEST NO. 13:** All Documents reflecting any disciplinary action, including disciplinary investigations and reports that did not lead to any punishment, concerning any agent of the Salt Lake County Jail, including all employees, all individually named Defendants, and Wellcon, that related to a failure to adequately respond when an Incarcerated Person refused or otherwise did not take one or more meals.

**RESPONSE:** Defendants object to this request to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product. Defendants further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendants object to the request because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions and/or expert opinion.

Without waiving theses objections and subject to them, to the best of Defendants' present knowledge, there are no documents responsive to this request that involve the named Defendants.

**DOCUMENT REQUEST NO. 14:** All Documents reflecting the training provided to staff, within the period beginning March 29, 2006, through and until the present, at Salt Lake

County Metro Jail relating to inmate health, including, but not limited to, requests for medical assistance, diagnosing medical conditions, making referrals for medical treatment, monitoring health status, providing medical treatment, and responding when an inmate does not take one or more meals.

**RESPONSE:** Defendants object to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.

Without waiving these objections and subject to them, please see training records for Defendants Brent Tucker, Colby James, Holly Harris, James Winder, Pamela Lofgreen, Todd Booth, and Zach Frederickson, enclosed herewith as Bates Nos. SLCo Ostler 002062-002099.

**DOCUMENT REQUEST NO. 15:** All Documents not otherwise produced that are in the Defendants' possession or control that refer in any way to Lisa Marie Ostler.

**RESPONSE:** Defendants object to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product.

Without waiving these objections and subject to them, please see documents produced as part Defendants' initial disclosures, including documents identified as SLCo Ostler 000001 – 000258 and these responses, including any supplements thereto.  Additionally, please see documents produced in response to Plaintiff Calvin Ostler's GRAMA requests on April 22, 2016, February 27, 2017, November 30, 2017, March 7, 2018, March 26, 2018, May 7, 2018 and August 23, 2018.

**DOCUMENT REQUEST NO. 16:** All Documents not otherwise produced that reflect any policy or procedure relied upon or implemented by any of the Defendants, including, but not limited to, documents provided by Gary DeLand or any person affiliated with him.

**RESPONSE:** Defendants object to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. The County further objects to the extent this request calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, policies and procedures from April 2016 to the present are produced herewith as Bates Nos. SLCo Ostler 002019-002061,

Respectfully submitted this 1st day of October 2018.


                                        SIM GILL
                                        District Attorney for Salt Lake County

As to Objections:                       /s/ Jacque M. Ramos
                                        JACQUE M. RAMOS
                                        Deputy District Attorney
                                        *Attorney for Defendants*

<u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct copy of the foregoing Responses to Plaintiffs' first

Set of Production of Documents was SERVED via U.S. Mail, first-class, postage prepaid on this

the ____ day of September, 2018, to the following:

Ross C. Anderson
Law Offices of Rocky Anderson
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, UT 84111

/s/ Iris Pittman
Paralegal

EXHIBIT D-1

Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email:jmramos@slco.org
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CALVIN OSTLER, et al.<br><br>Plaintiff,<br>v.<br><br>HOLLY PATRICE HARRIS, et al.,<br><br>Defendants. | **RESPONSES TO PLAINTIFFS' REQUEST FOR INTERROGATORIES**<br><br>Case No. 2:18-cv-00254-001<br><br>Judge:  Bruce S. Jenkins |

Defendant, SALT LAKE COUNTY (hereinafter referred to as the "County") pursuant to Federal Rule of Civil Procedure 33, respectfully objects to and answers Plaintiff's First Set of Interrogatories as follows:

## GENERAL OBJECTIONS:

1.      The County objects generally to Plaintiff's First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they are overly broad, compound, unduly burdensome and purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018. In providing

these responses and answers, the County gives the wording of Plaintiff's requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s). Additionally, the County does not waive its right to object to future interrogatories propounded on the County for exceeding the obligations and number allowed pursuant to the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018.

2.     The County objects generally to Plaintiff's First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or is otherwise privileged, protected or exempted from discovery under Utah or federal law.

3.     The County objects generally to the Introduction, Instructions, and Definitions contained within Plaintiff's First Set of Interrogatories and/or First Set of Requests for Production of Documents to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure. In providing these responses and answers, the County gives the wording of Plaintiff's requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s).

4.     The County has made reasonable efforts to answer Plaintiff's First Set of Interrogatories and First Set of Requests for Production of Documents as required by the Federal Rules of Civil Procedure; but as discovery is ongoing and the investigation continues, the County hereby reserves the right to supplement or amend their responses as discovery progresses.

. . .

<u>ANSWERS TO INTERROGATORIES:</u>

**INTERROGATORY NO. 1:** Identify all Jail Staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.

**Answer to Interrogatory No. 1:** The County objects to this interrogatory to the extent it is overbroad and compound.   The County further objects to the extent it calls for expert medical testimony.

Without waving these objections and subject to them, this information is best described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 2:** For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited to, all failures to act, all information reviewed, all communications made or received, all medical decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.

**Answer to Interrogatory No. 2:** The County objects to this interrogatory to the extent it is overbroad and compound.   The County further objects to the extent it calls for expert testimony.

Without waving these objections and subject to them, this information is best described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 3:** Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C.

**Answer to Interrogatory No. 3:**  This information is best described in the Unit History (redacted) Bates Nos. SLCo Ostler 000268-000269 that was provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 4:** Describe in detail the relationship between Salt Lake County Metro Jail or Salt Lake County and Wellcon, including, but not limited to, the services provided by Wellcon, the manner in which compensation to Wellcon is determined, what types of decisions Wellcon is authorized to make, what information is reported by Wellcon, and what information is communicated between Salt Lake County Metro Jail and Wellcon pertaining to medical treatment.

**Answer to Interrogatory No. 4:** The County objects to this interrogatory to the extent it calls for expert opinions.

Without waving these objections and subject to them, this information is described in the contracts publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 5:** Identify all communications that occurred from and including March 29, 2016, through and including April 2, 2016, between Wellcon and any Jail Staff.

**Answer to Interrogatory No. 5:** The County objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product. The County further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, the County objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waiving these objections and subject to them, to the best the County's present knowledge and information all communications between Wellcon and Jail Staff concerning or relating to Lisa Ostler have been documented in Ms. Ostler's medical and jail records Bates Nos. SLCo Ostler 000001-000258 produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 6:** Describe in detail all changes within the last ten years to policies, whether written or unwritten, applicable to the medical diagnosis, evaluation,

monitoring, and treatment of persons incarcerated at Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Health Services Unit Policies and Procedures, the Salt Lake County Jail Policy Manual, and any other policy, practice, pattern, or custom.

**Answer to Interrogatory No. 6:** The County objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. The County further objects to the extent this interrogatory calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, this information is best described in the policy and procedures Bates Nos. SLCo Ostler 0001576-001762 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 7:** Describe in detail each instance of conduct or inaction relating to Lisa Marie Ostler by any employee or agent of Salt Lake County, including any person associated with Wellcon, Inc., that violated any policy applicable to the Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Policy Manual, Salt Lake County Jail Health Services Unit Policies and Procedures, and any other applicable policy, practice, or procedure, whether written or unwritten, and identify each policy that was violated.

**Answer to Interrogatory No. 7:**  The County objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product.  The County further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, the County objects to the interrogatory

because it calls for the release of information protected from disclosure under HIPAA and/or expert opinion.

Without waiving these objections and subject to them, the County is not aware of any employee or agent of Salt Lake County that violated any policy applicable to the Salt Lake County Metro Jail relating to Ms. Ostler.

**INTERROGATORY NO. 8:** Identify all Incarcerated Persons who had a Serious Medical Event in the Salt Lake County Metro Jail in the last 10 years, pursuant to an appropriate protective order if required, including, but not limited to, Incarcerated Persons who died in custody in Salt Lake County Metro Jail, were released from Salt Lake County Metro Jail for medical reasons, or were transported from the Salt Lake County Metro Jail to any hospital or medical facility.

**Answer to Interrogatory No. 8:**    The County objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, the County objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions and calls for expert testimony.

**INTERROGATORY NO. 9**: For each person identified in response to Interrogatory No. 8, pursuant to an appropriate protective order if required, describe in detail the Serious Medical Event, including, but not limited to, the following, if applicable: the dates on which symptoms were reported, to whom the symptoms were reported, what those symptoms were, what diagnoses were made, on what date each diagnosis was made, who made each diagnosis, what treatment was provided, when each treatment was provided, who provided each treatment, all

referrals for medical treatment, all transfers to medical units or medical facilities, the medical

outcome, and the cause of death.

**Answer to Interrogatory No. 9:** The County objects to this interrogatory as overly broad,

vague, unduly burdensome, and not proportionate pursuant to Federal Rule of Civil Procedure 26.

Moreover, the County objects to the interrogatory because it calls for the release of information

protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order

and Stays of Depositions and expert opinions.

Without waiving these objections and subject to them, the medical and jail records

regarding decedent, Lisa Marie Ostler, Bates Nos. SLCo Ostler 000001-000258, that summarize

the information responsive to this request were produced as part of Defendants' initial disclosures

and in response to Requests for Production of Documents, including supplements thereto.  Please

see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 10:** Describe in detail the practices and policies of the Salt

Lake County Metro Jail when an Incarcerated Person does not eat one or more meals.

**Answer to Interrogatory No. 10:**  The practices and policies of the Salt Lake County

Metro Jail responsive to this request are identified as SLCo Ostler 000270-001575 and are

produced as part of Defendants' initial disclosures and in response to Requests for Production of

Documents, including supplements thereto.  Please see those documents in accordance with

Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 11:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person requests medical assistance, whether formally or informally, whether for herself or for another person.

**Answer to Interrogatory No. 11:** The practices and policies of the Salt Lake County Metro Jail responsive to this request are identified as SLCo Ostler 001576-001995 and are produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 12:** Describe in detail any way in which the conduct of any agent of Salt Lake County, including all employees, all officers, all of the individually named Defendants, and all persons affiliated with Wellcon, deviated from the practices or policies described in response to Interrogatories 10 and 11.

**Answer to Interrogatory No. 12:** The County objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product.  The County further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, the County objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions and calls for expert testimony.

Without waiving these objections and subject to them, the County is not aware of any employee or agent of Salt Lake County or an individual affiliated with Wellcon, Inc. that deviated

from the practices or policies identified in the County's responses to Interrogatories 10 and 11 relating to Ms. Ostler.

**INTERROGATORY NO. 13:** For each instance in the last 10 years in which an Incarcerated Person was known to have not eaten for a period that extended for at least three consecutive meals, pursuant to an appropriate protective order if required, describe in detail the response by Salt Lake County and its agents, officers, and employees, including, but not limited to, all medical evaluations performed, all diagnoses made, and all referrals for treatment made.

**Answer to Interrogatory No. 13:** The County objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product. The County further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, the County objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

**INTERROGATORY NO. 14:** Describe in detail all training provided to each of the individually named Defendants, including, but not limited to, all academic degrees earned, all certificates awarded, and all vocational training programs completed at any time and all training provided within the last ten years in connection to the individual's employment.

**Answer to Interrogatory No. 14:** The County objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is more accurately described in the individual Defendants' responses to these interrogatories and information provided as Bates Nos. SLCo Ostler 002019-002099.

**INTERROGATORY NO. 15:** Describe in detail the job description for the positions held by each of the individually named Defendants for the period of March 29, 2016, to April 2, 2016, including, but not limited to, the position's supervisory responsibilities, duties to respond to requests for medical treatment, duties to provide medical treatment, duties to make referrals for medical treatment, and duties to monitor or evaluate the health and safety of people incarcerated at Salt Lake County Metro Jail.

**Answer to Interrogatory No. 15:** The County objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is best summarized in the individual job descriptions SLCo Ostler 000259-000266 with respect to the Sheriff see Utah Code § 17-22-2 (Sheriff General duties) produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 16:** Describe in detail the supervisory duties, including what persons or entities are responsible for each aspect of the supervision, of the Salt Lake County Metro Jail, including, but not limited to, the implementation and establishment of policies and procedures applicable to the Salt Lake County Metro Jail and the supervision and training of officers, agents, and employees assigned to work at the Salt Lake County Metro Jail.

**Answer to Interrogatory No. 16:**  The County objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is summarized in documents Bates Nos. SLCo Ostler 000259-000267 with respect to the Sheriff see Utah Code § 17-22-2 (Sheriff General duties).  Additionally, generally, the Jail Policy Advisory Committee (JPAC) consists of members of the Corrections Bureau and the District Attorney's Office. These members under direction and of a committee chair (lieutenant) systematically review existing policies for necessary changes and puts forth language for new policy creation. The committee members facilitate a review and comment process through their respective chains of command and return the product to the committee. Once a product is complete, the committee chair has each division commander sign off on the policy with any comments prior to being submitted to the bureau chief for final approval and distribution.

Training of jail personnel is managed by the Training Unit under the direction of a Division Commander. Training academies for new officers are facilitated by internal training staff and external partners under the authority of and following established curriculum and testing standards of Utah POST.

Corrections Training Officer (CTO) Program is an in-house field training that begins once an officer has successfully graduated from the academy and is immersed in department specific, hands-on training under the supervision of another specially trained and seasoned officer and program supervisors. The trainee is not allowed to complete the program until they have demonstrated competence in all objectives.

Annual training in-service training curriculum is created by the Training Unit and submitted through the chain of command for final approval by the Sheriff and/or his designee. When possible, the individual courses are pre-screened by the division commanders and administration. Minimum number of training hours for sworn personnel is 40 and records are provided to POST annually to ensure certifications are maintained.

**INTERROGATORY NO. 17:** Describe in detail all evidentiary bases for Defendants' denials of the factual assertions in each of the paragraphs of Plaintiffs' Complaint that were denied in their entirety.

**Answer to Interrogatory No. 17:**  The County objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. The County further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, on September 19, 2018, the parties agreed that Plaintiffs withdraw this question as each individual denial would constitute a discrete subpart under Fed. R. Civ. P. 33 and therefore would exceed the number allowed under the Scheduling Order.

**INTERROGATORY NO. 18:** Describe in detail all disciplinary investigations or decisions by anybody, whether or not the investigation ultimately resulted in disciplinary action, regarding any of the individually named Defendants.

**Answer to Interrogatory No. 18:** The County objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. The County further objects

to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, this information is summarized in the individual Defendants' responses to these interrogatories and documents Bates Nos. SLCo Ostler 0001996-002003 produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.   Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 19:** Describe in detail all requests that were made by any person to any of the Defendants, including their employees and agents, for Lisa Marie Ostler to receive medical evaluation or assistance.

**Answer to Interrogatory No. 19:**  The County objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome.

Without waiving these objections and subject to them, this information is summarized in the individual Defendants' responses to these interrogatories and medical and jail records Bates Nos. SLCo Ostler 000001-258 produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.   Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 20:** Describe in detail all responses, including communications to Lisa Marie Ostler, by Defendants, including their employees and agents, to requests for Lisa Marie Ostler to receive medical evaluation or treatment.

**Answer to Interrogatory No. 20:**  The County objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome.

Without waiving these objections and subject to them, this information is summarized in the individual Defendants' responses to these interrogatories and medical and jail records Bates Nos. SLCo Ostler 000001-258 produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.   Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 21:** Describe in detail any evidence or facts that support Defendants' Fifth Affirmative Defense that "Lisa Ostler's own conduct, or that of others, illegal and otherwise, and Ms. Ostler's own contributory negligence and/or affirmative acts, directly caused or contributed to Plaintiffs' alleged injuries."

**Answer to Interrogatory No. 21:**   The County objects to this interrogatory as overly broad, vague, and unduly burdensome. The County further objects to the extent this information calls for information that is subject to attorney-client privilege and/or attorney work product. Moreover, the County objects to the extent that discovery, including fact discovery is not complete.

Without waiving these objections and subject to them, Lisa Marie Ostler died as a result of peritonitis due to gastrointestinal perforation at the location of her gastric bypass she had performed in or about 2006.  See Bates No. SLCo Ostler 000160.

On March 30, 2016, Ms. Ostler disclosed that she abused illicit drugs, including heroin and that she had recently used illicit drugs. See Bates No. SLCo Ostler 000128.   During the Comprehensive Nurse Examination, Ms. Ostler was instructed on proper procedure to access medical staff through the sick call request process and the information on health services was also available in writing, including medical request forms at the kiosk in each housing unit.  See Bates

No. SLCo Ostler 000130; Information on Health Services No. J-E-01 SLCo Bates No. 001644-001645. On present belief and information, Ms. Ostler failed to report and/or utilize the proper sick call request procedure from March 30, 2016 – April 2, 2016, including J-E-07.

**INTERROGATORY NO. 22:** Describe in detail the exact sequence of events at the Salt Lake County Metro Jail from April 29, 2016, until April 2, 2016, involving Lisa Marie Ostler.

**Answer to Interrogatory No. 22:** The County objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome.

Without waiving these objections and subject to them, the sequence of events related to Ms. Ostler while incarcerated at the Salt Lake County Adult Detention Center is more accurately described and depicted in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 23:** Describe in detail the policies and practices implemented at the Salt Lake County Metro Jail relating to discharging from confinement injured or ill Incarcerated Persons to be taken to a hospital or other medical facility.

**Answer to Interrogatory No. 23:** The County objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome.

Without waiving these objections and subject to them, information responsive to this request is best described in the Salt Lake County Jail Health Services Unit Policies and

Procedures, Bates Nos. SLCo Ostler 001576-001995, including but not limited to Communication

on Patients' Health Needs No. J-A-08, Procedure in the Event of an Inmate Death No. J-A-10,

and Hospital and Specialty Care No. J-D-05.

Respectfully submitted this 1st day of October 2018.


SIM GILL
District Attorney for Salt Lake County

As to Objections                        /s/ Jacque M. Ramos
                                        JACQUE M. RAMOS
                                        Deputy District Attorney
                                        *Attorney for Defendants*

## VERIFICATION:

I, Corey Kiddle, in my capacity as Corrections Lieutenant of the Salt Lake County Adult Detention Center, hereby swear and affirm that the foregoing Answers to the Interrogatories concerning responses that touch or concern jail records, jail policies, and jail personnel served upon the County by Plaintiff are true to the best of my knowledge and belief.

COREY KIDDLE
Corrections Lieutenant
Salt Lake County Adult Detention Center

VERIFICATION:

I, Richard J. Bell, in my capacity as Health Services Administrator of the Salt Lake County Adult Detention Center, hereby swear and affirm that the foregoing Answers to the Interrogatories concerning responses that touch or concern medical records, medical policies, and medical personnel served upon the County by Plaintiff are true to the best of my knowledge and belief.

RICHARD J. BELL
Health Services Administrator
Salt Lake County Adult Detention Center

<u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct copy of the foregoing Responses to Plaintiffs' first

Set of Interrogatories was SERVED via U.S. Mail, first-class, postage prepaid on this the 1st day

of October, 2018, to the following:

Ross C. Anderson
Law Offices of Rocky Anderson
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, UT 84111

/s/ Iris Pittman
Paralegal

EXHIBIT D-2

Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email:jmramos@slco.org
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CALVIN OSTLER, et al.<br><br>           Plaintiff,<br>v.<br><br>HOLLY PATRICE HARRIS, et al.,<br><br>      Defendants. | **RESPONSES TO PLAINTIFFS' REQUEST FOR INTERROGATORIES**<br><br>Case No. 2:18-cv-00254-001<br><br>Judge:  Bruce S. Jenkins |

Zachary Paul Frederickson ("Defendant Frederickson"), pursuant to Federal Rule of Civil Procedure 33, respectfully objects to and answers Plaintiffs' First Set of Interrogatories as follows:

GENERAL OBJECTIONS

1.     Defendant Frederickson objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they are overly broad, compound, unduly burdensome and purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure and the Scheduling Order entered July

17, 2018. In providing these responses and answers, Defendant Frederickson gives the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s). Additionally, Defendant Frederickson does not waive his right to object to future interrogatories propounded on him for exceeding the obligations and number allowed pursuant to the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018.

2.      Defendant Frederickson objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or is otherwise privileged, protected or exempted from discovery under Utah or federal law.

3.      Defendant Frederickson objects generally to the Introduction, Instructions, and Definitions contained within Plaintiffs' First Set of Interrogatories and/or First Set of Requests for Production of Documents to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure. In providing these responses and answers, Defendant Frederickson gives the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s).

4.      Defendant Frederickson has made reasonable efforts to answer Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents as required by the Federal Rules of Civil Procedure; but as discovery is ongoing and the investigation continues, he hereby reserves the right to supplement or amend her responses as discovery progresses.

<u>ANSWERS TO INTERROGATORIES:</u>

**INTERROGATORY NO. 1:** Identify all Jail Staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.

**Answer to Interrogatory No. 1:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert medical opinions.  Defendant Frederickson further objects to the extent it is overbroad and compound.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SCLo Ostler 000001-258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d). Additionally, I had contact with Ms. Ostler.  Other than myself, I am aware of an additional nurse who conducted diabetic checks, but I do not recall who it was with me.  I do not know who was involved with Ms. Ostler in any capacity in the days leading up to her death.

**INTERROGATORY NO. 2:** For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited to, all failures to act, all information reviewed, all communications made or received, all medical

decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.

**Answer to Interrogatory No. 2:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.   Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Additionally, I recall that I was told there was an inmate in 8 Charlie that had been asking for medical help all night. I was informed she constantly pushed her intercom button asking for a nurse. I was also told that medical had been down several times over the course of the night and she had been evaluated and cleared to remain in her housing unit. I spoke with her about why she hadn't been eating and urged her to try to eat something at lunch time, I told her that would help her feel better and that her body needed food to get her through her sickness. Lisa responded by asking to soak in the shower.  I informed Lisa that she would be able to soak in a hot shower for as long as she wanted to after the unit was taken off lockdown. She agreed to eat something at lunch and told me she had some vaginal bleeding. I did not see any blood in her cell to verify this but still placed a call to medical to inform them. I was told they were aware of Ms. Ostler and that unless she was having a medical emergency then she would need to fill out a Sick Call Request Form and turn it in when they made their rounds. I also told them that she had not eaten for a few

meals and was told that would not be considered a serious concern until 72 hours had passed. Which at the time of my involvement with her had not passed. All of this information was documented on our shift logs. I notified my supervisor of everything listed above and she told me just to keep an eye on her. I checked on her cell a second time just before taking the unit off lockdown and Ms. Ostler had moved herself to her bed and appeared to be asleep. I watched her for a few moments and could see she was breathing. I know this because I observed her chest rise and fall. I did not want to wake her up because I felt the best way for her to get well was rest.

I did speak briefly with the unit inmate workers. I do not recall their names. They did tell me about Ms. Ostler refusing her meals. I also spoke with another inmate while walking along the top tier. I do not recall her name either, but she was concerned about Ms. Ostler and told me she had been yelling for help all night. I assured her that Ms. Ostler would receive any and all help I was capable of providing.

**INTERROGATORY NO. 3:** Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C.

**Answer to Interrogatory No. 3:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 4:** Describe in detail the relationship between Salt Lake County Metro Jail or Salt Lake County and Wellcon, including, but not limited to, the services provided by Wellcon, the manner in which compensation to Wellcon is determined, what types

of decisions Wellcon is authorized to make, what information is reported by Wellcon, and what information is communicated between Salt Lake County Metro Jail and Wellcon pertaining to medical treatment.

**Answer to Interrogatory No. 4:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is described in the contracts publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 5:** Identify all communications that occurred from and including March 29, 2016, through and including April 2, 2016, between Wellcon and any Jail Staff.

**Answer to Interrogatory No. 5:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and or attorney-client privilege.  Defendant Frederickson further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant Frederickson objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 6:** Describe in detail all changes within the last ten years to policies, whether written or unwritten, applicable to the medical diagnosis, evaluation, monitoring, and treatment of persons incarcerated at Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Health Services Unit Policies and Procedures, the Salt Lake County Jail Policy Manual, and any other policy, practice, pattern, or custom.

**Answer to Interrogatory No. 6:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant Frederickson further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Defendant Frederickson further objects to the extent this interrogatory calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, I do not recall specific policy changes to be able to respond to this interrogatory. However, I do recall the jail changed the medications provided to inmates coming off of narcotics. Medical staff now provide medicine to help with nausea, diarrhea and other symptoms of "detoxing" off of drugs. As to when this change occurred I am not sure but possibly within the last 5 years.

**INTERROGATORY NO. 7:** Describe in detail each instance of conduct or inaction relating to Lisa Marie Ostler by any employee or agent of Salt Lake County, including any person associated with Wellcon, Inc., that violated any policy applicable to the Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Policy Manual, Salt Lake County Jail Health Services Unit Policies and Procedures, and any other applicable policy, practice, or procedure, whether written or unwritten, and identify each policy that was violated.

**Answer to Interrogatory No. 7:**  Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Frederickson further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Frederickson objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waving these objections and subject to them, I did not nor am I aware of any employee or agent of Salt Lake County that violated any policy applicable to the Salt Lake County Metro Jail relating to Ms. Ostler.

**INTERROGATORY NO. 8:** Identify all Incarcerated Persons who had a Serious Medical Event in the Salt Lake County Metro Jail in the last 10 years, pursuant to an appropriate protective order if required, including, but not limited to, Incarcerated Persons who died in custody in Salt Lake County Metro Jail, were released from Salt Lake County Metro Jail for medical reasons, or were transported from the Salt Lake County Metro Jail to any hospital or medical facility.

**Answer to Interrogatory No. 8:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Frederickson further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Frederickson objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 9**: For each person identified in response to Interrogatory No. 8, pursuant to an appropriate protective order if required, describe in detail the Serious Medical Event, including, but not limited to, the following, if applicable: the dates on which symptoms were reported, to whom the symptoms were reported, what those symptoms were, what diagnoses were made, on what date each diagnosis was made, who made each diagnosis, what treatment was provided, when each treatment was provided, who provided each treatment, all referrals for medical treatment, all transfers to medical units or medical facilities, the medical outcome, and the cause of death.

**Answer to Interrogatory No. 9:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Frederickson further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Frederickson objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 10:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person does not eat one or more meals.

**Answer to Interrogatory No. 10:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Generally, however, we try to find out why they aren't eating. We attempt to asses each inmate on an individual basis and inform them that they should eat to keep their health up and ask them to eat at the next meal provided. Each missed meal is documented on the shift logs we keep. If meals are continually missed by the same inmate, supervisors are notified and medical is notified.

**INTERROGATORY NO. 11:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person requests medical assistance, whether formally or informally, whether for herself or for another person.

**Answer to Interrogatory No. 11:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Generally, we speak to the inmate in question to find out what is wrong. If they aren't having symptoms of something considered life threatening i.e. chest pains, shortness of breath or excessive bleeding, the inmate is provided a Sick Call Request form. On this form they write down what is bothering them. They are then instructed to leave the form in the cell window. Every morning a nurse comes to every housing unit in the jail to conduct Medical Triage. This is where the inmate will present their Sick Call request form. Often times the triage nurse will take vital signs and either have the inmate put on a waiting list to see a doctor, or attempt to treat the inmate right there. This is done by offering a drink designed to replenish electrolytes in the body or by giving the inmate advice, like drink more water, eat more food, keep a wound clean and dry, exercise and keep tabs on pain levels.  If the inmate experiences symptoms of an emergent nature the housing officer will call over the radio for a medical response. Several nurses will then rush to the unit as soon as possible and take care of the inmate in question. Other officers and supervisors will also respond. A camera is started to film the incident. Once the incident is resolved a case number is retrieved and reports are taken.

**INTERROGATORY NO. 12:** Describe in detail any way in which the conduct of any agent of Salt Lake County, including all employees, all officers, all of the individually named Defendants, and all persons affiliated with Wellcon, deviated from the practices or policies described in response to Interrogatories 10 and 11.

**Answer to Interrogatory No. 12:**  Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Frederickson further objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney

work product.  Furthermore, Defendant Frederickson objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant Frederickson objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 13:** For each instance in the last 10 years in which an Incarcerated Person was known to have not eaten for a period that extended for at least three consecutive meals, pursuant to an appropriate protective order if required, describe in detail the response by Salt Lake County and its agents, officers, and employees, including, but not limited to, all medical evaluations performed, all diagnoses made, and all referrals for treatment made.

**Answer to Interrogatory No. 13:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Defendant Frederickson also objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant Frederickson objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 14:** Describe in detail all training provided to each of the individually named Defendants, including, but not limited to, all academic degrees earned, all

certificates awarded, and all vocational training programs completed at any time and all training provided within the last ten years in connection to the individual's employment.

**Answer to Interrogatory No. 14:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant Frederickson also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waving these objections and subject to them, I am not aware of what others have completed or accomplished over the last ten years. For myself I complete my mandatory 40 hours of training classes every year, I was at one point CIT (crisis intervention) certified but it has since expired. I am CPR certified as well. The Sheriff's Office Training Division should have a record of my attendance.

**INTERROGATORY NO. 15:** Describe in detail the job description for the positions held by each of the individually named Defendants for the period of March 29, 2016, to April 2, 2016, including, but not limited to, the position's supervisory responsibilities, duties to respond to requests for medical treatment, duties to provide medical treatment, duties to make referrals for medical treatment, and duties to monitor or evaluate the health and safety of people incarcerated at Salt Lake County Metro Jail.

**Answer to Interrogatory No. 15:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant Frederickson also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is best summarized in the individual job descriptions SLCo Ostler 000259-000266 with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties) produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Additionally, I am a housing Officer and generally my duties are to provide safety and security of the jail and its prisoner population, civilian staff and each other.

**INTERROGATORY NO. 16:** Describe in detail the supervisory duties, including what persons or entities are responsible for each aspect of the supervision, of the Salt Lake County Metro Jail, including, but not limited to, the implementation and establishment of policies and procedures applicable to the Salt Lake County Metro Jail and the supervision and training of officers, agents, and employees assigned to work at the Salt Lake County Metro Jail.

**Answer to Interrogatory No. 16:** Defendant Frederickson objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Frederickson further objects to this interrogatory to the extent such information is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, this information is summarized in documents SLCo Ostler 000259-000267 with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties). Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 17:** Describe in detail all evidentiary bases for Defendants' denials of the factual assertions in each of the paragraphs of Plaintiffs' Complaint that were denied in their entirety.

**Answer to Interrogatory No. 17:** Defendant Frederickson objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Frederickson further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, on September 19, 2018, the parties agreed that Plaintiffs withdraw this question as each individual denial would constitute a discrete subpart under Fed. R. Civ. P. 33 and therefore exceed the number allowed under the Scheduling Order.

**INTERROGATORY NO. 18:** Describe in detail all disciplinary investigations or decisions by anybody, whether or not the investigation ultimately resulted in disciplinary action, regarding any of the individually named Defendants.

**Answer to Interrogatory No. 18:** Defendant Frederickson objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Frederickson further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, there had not been any disciplinary action taken against me. I do not recall or possess specific information to respond regarding the other Defendants.

**INTERROGATORY NO. 19:** Describe in detail all requests that were made by any person to any of the Defendants, including their employees and agents, for Lisa Marie Ostler to receive medical evaluation or assistance.

**Answer to Interrogatory No. 19:** Defendant Frederickson objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Frederickson further objects to the extent that such information is outside the scope of his knowledge.

Without waiving these objections and subject to them, Ms. Ostler asked me for help, I provided it in the best way I felt possible. I asked her to try and eat, I told her why it was important. I told her about the sick call request forms. I notified medical of her condition, meal refusal and alleged vaginal bleeding. I tried to assure her that she would be okay, that she wouldn't feel so bad for much longer. I told her she would be able to soak in the shower for as long as she wanted to. I spoke to the triage nurse about her as well, notified my supervisor and documented everything I could.

**INTERROGATORY NO. 20:** Describe in detail all responses, including communications to Lisa Marie Ostler, by Defendants, including their employees and agents, to requests for Lisa Marie Ostler to receive medical evaluation or treatment.

**Answer to Interrogatory No. 20:** Defendant Frederickson objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome. Defendant Frederickson further objects to the extent it calls for information outside the scope of his personal knowledge.

Without waiving these objections and subject to them, please see my response to Interrogatory Nos. 2 and 19.

**INTERROGATORY NO. 21:** Describe in detail any evidence or facts that support Defendants' Fifth Affirmative Defense that "Lisa Ostler's own conduct, or that of others, illegal and otherwise, and Ms. Ostler's own contributory negligence and/or affirmative acts, directly caused or contributed to Plaintiffs' alleged injuries."

**Answer to Interrogatory No. 21:** Defendant Frederickson objects to this interrogatory as overly broad, vague, unduly burdensome, and calls for information that outside the scope of his personal knowledge. Defendant Frederickson further objects to the extent this information calls for information that is subject to attorney-client privilege and/or attorney work product. Moreover, Defendant Frederickson objects to the extent that discovery, including fact discovery is not complete.

Without waiving these objections and subject to them, see my response to Interrogatories Nos. 2, 19, and 20.

**INTERROGATORY NO. 22:** Describe in detail the exact sequence of events at the Salt Lake County Metro Jail from April 29, 2016, until April 2, 2016, involving Lisa Marie Ostler.

**Answer to Interrogatory No. 22:** Defendant Frederickson objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, based on present recollection and knowledge on April 2, 2016 I arrived for shift briefing, this is where events from the following night are discussed. Ms. Ostler was mentioned and it was advised to keep an eye on her. I approached my assigned housing unit. The Deputy from grave yard shift tells me I had 64 inmates

and no issues other than a female in cell 16 who had been asking for medical all night. I was told then she had been assessed by medical and cleared. I was given my unit keys and entered the housing unit. It was quiet. I signed into my computer, placed my stuff down and began my unit inspection. This is where we walk around the unit to make sure everything is secure, in its place and safe. We check for contraband or missing items. We walk by each cell and verify the inmates are in their assigned bunks, cells and show signs of life. I approached cell 16 where Ms. Ostler was assigned. She was awake and sitting on the floor in front of the door. She was responsive, I asked her if she was okay and she nodded. She was alive and moving, responsive so I continued my inspection. On the upper tier I am informed that Ms. Ostler had been yelling for help all night. The inmate was worried she might die, she mentioned that she had not gotten any help and didn't want anything bad to happen to her. I informed her that would not happen on my watch, I told this inmate I would take care of Ms. Ostler. I finished my inspection and let the inmate workers out of the cell to prepare breakfast trays and serve them up. As they were doing this a nurse arrived at my unit to conduct diabetic checks and provide insulin for those who needed it. I asked him about Ms. Ostler and was told to have her fill out a sick call request form for medical triage later in the day. I documented this on my shift log. The nurse left. Inmate workers had finished serving breakfast by this time and informed me that Ms. Ostler had again refused her meals. They told me she didn't eat the day before either. I went to Ms. Ostler's cell and she was still sitting on the floor in front of the door. Awake and responsive. I asked her why she wasn't eating. I remember she told me she just didn't feel good. She said she only wanted to soak in a shower. I told her she would be welcome to do that as soon as the unit was taken off of lockdown and the inmates were able to come out of their cells and start their day. She said that would be fine. I then asked her to

try and eat something at lunch time, I told her it's important to give her body the fuel it needs to function and that if she could just eat a little bit she would start to feel better much sooner. She agreed to try, then mentioned that she had experienced some vaginal bleeding. This concerned me so I told her to wait while I called medical. I used my desk phone and called medical. I told them who I was and where I was calling from. I told them first that she had not been eating, at least 3 meals had been missed. The nurse told me they don't typically worry about meals until 72 hours had passed. I then informed him of the alleged vaginal bleeding, he asked me. "Is she having a medical emergency?" I told him that it did not appear to be one, he then said to have her fill out a sick call request form and turn it into the triage nurse when they arrived in the unit that day. I notified my Sergeant and was told to document everything and just keep an eye on her. I told Ms. Ostler about the sick call request form and placed one in her cell for her to use. She thanked me. The unit workers were finished with clean up and it was almost time to allow the inmates out of their cells. I did another unit inspection to make sure everyone in my care that day was alive. By the time I walked passed Ms. Ostler's cell, she had moved to the bed and appeared to be sleeping. I stopped for a minute to watch and see if I could see visible respirations. I watched her chest rise and fall several times before moving on. I finished my inspection and prepared to allow the unit out. Shortly after that the same inmate I had spoken to on the top tier alerted me that Ms. Ostler was not breathing. I immediately approached the cell to see that Ms. Ostler had moved off the bed, was sitting on the floor with her back against the bottom bunk, Her legs were out in a V formation, arms and hands draped at her sides. Her head was slightly cocked to the side, mouth open and eyes glassed over. She appeared to be dead. I called for help telling my responders that the inmate was not breathing, I ordered the inmates back to their cells and did not wait for help. I

entered the cell and attempted to rouse Ms. Ostler, she did not wake up. I then moved her to the prone position and began doing chest compressions. The next thing I remember is a nurse taking over for me. I left the cell and sat at the inmate meal tables for a while. They moved Ms. Ostler onto a stretcher and were continuing chest compressions as they exited the unit. I was then escorted out of the unit by my supervisor.

**INTERROGATORY NO. 23:** Describe in detail the policies and practices implemented at the Salt Lake County Metro Jail relating to discharging from confinement injured or ill Incarcerated Persons to be taken to a hospital or other medical facility.

**Answer to Interrogatory No. 23:** Defendant Frederickson objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policy and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto, that include those policies and procedures in the Salt Lake County Jail Health Services Unit Policies and Procedures. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Respectfully submitted this 1st day of October 2018.

SIM GILL
District Attorney for Salt Lake County

As to Objections

/s/ Jacque M. Ramos
JACQUE M. RAMOS
Deputy District Attorney
*Attorney for Defendants*

<u>VERIFICATION</u>:

I, Zach Frederickson, in my capacity as Corrections Officer at the Salt Lake County Adult Detention Center, declare under criminal penalty under the law of Utah that the foregoing Answers to the Interrogatories served upon me by Plaintiff are true to the best of my knowledge and belief.

_____
Zach Frederickson

<u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct copy of the foregoing Responses to Plaintiffs' first

Set of Interrogatories was SERVED via U.S. Mail, first-class, postage prepaid on this the 1st day

of October, 2018, to the following:

Ross C. Anderson
Law Offices of Rocky Anderson
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, UT 84111

/s/ Iris Pittman
Paralegal

EXHIBIT D-3

Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email:jmramos@slco.org
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CALVIN OSTLER, et al.<br><br>Plaintiff,<br>v.<br><br>HOLLY PATRICE HARRIS, et al.,<br><br>Defendants. | **RESPONSES TO PLAINTIFFS' REQUEST FOR INTERROGATORIES**<br><br>Case No. 2:18-cv-00254-001<br><br>Judge:  Bruce S. Jenkins |

Holly Patrice Harris ("Defendant Harris"), pursuant to Federal Rule of Civil Procedure

33, respectfully objects to and answers Plaintiffs' First Set of Interrogatories as follows:

<u>GENERAL OBJECTIONS</u>

1.     Defendant Harris objects generally to Plaintiffs' First Set of Interrogatories and First Set

of Requests for Production of Documents to the extent they are overly broad, compound,

unduly burdensome and purport to impose obligations that differ from or exceed those imposed

by the Federal Rules of Civil Procedure and the Scheduling Order entered July 17, 2018. In

providing these responses and answers, Ms. Harris gives the wording of Plaintiffs' requests

their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s). Additionally, the Ms. Harris does not waive her right to object to future interrogatories propounded on her for exceeding the obligations and number allowed pursuant to the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018.

2.      Defendant Harris objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or is otherwise privileged, protected or exempted from discovery under Utah or federal law.

3.      Defendant Harris objects generally to the Introduction, Instructions, and Definitions contained within Plaintiffs' First Set of Interrogatories and/or First Set of Requests for Production of Documents to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure. In providing these responses and answers, Ms. Harris gives the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s).

4.      Defendant Harris has made reasonable efforts to answer Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents as required by the Federal Rules of Civil Procedure; but as discovery is ongoing and the investigation continues, she hereby reserves the right to supplement or amend her responses as discovery progresses.

. . .

<u>ANSWERS TO INTERROGATORIES:</u>

**INTERROGATORY NO. 1:** Identify all Jail Staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.

**Answer to Interrogatory No. 1:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert medical opinions.  Ms. Harris further objects to the extent it is overbroad and compound.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 2:** For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited to, all failures to act, all information reviewed, all communications made or received, all medical decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.

**Answer to Interrogatory No. 2:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Additionally, generally, I work the graveyard shift and don't have much interaction with the prisoners except for watch tours, and clothing exchange. A few of the female prisoners were concerned about her, so I called the nursing staff and had asked about Lisa Ostler. I don't remember who the nurse was that I had talked to, but he informed me that her vitals were taken a few hours prior and her vitals were good. During most of the watch tours she was laying down in her bed. She did not ask to see a nurse.  I recall looking in the cell and checked on her during the watch tours.

**INTERROGATORY NO. 3:** Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C.

**Answer to Interrogatory No. 3:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 4:** Describe in detail the relationship between Salt Lake County Metro Jail or Salt Lake County and Wellcon, including, but not limited to, the services provided by Wellcon, the manner in which compensation to Wellcon is determined, what types of decisions Wellcon is authorized to make, what information is reported by Wellcon, and what information is communicated between Salt Lake County Metro Jail and Wellcon pertaining to medical treatment.

**Answer to Interrogatory No. 4:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is described in the contracts publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 5:** Identify all communications that occurred from and including March 29, 2016, through and including April 2, 2016, between Wellcon and any Jail Staff.

**Answer to Interrogatory No. 5:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and or attorney-client privilege. Defendant Harris further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Harris objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 6:** Describe in detail all changes within the last ten years to policies, whether written or unwritten, applicable to the medical diagnosis, evaluation, monitoring, and treatment of persons incarcerated at Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Health Services Unit Policies and Procedures, the Salt Lake County Jail Policy Manual, and any other policy, practice, pattern, or custom.

**Answer to Interrogatory No. 6:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge. Defendant Harris further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Ms. Harris further objects to the extent that this interrogatory calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, I do not recall specific policy changes to be able to respond to this interrogatory.

**INTERROGATORY NO. 7:** Describe in detail each instance of conduct or inaction relating to Lisa Marie Ostler by any employee or agent of Salt Lake County, including any person associated with Wellcon, Inc., that violated any policy applicable to the Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Policy Manual, Salt Lake County Jail Health Services Unit Policies and Procedures, and any other applicable policy, practice, or procedure, whether written or unwritten, and identify each policy that was violated.

**Answer to Interrogatory No. 7:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions. Defendant Harris further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Harris objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waving these objections and subject to them, I am not aware of information responsive to this request nor do I recall or possess specific information to respond.

**INTERROGATORY NO. 8:** Identify all Incarcerated Persons who had a Serious Medical Event in the Salt Lake County Metro Jail in the last 10 years, pursuant to an appropriate protective order if required, including, but not limited to, Incarcerated Persons who died in custody in Salt Lake County Metro Jail, were released from Salt Lake County Metro Jail for medical reasons, or were transported from the Salt Lake County Metro Jail to any hospital or medical facility.

**Answer to Interrogatory No. 8:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions. Defendant Harris further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Harris objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 9**: For each person identified in response to Interrogatory No. 8, pursuant to an appropriate protective order if required, describe in detail the Serious Medical Event, including, but not limited to, the following, if applicable: the dates on which symptoms were reported, to whom the symptoms were reported, what those symptoms were, what diagnoses were made, on what date each diagnosis was made, who made each diagnosis, what treatment was provided, when each treatment was provided, who provided each treatment, all referrals for medical treatment, all transfers to medical units or medical facilities, the medical outcome, and the cause of death.

**Answer to Interrogatory No. 9:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions.  Defendant Harris further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Harris objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 10:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person does not eat one or more meals.

**Answer to Interrogatory No. 10:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.

Without waving these objections and subject to them, this information is best described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Additionally, generally and in my own words my present understanding is that when one does not eat, it is to be put on the unit's log. Then the Sgt on shift is to be notified. And then the nursing supervisor will be notified.  I work on graveyard and I do not deal with meals or food.

**INTERROGATORY NO. 11:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person requests medical assistance, whether formally or informally, whether for herself or for another person.

**Answer to Interrogatory No. 11:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Generally however, it depends on the severity of the needs for medical. For most medical needs prisoners are given a medical kite to fill out and are treated through triage.  More severe situations medical is notified.

**INTERROGATORY NO. 12:** Describe in detail any way in which the conduct of any agent of Salt Lake County, including all employees, all officers, all of the individually named Defendants, and all persons affiliated with Wellcon, deviated from the practices or policies described in response to Interrogatories 10 and 11.

**Answer to Interrogatory No. 12:**  Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions.  Ms. Harris further objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product. Furthermore, Ms. Harris objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Ms. Harris objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 13:** For each instance in the last 10 years in which an Incarcerated Person was known to have not eaten for a period that extended for at least three consecutive meals, pursuant to an appropriate protective order if required, describe in detail the response by Salt Lake County and its agents, officers, and employees, including, but not

limited to, all medical evaluations performed, all diagnoses made, and all referrals for treatment made.

**Answer to Interrogatory No. 13:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.  Ms. Harris also objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Ms. Harris objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond because I don't conduct with meal service due to working on graveyard shift. Generally, my understanding is that Deputies are to log meal refusal, email or notify the unit Sgt. and the nursing supervisor.

**INTERROGATORY NO. 14:** Describe in detail all training provided to each of the individually named Defendants, including, but not limited to, all academic degrees earned, all certificates awarded, and all vocational training programs completed at any time and all training provided within the last ten years in connection to the individual's employment.

**Answer to Interrogatory No. 14:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.  Ms. Harris also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waving these objections and subject to them, I participate in various mandatory and elective training opportunities, but I have not kept a list of those to refer to and provide a

specific response. The Sheriff's Office should have a record of my attendance. I do not know specific information about other defendants to respond.

**INTERROGATORY NO. 15:** Describe in detail the job description for the positions held by each of the individually named Defendants for the period of March 29, 2016, to April 2, 2016, including, but not limited to, the position's supervisory responsibilities, duties to respond to requests for medical treatment, duties to provide medical treatment, duties to make referrals for medical treatment, and duties to monitor or evaluate the health and safety of people incarcerated at Salt Lake County Metro Jail.

**Answer to Interrogatory No. 15:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.  Ms. Harris also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is best summarized in the individual job descriptions SLCo Ostler 000259-000266 with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties) produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Additionally, I have only worked on graveyards as an officer and can only answer for what I have worked.  Generally, we have shift briefing. After shift briefing I go to the units that I am working and get briefed from the afternoon officers.  Being on graveyard I usually get two units to work.  I sign in the computers and pull up the shift logs.  I then do a watch tour. While

doing a watch tour, I do a head to locator check. I make sure the heads of the prisoners are by the window and uncovered. I make sure there is nothing obstructing the view and the light in the cell, and I conduct a security check.  After the watch tour, I do a unit supply check. Then I go onto the next unit and do the same thing, watch tour and unit supply log.  Clothing exchange starts shortly after.  During clothing exchange, per on duty Sgt, we have everyone get up out of bed and out of the cells so the cells can be searched.  While their cells are being searched, the prisoners go and get a new set of clothing. After clothing, I turn off lights and the unit panel.  I and other officers working the pod continue to other units until all units have completed clothing exchange. Throughout the night I conduct watch tours checking on prisoners.  When it gets close to 0600 hrs. I brief the dayshift officers.

**INTERROGATORY NO. 16:** Describe in detail the supervisory duties, including what persons or entities are responsible for each aspect of the supervision, of the Salt Lake County Metro Jail, including, but not limited to, the implementation and establishment of policies and procedures applicable to the Salt Lake County Metro Jail and the supervision and training of officers, agents, and employees assigned to work at the Salt Lake County Metro Jail.

**Answer to Interrogatory No. 16:** Ms. Harris objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is summarized in documents Bates Nos. SLCo Ostler 000259-000267 with respect to the Sheriff see Utah Code § 17-22-2 (Sheriff General duties). Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 17:** Describe in detail all evidentiary bases for Defendants' denials of the factual assertions in each of the paragraphs of Plaintiffs' Complaint that were denied in their entirety.

**Answer to Interrogatory No. 17:** Ms. Harris objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Ms. Harris further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, on September 19, 2018, the parties agreed that Plaintiffs withdraw this question as each individual denial would constitute a discrete subpart under Fed. R. Civ. P. 33 and therefore exceed the number allowed under the Scheduling Order.

**INTERROGATORY NO. 18:** Describe in detail all disciplinary investigations or decisions by anybody, whether or not the investigation ultimately resulted in disciplinary action, regarding any of the individually named Defendants.

**Answer to Interrogatory No. 18:** Ms. Harris objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Ms. Harris further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 19:** Describe in detail all requests that were made by any person to any of the Defendants, including their employees and agents, for Lisa Marie Ostler to receive medical evaluation or assistance.

**Answer to Interrogatory No. 19:** Ms. Harris objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, please see my response to Interrogatory Nos. 22.

**INTERROGATORY NO. 20:** Describe in detail all responses, including communications to Lisa Marie Ostler, by Defendants, including their employees and agents, to requests for Lisa Marie Ostler to receive medical evaluation or treatment.

**Answer to Interrogatory No. 20:** Ms. Harris objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome. Ms. Harris further objects to the extent it calls for information outside the scope of her personal knowledge.

Without waiving these objections and subject to them, I do not recall specific information to respond.

**INTERROGATORY NO. 21:** Describe in detail any evidence or facts that support Defendants' Fifth Affirmative Defense that "Lisa Ostler's own conduct, or that of others, illegal and otherwise, and Ms. Ostler's own contributory negligence and/or affirmative acts, directly caused or contributed to Plaintiffs' alleged injuries."

**Answer to Interrogatory No. 21:** Ms. Harris objects to this interrogatory as overly broad, vague, unduly burdensome, and calls for information that is outside the scope of her personal knowledge. Ms. Harris further objects to the extent that this information calls for information that is subject to attorney-client privilege and/or attorney work product.  Moreover, Ms. Harris objects to the extent that discovery, including fact discovery is not complete.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 22:** Describe in detail the exact sequence of events at the Salt Lake County Metro Jail from April 29, 2016, until April 2, 2016, involving Lisa Marie Ostler.

**Answer to Interrogatory No. 22:** Ms. Harris objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and calls for information that is outside the scope of her personal knowledge.

Without waiving these objections and subject to them, I can only answer for the time I was there.  I was assigned to 7c and 8c on the night (2200) of April 1 and morning (until 0600) of April 2.  During clothing exchange, Prisoner Ostler voluntarily exchanged her clothes. Watch tours were completed. Medical was contacted and informed regarding other female prisoners, in the unit, concerned about Prisoner Ostler. A male nurse informed me that her vitals were good and I briefed on the incoming officer.  Then I was off duty.

**INTERROGATORY NO. 23:** Describe in detail the policies and practices implemented at the Salt Lake County Metro Jail relating to discharging from confinement injured or ill Incarcerated Persons to be taken to a hospital or other medical facility.

**Answer to Interrogatory No. 23:** Defendant Harris objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.

Without waving these objections and subject to them, this information is best described in the policy and procedures that were provided in Defendants' initial disclosures and in response

to Requests for Production of Documents, including supplements thereto, that include those

policies and procedures in the Salt Lake County Jail Health Services Unit Policies and Procedures.

Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

       Respectfully submitted this 1st day of October 2018.


                                     SIM GILL
                                     District Attorney for Salt Lake County

As to Objections             /s/ Jacque M. Ramos_____
                                     JACQUE M. RAMOS
                                     Deputy District Attorney
                                     *Attorney for Defendants*

<u>VERIFICATION</u>:

I, Holly Patrice Harris, in my capacity as Corrections Officer at the Salt Lake County Adult Detention Center, declare under criminal penalty under the law of Utah that the foregoing Answers to the Interrogatories served upon me by Plaintiff are true to the best of my knowledge and belief.

_____

Holly Patrice Harris

<u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct copy of the foregoing Responses to Plaintiffs' first

Set of Interrogatories was SERVED via U.S. Mail, first-class, postage prepaid on this the 1st day

of October, 2018, to the following:

Ross C. Anderson
Law Offices of Rocky Anderson
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, UT 84111

<u>/s/ Iris Pittman</u>
Paralegal

EXHIBIT D-4

Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email:jmramos@slco.org
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CALVIN OSTLER, et al.<br><br>          Plaintiff,<br>v.<br><br>HOLLY PATRICE HARRIS, et al.,<br><br>          Defendants. | **RESPONSES TO PLAINTIFFS' REQUEST FOR INTERROGATORIES**<br><br>Case No. 2:18-cv-00254-001<br><br><br>Judge:  Bruce S. Jenkins |

Todd Allan Booth ("Defendant Booth"), pursuant to Federal Rule of Civil Procedure 33, respectfully objects to and answers Plaintiffs' First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

1.      Defendant Booth objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they are overly broad, compound, unduly burdensome and purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure and the Scheduling Order entered July 17, 2018. In providing these responses and answers, Mr. Booth gives the wording of Plaintiffs' requests

their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s). Additionally, the Mr. Booth does not waive his right to object to future interrogatories propounded on him for exceeding the obligations and number allowed pursuant to the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018.

2.      Defendant Booth objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or is otherwise privileged, protected or exempted from discovery under Utah or federal law.

3.      Defendant Booth objects generally to the Introduction, Instructions, and Definitions contained within Plaintiffs' First Set of Interrogatories and/or First Set of Requests for Production of Documents to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure. In providing these responses and answers, Mr. Booth gives the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s).

4.      Defendant Booth has made reasonable efforts to answer Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents as required by the Federal Rules of Civil Procedure; but as discovery is ongoing and the investigation continues, he hereby reserves the right to supplement or amend her responses as discovery progresses.

. . .

ANSWERS TO INTERROGATORIES:

**INTERROGATORY NO. 1:** Identify all Jail Staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.

**Answer to Interrogatory No. 1:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert medical opinions.   Mr. Booth further objects to the extent it is overbroad and compound.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.   Please see those documents in accordance with Federal Rule of Civil Procedure 33(d). Additionally, I had contact with Ms. Ostler.

**INTERROGATORY NO. 2:** For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited to, all failures to act, all information reviewed, all communications made or received, all medical decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.

**Answer to Interrogatory No. 2:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Additionally, I made the medical referral on April 1, 2016 at 15:25 hours.

**INTERROGATORY NO. 3:** Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C.

**Answer to Interrogatory No. 3:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 4:** Describe in detail the relationship between Salt Lake County Metro Jail or Salt Lake County and Wellcon, including, but not limited to, the services provided by Wellcon, the manner in which compensation to Wellcon is determined, what types of decisions Wellcon is authorized to make, what information is reported by Wellcon, and what

information is communicated between Salt Lake County Metro Jail and Wellcon pertaining to medical treatment.

**Answer to Interrogatory No. 4:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is described in the contracts publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 5:** Identify all communications that occurred from and including March 29, 2016, through and including April 2, 2016, between Wellcon and any Jail Staff.

**Answer to Interrogatory No. 5:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and or attorney-client privilege. Defendant Booth further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Booth objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 6:** Describe in detail all changes within the last ten years to policies, whether written or unwritten, applicable to the medical diagnosis, evaluation,

monitoring, and treatment of persons incarcerated at Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Health Services Unit Policies and Procedures, the Salt Lake County Jail Policy Manual, and any other policy, practice, pattern, or custom.

**Answer to Interrogatory No. 6:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant Booth further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Defendant Booth further objects to the extent this interrogatory calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, I do not recall specific policy changes to be able to respond to this interrogatory.

**INTERROGATORY NO. 7:** Describe in detail each instance of conduct or inaction relating to Lisa Marie Ostler by any employee or agent of Salt Lake County, including any person associated with Wellcon, Inc., that violated any policy applicable to the Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Policy Manual, Salt Lake County Jail Health Services Unit Policies and Procedures, and any other applicable policy, practice, or procedure, whether written or unwritten, and identify each policy that was violated.

**Answer to Interrogatory No. 7:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions. Defendant Booth further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Booth objects to this

interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waving these objections and subject to them, I did not nor am I aware of any employee or agent of Salt Lake County that violated any policy applicable to the Salt Lake County Metro Jail relating to Ms. Ostler.

**INTERROGATORY NO. 8:** Identify all Incarcerated Persons who had a Serious Medical Event in the Salt Lake County Metro Jail in the last 10 years, pursuant to an appropriate protective order if required, including, but not limited to, Incarcerated Persons who died in custody in Salt Lake County Metro Jail, were released from Salt Lake County Metro Jail for medical reasons, or were transported from the Salt Lake County Metro Jail to any hospital or medical facility.

**Answer to Interrogatory No. 8:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Booth further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Booth objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 9**: For each person identified in response to Interrogatory No. 8, pursuant to an appropriate protective order if required, describe in detail the Serious Medical

Event, including, but not limited to, the following, if applicable: the dates on which symptoms were reported, to whom the symptoms were reported, what those symptoms were, what diagnoses were made, on what date each diagnosis was made, who made each diagnosis, what treatment was provided, when each treatment was provided, who provided each treatment, all referrals for medical treatment, all transfers to medical units or medical facilities, the medical outcome, and the cause of death.

**Answer to Interrogatory No. 9:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Booth further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Booth objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 10:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person does not eat one or more meals.

**Answer to Interrogatory No. 10:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policies and procedures that were provided in Defendants' initial disclosures and in

response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 11:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person requests medical assistance, whether formally or informally, whether for herself or for another person.

**Answer to Interrogatory No. 11:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Generally however, it depends on the severity of the needs for medical. For most medical needs prisoners are given a medical kite to fill out, the information is passed onto medical staff and are treated through triage.  More severe situations medical is notified.

**INTERROGATORY NO. 12:** Describe in detail any way in which the conduct of any agent of Salt Lake County, including all employees, all officers, all of the individually named Defendants, and all persons affiliated with Wellcon, deviated from the practices or policies described in response to Interrogatories 10 and 11.

**Answer to Interrogatory No. 12:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Booth further objects to this interrogatory to the extent it calls for

information that is protected under the attorney-client privilege and/or constitutes attorney work product.  Furthermore, Defendant Booth objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant Booth objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 13:** For each instance in the last 10 years in which an Incarcerated Person was known to have not eaten for a period that extended for at least three consecutive meals, pursuant to an appropriate protective order if required, describe in detail the response by Salt Lake County and its agents, officers, and employees, including, but not limited to, all medical evaluations performed, all diagnoses made, and all referrals for treatment made.

**Answer to Interrogatory No. 13:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Defendant Booth also objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant Booth objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possesses specific information to respond.

**INTERROGATORY NO. 14:** Describe in detail all training provided to each of the individually named Defendants, including, but not limited to, all academic degrees earned, all certificates awarded, and all vocational training programs completed at any time and all training provided within the last ten years in connection to the individual's employment.

**Answer to Interrogatory No. 14:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Defendant Booth also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waving these objections and subject to them, I participate in various mandatory and elective training opportunities, including at least 40 hours of in-service training per year, but I have not kept a list of those to refer to and provide a specific response. The Sheriff's Office Training Division should have a record of my attendance. I do not know specific information about other defendants to respond.

**INTERROGATORY NO. 15:** Describe in detail the job description for the positions held by each of the individually named Defendants for the period of March 29, 2016, to April 2, 2016, including, but not limited to, the position's supervisory responsibilities, duties to respond to requests for medical treatment, duties to provide medical treatment, duties to make referrals for medical treatment, and duties to monitor or evaluate the health and safety of people incarcerated at Salt Lake County Metro Jail.

**Answer to Interrogatory No. 15:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Defendant Booth

also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is best summarized in the individual job descriptions SLCo Ostler 000259-000266 with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties) produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Additionally, I am a housing Officer and generally my duties are to provide safety and security, and to continuously scan the unit to watch the prisoners. I observe each prisoner at least once per hour by physically walking the housing area, to visually look around and communicate with prisoners to respond to concerns and assess their wellbeing and to contemporaneously document such checks.

**INTERROGATORY NO. 16:** Describe in detail the supervisory duties, including what persons or entities are responsible for each aspect of the supervision, of the Salt Lake County Metro Jail, including, but not limited to, the implementation and establishment of policies and procedures applicable to the Salt Lake County Metro Jail and the supervision and training of officers, agents, and employees assigned to work at the Salt Lake County Metro Jail.

**Answer to Interrogatory No. 16:** Defendant Booth objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Booth further objects to this interrogatory to the extent such information is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, this information is summarized in documents Bates Nos. SLCo Ostler 000259-000267 with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties). Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 17:** Describe in detail all evidentiary bases for Defendants' denials of the factual assertions in each of the paragraphs of Plaintiffs' Complaint that were denied in their entirety.

**Answer to Interrogatory No. 17:** Defendant Booth objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Booth further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, on September 19, 2018, the parties agreed that Plaintiffs withdraw this question as each individual denial would constitute a discrete subpart under Fed. R. Civ. P. 33 and therefore exceed the number allowed under the Scheduling Order.

**INTERROGATORY NO. 18:** Describe in detail all disciplinary investigations or decisions by anybody, whether or not the investigation ultimately resulted in disciplinary action, regarding any of the individually named Defendants.

**Answer to Interrogatory No. 18:** Defendant Booth objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Booth further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 19:** Describe in detail all requests that were made by any person to any of the Defendants, including their employees and agents, for Lisa Marie Ostler to receive medical evaluation or assistance.

**Answer to Interrogatory No. 19:** Defendant Booth objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Booth further objects to the extent that such information is outside the scope of his knowledge.

Without waiving these objections and subject to them, please see my response to Interrogatory Nos. 2 and 21.

**INTERROGATORY NO. 20:** Describe in detail all responses, including communications to Lisa Marie Ostler, by Defendants, including their employees and agents, to requests for Lisa Marie Ostler to receive medical evaluation or treatment.

**Answer to Interrogatory No. 20:** Defendant Booth objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome. Defendant Booth further objects to the extent it calls for information outside the scope of his personal knowledge.

Without waiving these objections and subject to them, please see my response to Interrogatory Nos. 2 and 21.

**INTERROGATORY NO. 21:** Describe in detail any evidence or facts that support Defendants' Fifth Affirmative Defense that "Lisa Ostler's own conduct, or that of others, illegal and otherwise, and Ms. Ostler's own contributory negligence and/or affirmative acts, directly caused or contributed to Plaintiffs' alleged injuries."

**Answer to Interrogatory No. 21:** Defendant Booth objects to this interrogatory as overly broad, vague, unduly burdensome, and calls for information that is outside the scope of his personal knowledge. Defendant Booth further objects to the extent this information calls for information that is subject to attorney-client privilege and/or attorney work product.  Moreover, Defendant Booth objects to the extent that discovery, including fact discovery is not complete.

Without waiving these objections and subject to them, Ms. Ostler did not request to see medical to me.

**INTERROGATORY NO. 22:** Describe in detail the exact sequence of events at the Salt Lake County Metro Jail from April 29, 2016, until April 2, 2016, involving Lisa Marie Ostler.

**Answer to Interrogatory No. 22:** Defendant Booth objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, I can only answer that I had medical screen Ms. Ostler at approximately 15:25 hours. I briefed the oncoming Housing Officer that I had medical assess Prisoner Ostler.  Then I was off duty.

**INTERROGATORY NO. 23:** Describe in detail the policies and practices implemented at the Salt Lake County Metro Jail relating to discharging from confinement injured or ill Incarcerated Persons to be taken to a hospital or other medical facility.

**Answer to Interrogatory No. 23:** Defendant Booth objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policy and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto, that include those policies and procedures in the Salt Lake County Jail Health Services Unit Policies and Procedures. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Respectfully submitted this 1st day of October 2018.


SIM GILL
District Attorney for Salt Lake County

/s/ Jacque M. Ramos
JACQUE M. RAMOS
Deputy District Attorney
*Attorney for Defendants*

<u>VERIFICATION</u>:

I, Todd Booth, in my capacity as the Corrections Office at the Salt Lake County Adult Detention Center, declare under criminal penalty under the law of Utah that the foregoing Answers to the Interrogatories served upon me by Plaintiff are true to the best of my knowledge and belief.

Todd Booth

<u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct copy of the foregoing Responses to Plaintiffs' first

Set of Interrogatories was SERVED via U.S. Mail, first-class, postage prepaid on this the 1st day

of October, 2018, to the following:

Ross C. Anderson
Law Offices of Rocky Anderson
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, UT 84111

/s/ Iris Pittman
Paralegal

EXHIBIT D-5

Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email:jmramos@slco.org
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants*

---

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CALVIN OSTLER, et al.<br><br>                  Plaintiff,<br>v.<br><br>HOLLY PATRICE HARRIS, et al.,<br><br>        Defendants. | **RESPONSES TO PLAINTIFFS' REQUEST FOR INTERROGATORIES**<br><br>Case No. 2:18-cv-00254-001<br><br><br>Judge:  Bruce S. Jenkins |

Brent Tucker ("Defendant Tucker"), pursuant to Federal Rule of Civil Procedure 33, respectfully objects to and answers Plaintiffs' First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

1.      Defendant Tucker objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they are overly broad, compound, unduly burdensome and purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure and the Scheduling Order entered July 17, 2018. In providing these responses and answers, Defendant Tucker gives the wording of Plaintiffs'

requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s). Additionally, Defendant Tucker does not waive his right to object to future interrogatories propounded on him for exceeding the obligations and number allowed pursuant to the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018.

2.      Defendant Tucker objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or is otherwise privileged, protected or exempted from discovery under Utah or federal law.

3.      Defendant Tucker objects generally to the Introduction, Instructions, and Definitions contained within Plaintiffs' First Set of Interrogatories and/or First Set of Requests for Production of Documents to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure. In providing these responses and answers, Defendant Tucker gives the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s).

4.      Defendant Tucker has made reasonable efforts to answer Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents as required by the Federal Rules of Civil Procedure; but as discovery is ongoing and the investigation continues, he hereby reserves the right to supplement or amend her responses as discovery progresses.

<u>ANSWERS TO INTERROGATORIES:</u>

**INTERROGATORY NO. 1:** Identify all Jail Staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.

**Answer to Interrogatory No. 1:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert medical opinions.   Defendant Tucker further objects to the extent it is overbroad and compound.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SCLo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.   Please see those documents in accordance with Federal Rule of Civil Procedure 33(d). Additionally, I had contact with Ms. Ostler.  Other than myself, I am aware of an additional nurse who conducted diabetic checks, but I do not recall who it was with me.  I do not know who was involved with Ms. Ostler in any capacity in the days leading up to her death.

**INTERROGATORY NO. 2:** For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited

to, all failures to act, all information reviewed, all communications made or received, all medical decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.

**Answer to Interrogatory No. 2:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 3:** Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C.

**Answer to Interrogatory No. 3:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 4:** Describe in detail the relationship between Salt Lake County Metro Jail or Salt Lake County and Wellcon, including, but not limited to, the services provided by Wellcon, the manner in which compensation to Wellcon is determined, what types

of decisions Wellcon is authorized to make, what information is reported by Wellcon, and what information is communicated between Salt Lake County Metro Jail and Wellcon pertaining to medical treatment.

**Answer to Interrogatory No. 4:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is described in the contracts publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 5:** Identify all communications that occurred from and including March 29, 2016, through and including April 2, 2016, between Wellcon and any Jail Staff.

**Answer to Interrogatory No. 5:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and or attorney-client privilege.  Defendant Tucker further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant Tucker objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 6:** Describe in detail all changes within the last ten years to policies, whether written or unwritten, applicable to the medical diagnosis, evaluation, monitoring, and treatment of persons incarcerated at Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Health Services Unit Policies and Procedures, the Salt Lake County Jail Policy Manual, and any other policy, practice, pattern, or custom.

**Answer to Interrogatory No. 6:**  Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Defendant Tucker further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Defendant Tucker further objects to the extent this interrogatory calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, I do not recall specific policy changes to be able to respond to this interrogatory.

**INTERROGATORY NO. 7:** Describe in detail each instance of conduct or inaction relating to Lisa Marie Ostler by any employee or agent of Salt Lake County, including any person associated with Wellcon, Inc., that violated any policy applicable to the Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Policy Manual, Salt Lake County Jail Health Services Unit Policies and Procedures, and any other applicable policy, practice, or procedure, whether written or unwritten, and identify each policy that was violated.

**Answer to Interrogatory No. 7:**  Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Tucker further objects to this interrogatory as overly broad, vague,

unduly burdensome, and not proportionate. Moreover, Defendant Tucker objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waving these objections and subject to them, I did not nor am I aware of any employee or agent of Salt Lake County that violated any policy applicable to the Salt Lake County Metro Jail relating to Ms. Ostler.

**INTERROGATORY NO. 8:** Identify all Incarcerated Persons who had a Serious Medical Event in the Salt Lake County Metro Jail in the last 10 years, pursuant to an appropriate protective order if required, including, but not limited to, Incarcerated Persons who died in custody in Salt Lake County Metro Jail, were released from Salt Lake County Metro Jail for medical reasons, or were transported from the Salt Lake County Metro Jail to any hospital or medical facility.

**Answer to Interrogatory No. 8:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions. Defendant Tucker further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Tucker objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 9**: For each person identified in response to Interrogatory No. 8, pursuant to an appropriate protective order if required, describe in detail the Serious Medical Event, including, but not limited to, the following, if applicable: the dates on which symptoms were reported, to whom the symptoms were reported, what those symptoms were, what diagnoses were made, on what date each diagnosis was made, who made each diagnosis, what treatment was provided, when each treatment was provided, who provided each treatment, all referrals for medical treatment, all transfers to medical units or medical facilities, the medical outcome, and the cause of death.

**Answer to Interrogatory No. 9:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Tucker further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Tucker objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 10:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person does not eat one or more meals.

**Answer to Interrogatory No. 10:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 11:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person requests medical assistance, whether formally or informally, whether for herself or for another person.

**Answer to Interrogatory No. 11:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 12:** Describe in detail any way in which the conduct of any agent of Salt Lake County, including all employees, all officers, all of the individually named Defendants, and all persons affiliated with Wellcon, deviated from the practices or policies described in response to Interrogatories 10 and 11.

**Answer to Interrogatory No. 12:**  Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Tucker further objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work

product.  Furthermore, Defendant Tucker objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant Tucker objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 13:** For each instance in the last 10 years in which an Incarcerated Person was known to have not eaten for a period that extended for at least three consecutive meals, pursuant to an appropriate protective order if required, describe in detail the response by Salt Lake County and its agents, officers, and employees, including, but not limited to, all medical evaluations performed, all diagnoses made, and all referrals for treatment made.

**Answer to Interrogatory No. 13:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Defendant Tucker also objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant Tucker objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 14:** Describe in detail all training provided to each of the individually named Defendants, including, but not limited to, all academic degrees earned, all

certificates awarded, and all vocational training programs completed at any time and all training provided within the last ten years in connection to the individual's employment.

**Answer to Interrogatory No. 14:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant Tucker also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waving these objections and subject to them, I am not aware of what others have completed or accomplished over the last ten years. The Sheriff's Office Training Division should have a record of my attendance of trainings.

**INTERROGATORY NO. 15:** Describe in detail the job description for the positions held by each of the individually named Defendants for the period of March 29, 2016, to April 2, 2016, including, but not limited to, the position's supervisory responsibilities, duties to respond to requests for medical treatment, duties to provide medical treatment, duties to make referrals for medical treatment, and duties to monitor or evaluate the health and safety of people incarcerated at Salt Lake County Metro Jail.

**Answer to Interrogatory No. 15:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant Tucker also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is best summarized in the individual job descriptions SLCo Ostler 000259-000266 with respect to the

Sheriff please see Utah Code § 17-22-2 (Sheriff General duties) produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 16:** Describe in detail the supervisory duties, including what persons or entities are responsible for each aspect of the supervision, of the Salt Lake County Metro Jail, including, but not limited to, the implementation and establishment of policies and procedures applicable to the Salt Lake County Metro Jail and the supervision and training of officers, agents, and employees assigned to work at the Salt Lake County Metro Jail.

**Answer to Interrogatory No. 16:** Defendant Tucker objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Tucker further objects to this interrogatory to the extent such information is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, this information is summarized in documents SLCo Ostler 000259-000267 with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties). Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 17:** Describe in detail all evidentiary bases for Defendants' denials of the factual assertions in each of the paragraphs of Plaintiffs' Complaint that were denied in their entirety.

**Answer to Interrogatory No. 17:** Defendant Tucker objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Tucker

further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, on September 19, 2018, the parties agreed that Plaintiffs withdraw this question as each individual denial would constitute a discrete subpart under Fed. R. Civ. P. 33 and therefore exceed the number allowed under the Scheduling Order.

**INTERROGATORY NO. 18:** Describe in detail all disciplinary investigations or decisions by anybody, whether or not the investigation ultimately resulted in disciplinary action, regarding any of the individually named Defendants.

**Answer to Interrogatory No. 18:** Defendant Tucker objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Tucker further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, there had not been any disciplinary action taken against me that I recall. I do not recall or possess specific information to respond regarding the other Defendants.

**INTERROGATORY NO. 19:** Describe in detail all requests that were made by any person to any of the Defendants, including their employees and agents, for Lisa Marie Ostler to receive medical evaluation or assistance.

**Answer to Interrogatory No. 19:** Defendant Tucker objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Tucker further objects to the extent that such information is outside the scope of his knowledge.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 20:** Describe in detail all responses, including communications to Lisa Marie Ostler, by Defendants, including their employees and agents, to requests for Lisa Marie Ostler to receive medical evaluation or treatment.

**Answer to Interrogatory No. 20:** Defendant Tucker objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome. Defendant Tucker further objects to the extent it calls for information outside the scope of his personal knowledge.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 21:** Describe in detail any evidence or facts that support Defendants' Fifth Affirmative Defense that "Lisa Ostler's own conduct, or that of others, illegal and otherwise, and Ms. Ostler's own contributory negligence and/or affirmative acts, directly caused or contributed to Plaintiffs' alleged injuries."

**Answer to Interrogatory No. 21:** Defendant Tucker objects to this interrogatory as overly broad, vague, unduly burdensome, and calls for information that outside the scope of his personal knowledge. Defendant Tucker further objects to the extent this information calls for information that is subject to attorney-client privilege and/or attorney work product.  Moreover, Defendant Tucker objects to the extent that discovery, including fact discovery is not complete.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 22:** Describe in detail the exact sequence of events at the Salt Lake County Metro Jail from April 29, 2016, until April 2, 2016, involving Lisa Marie Ostler.

**Answer to Interrogatory No. 22:** Defendant Tucker objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 23:** Describe in detail the policies and practices implemented at the Salt Lake County Metro Jail relating to discharging from confinement injured or ill Incarcerated Persons to be taken to a hospital or other medical facility.

**Answer to Interrogatory No. 23:** Defendant Tucker objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policy and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto, that include those policies and procedures in the Salt Lake County Jail Health Services Unit Policies and Procedures. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Respectfully submitted this 1st day of October 2018.

SIM GILL
District Attorney for Salt Lake County

/s/ Jacque M. Ramos

JACQUE M. RAMOS
Deputy District Attorney
*Attorney for Defendants*


<u>VERIFICATION</u>:

I, Brent Tucker, in my capacity as a former Corrections Officer at the Salt Lake County

Adult Detention Center, declare under criminal penalty under the law of Utah that the foregoing

Answers to the Interrogatories served upon me by Plaintiff are true to the best of my knowledge

and belief.


_____
Brent Tucker

<u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct copy of the foregoing Responses to Plaintiffs' first

Set of Interrogatories was SERVED via U.S. Mail, first-class, postage prepaid on this the 1st day

of October, 2018, to the following:

Ross C. Anderson
Law Offices of Rocky Anderson
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, UT 84111

                                        /s/ Iris Pittman
                                        Paralegal

EXHIBIT D-6

Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email:jmramos@slco.org
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CALVIN OSTLER, et al.<br><br>        Plaintiff,<br><br>v.<br><br>HOLLY PATRICE HARRIS, et al.,<br><br>        Defendants. | **RESPONSES TO PLAINTIFFS' REQUEST FOR INTERROGATORIES**<br><br>Case No. 2:18-cv-00254-001<br><br><br>Judge:  Bruce S. Jenkins |

Colby Grey James ("Defendant James"), pursuant to Federal Rule of Civil Procedure 33,

respectfully objects to and answers Plaintiffs' First Set of Interrogatories as follows:

<u>GENERAL OBJECTIONS</u>

1.      Defendant James objects generally to Plaintiffs' First Set of Interrogatories and First Set

of Requests for Production of Documents to the extent they are overly broad, compound,

unduly burdensome and purport to impose obligations that differ from or exceed those imposed

by the Federal Rules of Civil Procedure and the Scheduling Order entered July 17, 2018. In

providing these responses and answers, Mr. James gives the wording of Plaintiffs' requests

their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s). Additionally, Mr. James does not waive his right to object to future interrogatories propounded on him for exceeding the obligations and number allowed pursuant to the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018.

2.      Defendant James objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or is otherwise privileged, protected or exempted from discovery under Utah or federal law.

3.      Defendant James objects generally to the Introduction, Instructions, and Definitions contained within Plaintiffs' First Set of Interrogatories and/or First Set of Requests for Production of Documents to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure. In providing these responses and answers, Mr. James gives the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s).

4.      Defendant James has made reasonable efforts to answer Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents as required by the Federal Rules of Civil Procedure; but as discovery is ongoing and the investigation continues, he hereby reserves the right to supplement or amend his responses as discovery progresses.

. . .

<u>ANSWERS TO INTERROGATORIES:</u>

**INTERROGATORY NO. 1:** Identify all Jail Staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.

**Answer to Interrogatory No. 1:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert medical opinions.   Mr. James further objects to the extent it is overbroad and compound.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.   Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 2:** For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited to, all failures to act, all information reviewed, all communications made or received, all medical decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.

**Answer to Interrogatory No. 2:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 3:** Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C.

**Answer to Interrogatory No. 3:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 4:** Describe in detail the relationship between Salt Lake County Metro Jail or Salt Lake County and Wellcon, including, but not limited to, the services provided by Wellcon, the manner in which compensation to Wellcon is determined, what types of decisions Wellcon is authorized to make, what information is reported by Wellcon, and what information is communicated between Salt Lake County Metro Jail and Wellcon pertaining to medical treatment.

**Answer to Interrogatory No. 4:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is described in the contracts publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 5:** Identify all communications that occurred from and including March 29, 2016, through and including April 2, 2016, between Wellcon and any Jail Staff.

**Answer to Interrogatory No. 5:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and or attorney-client privilege. Defendant James further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant James objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 6:** Describe in detail all changes within the last ten years to policies, whether written or unwritten, applicable to the medical diagnosis, evaluation, monitoring, and treatment of persons incarcerated at Salt Lake County Metro Jail, including, but

not limited to, the Salt Lake County Jail Health Services Unit Policies and Procedures, the Salt Lake County Jail Policy Manual, and any other policy, practice, pattern, or custom.

**Answer to Interrogatory No. 6:**  Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Defendant James further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Defendant James further objects to the extent this interrogatory calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, I do not recall specific policy changes to be able to respond to this interrogatory.

**INTERROGATORY NO. 7:**  Describe in detail each instance of conduct or inaction relating to Lisa Marie Ostler by any employee or agent of Salt Lake County, including any person associated with Wellcon, Inc., that violated any policy applicable to the Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Policy Manual, Salt Lake County Jail Health Services Unit Policies and Procedures, and any other applicable policy, practice, or procedure, whether written or unwritten, and identify each policy that was violated.

**Answer to Interrogatory No. 7:**  Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant James further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant James objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waving these objections and subject to them, I did not nor am I aware of any employee or agent of Salt Lake County that violated any policy applicable to the Salt Lake County Metro Jail relating to Ms. Ostler.

**INTERROGATORY NO. 8:** Identify all Incarcerated Persons who had a Serious Medical Event in the Salt Lake County Metro Jail in the last 10 years, pursuant to an appropriate protective order if required, including, but not limited to, Incarcerated Persons who died in custody in Salt Lake County Metro Jail, were released from Salt Lake County Metro Jail for medical reasons, or were transported from the Salt Lake County Metro Jail to any hospital or medical facility.

**Answer to Interrogatory No. 8:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant James further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant James objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 9**: For each person identified in response to Interrogatory No. 8, pursuant to an appropriate protective order if required, describe in detail the Serious Medical Event, including, but not limited to, the following, if applicable: the dates on which symptoms were reported, to whom the symptoms were reported, what those symptoms were, what

diagnoses were made, on what date each diagnosis was made, who made each diagnosis, what treatment was provided, when each treatment was provided, who provided each treatment, all referrals for medical treatment, all transfers to medical units or medical facilities, the medical outcome, and the cause of death.

**Answer to Interrogatory No. 9:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions. Defendant James further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant James objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 10:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person does not eat one or more meals.

**Answer to Interrogatory No. 10:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 11:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person requests medical assistance, whether formally or informally, whether for herself or for another person.

**Answer to Interrogatory No. 11:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 12:** Describe in detail any way in which the conduct of any agent of Salt Lake County, including all employees, all officers, all of the individually named Defendants, and all persons affiliated with Wellcon, deviated from the practices or policies described in response to Interrogatories 10 and 11.

**Answer to Interrogatory No. 12:**  Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant James further objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product.  Furthermore, Defendant James objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant James objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 13:** For each instance in the last 10 years in which an Incarcerated Person was known to have not eaten for a period that extended for at least three consecutive meals, pursuant to an appropriate protective order if required, describe in detail the response by Salt Lake County and its agents, officers, and employees, including, but not limited to, all medical evaluations performed, all diagnoses made, and all referrals for treatment made.

**Answer to Interrogatory No. 13:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant James also objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant James objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possesses specific information to respond.

**INTERROGATORY NO. 14:** Describe in detail all training provided to each of the individually named Defendants, including, but not limited to, all academic degrees earned, all certificates awarded, and all vocational training programs completed at any time and all training provided within the last ten years in connection to the individual's employment.

**Answer to Interrogatory No. 14:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant James

also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waving these objections and subject to them, I have a Bachelors of Nursing from the University of Utah, Re-certified Basic Life Support and CPR. I also participate in various mandatory and elective training opportunities, but I have not kept a list of those to refer to and provide a specific response. The Sheriff's Office Training Division should have a record of my attendance. I do not know specific information about other defendants to respond.

**INTERROGATORY NO. 15:** Describe in detail the job description for the positions held by each of the individually named Defendants for the period of March 29, 2016, to April 2, 2016, including, but not limited to, the position's supervisory responsibilities, duties to respond to requests for medical treatment, duties to provide medical treatment, duties to make referrals for medical treatment, and duties to monitor or evaluate the health and safety of people incarcerated at Salt Lake County Metro Jail.

**Answer to Interrogatory No. 15:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant James also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is best summarized in the individual job descriptions SLCo Ostler 000259-000266 with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties) produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including

supplements thereto. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 16:** Describe in detail the supervisory duties, including what persons or entities are responsible for each aspect of the supervision, of the Salt Lake County Metro Jail, including, but not limited to, the implementation and establishment of policies and procedures applicable to the Salt Lake County Metro Jail and the supervision and training of officers, agents, and employees assigned to work at the Salt Lake County Metro Jail.

**Answer to Interrogatory No. 16:** Defendant James objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant James further objects to this interrogatory to the extent such information is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, this information is summarized in documents Bates Nos. SLCo Ostler 000259-000267 with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties). Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 17:** Describe in detail all evidentiary bases for Defendants' denials of the factual assertions in each of the paragraphs of Plaintiffs' Complaint that were denied in their entirety.

**Answer to Interrogatory No. 17:** Defendant James objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant James further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, on September 19, 2018, the parties agreed that Plaintiffs withdraw this question as each individual denial would constitute a discrete subpart under Fed. R. Civ. P. 33 and therefore exceed the number allowed under the Scheduling Order.

**INTERROGATORY NO. 18:** Describe in detail all disciplinary investigations or decisions by anybody, whether or not the investigation ultimately resulted in disciplinary action, regarding any of the individually named Defendants.

**Answer to Interrogatory No. 18:** Defendant James objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant James further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 19:** Describe in detail all requests that were made by any person to any of the Defendants, including their employees and agents, for Lisa Marie Ostler to receive medical evaluation or assistance.

**Answer to Interrogatory No. 19:** Defendant James objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant James further objects to the extent that such information is outside the scope of his knowledge.

Without waiving these objections and subject to them, please see my response to Interrogatory Nos. 2 and 21.

**INTERROGATORY NO. 20:** Describe in detail all responses, including communications to Lisa Marie Ostler, by Defendants, including their employees and agents, to requests for Lisa Marie Ostler to receive medical evaluation or treatment.

**Answer to Interrogatory No. 20:** Defendant James objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome. Defendant James further objects to the extent it calls for information outside the scope of his personal knowledge.

Without waiving these objections and subject to them, please see my response to Interrogatory Nos. 2 and 21.

**INTERROGATORY NO. 21:** Describe in detail any evidence or facts that support Defendants' Fifth Affirmative Defense that "Lisa Ostler's own conduct, or that of others, illegal and otherwise, and Ms. Ostler's own contributory negligence and/or affirmative acts, directly caused or contributed to Plaintiffs' alleged injuries."

**Answer to Interrogatory No. 21:** Defendant James objects to this interrogatory as overly broad, vague, unduly burdensome, and calls for information that is outside the scope of his personal knowledge. Defendant James further objects to the extent this information calls for information that is subject to attorney-client privilege and/or attorney work product. Moreover, Defendant James objects to the extent that discovery, including fact discovery is not complete.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond..

**INTERROGATORY NO. 22:** Describe in detail the exact sequence of events at the Salt Lake County Metro Jail from April 29, 2016, until April 2, 2016, involving Lisa Marie Ostler.

**Answer to Interrogatory No. 22:** Defendant James objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 23:** Describe in detail the policies and practices implemented at the Salt Lake County Metro Jail relating to discharging from confinement injured or ill Incarcerated Persons to be taken to a hospital or other medical facility.

**Answer to Interrogatory No. 23:** Defendant James objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policy and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto, that include those policies and procedures in the Salt Lake County Jail Health Services Unit Policies and Procedures. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Respectfully submitted this 1st day of October 2018.


SIM GILL
District Attorney for Salt Lake County

As to Objections           /s/ Jacque M. Ramos
JACQUE M. RAMOS
Deputy District Attorney
*Attorney for Defendants*

<u>VERIFICATION</u>:

I, Colby Grey James, in my capacity as a former Jail Nurse at the Salt Lake County Adult Detention Center, declare under criminal penalty under the law of Utah that the foregoing Answers to the Interrogatories served upon me by Plaintiff are true to the best of my knowledge and belief.

_Colby Grey James_
Colby Grey James

<u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct copy of the foregoing Responses to Plaintiffs' first

Set of Interrogatories was SERVED via U.S. Mail, first-class, postage prepaid on this the 1st day

of October, 2018, to the following:

Ross C. Anderson
Law Offices of Rocky Anderson
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, UT 84111

<u>/s/ Iris Pittman</u>
Paralegal

EXHIBIT D-7

Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email:jmramos@slco.org
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| CALVIN OSTLER, et al.<br><br>Plaintiff,<br><br>v.<br><br>HOLLY PATRICE HARRIS, et al.,<br><br>Defendants. | **RESPONSES TO PLAINTIFFS' REQUEST FOR INTERROGATORIES**<br><br>Case No. 2:18-cv-00254-001<br><br>Judge:  Bruce S. Jenkins |
|---|---|

Todd R. Wilcox ("Defendant Wilcox"), pursuant to Federal Rule of Civil Procedure 33, respectfully objects to and answers Plaintiffs' First Set of Interrogatories as follows:

GENERAL OBJECTIONS

1.      Defendant Wilcox objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they are overly broad, compound, unduly burdensome and purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure and the Scheduling Order entered July 17, 2018. In providing these responses and answers, Dr. Wilcox gives the wording of Plaintiffs' requests

their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s). Additionally, Dr. Wilcox does not waive his right to object to future interrogatories propounded on him for exceeding the obligations and number allowed pursuant to the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018.

2.      Defendant Wilcox objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or is otherwise privileged, protected or exempted from discovery under Utah or federal law.

3.      Defendant Wilcox objects generally to the Introduction, Instructions, and Definitions contained within Plaintiffs' First Set of Interrogatories and/or First Set of Requests for Production of Documents to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure. In providing these responses and answers, Dr. Wilcox gives the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s).

4.      Defendant Wilcox has made reasonable efforts to answer Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents as required by the Federal Rules of Civil Procedure; but as discovery is ongoing and the investigation continues, he hereby reserves the right to supplement or amend his responses as discovery progresses.

. . .

<u>ANSWERS TO INTERROGATORIES:</u>

**INTERROGATORY NO. 1:** Identify all Jail Staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.

**Answer to Interrogatory No. 1:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert medical opinions.   Dr. Wilcox further objects to the extent it is overbroad and compound.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.   Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 2:** For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited to, all failures to act, all information reviewed, all communications made or received, all medical decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.

**Answer to Interrogatory No. 2:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 3:** Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C.

**Answer to Interrogatory No. 3:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, I do not possess specific information to respond.

**INTERROGATORY NO. 4:** Describe in detail the relationship between Salt Lake County Metro Jail or Salt Lake County and Wellcon, including, but not limited to, the services provided by Wellcon, the manner in which compensation to Wellcon is determined, what types of decisions Wellcon is authorized to make, what information is reported by Wellcon, and what information is communicated between Salt Lake County Metro Jail and Wellcon pertaining to medical treatment.

**Answer to Interrogatory No. 4:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is described in the contracts publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 5:** Identify all communications that occurred from and including March 29, 2016, through and including April 2, 2016, between Wellcon and any Jail Staff.

**Answer to Interrogatory No. 5:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and or attorney-client privilege. Defendant Wilcox further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Wilcox objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 6:** Describe in detail all changes within the last ten years to policies, whether written or unwritten, applicable to the medical diagnosis, evaluation, monitoring, and treatment of persons incarcerated at Salt Lake County Metro Jail, including, but

not limited to, the Salt Lake County Jail Health Services Unit Policies and Procedures, the Salt Lake County Jail Policy Manual, and any other policy, practice, pattern, or custom.

**Answer to Interrogatory No. 6:**  Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Defendant Wilcox further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Defendant Wilcox further objects to the extent this interrogatory calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, I do not recall specific policy changes to be able to respond to this interrogatory.

**INTERROGATORY NO. 7:** Describe in detail each instance of conduct or inaction relating to Lisa Marie Ostler by any employee or agent of Salt Lake County, including any person associated with Wellcon, Inc., that violated any policy applicable to the Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Policy Manual, Salt Lake County Jail Health Services Unit Policies and Procedures, and any other applicable policy, practice, or procedure, whether written or unwritten, and identify each policy that was violated.

**Answer to Interrogatory No. 7:**  Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Wilcox further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Wilcox objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waving these objections and subject to them, I did not nor am I aware of any employee or agent of Salt Lake County that violated any policy applicable to the Salt Lake County Metro Jail relating to Ms. Ostler.

**INTERROGATORY NO. 8:** Identify all Incarcerated Persons who had a Serious Medical Event in the Salt Lake County Metro Jail in the last 10 years, pursuant to an appropriate protective order if required, including, but not limited to, Incarcerated Persons who died in custody in Salt Lake County Metro Jail, were released from Salt Lake County Metro Jail for medical reasons, or were transported from the Salt Lake County Metro Jail to any hospital or medical facility.

**Answer to Interrogatory No. 8:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions. Defendant Wilcox further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Wilcox objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 9**: For each person identified in response to Interrogatory No. 8, pursuant to an appropriate protective order if required, describe in detail the Serious Medical Event, including, but not limited to, the following, if applicable: the dates on which symptoms were reported, to whom the symptoms were reported, what those symptoms were, what

diagnoses were made, on what date each diagnosis was made, who made each diagnosis, what treatment was provided, when each treatment was provided, who provided each treatment, all referrals for medical treatment, all transfers to medical units or medical facilities, the medical outcome, and the cause of death.

**Answer to Interrogatory No. 9:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Wilcox further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Wilcox objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 10:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person does not eat one or more meals.

**Answer to Interrogatory No. 10:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 11:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person requests medical assistance, whether formally or informally, whether for herself or for another person.

**Answer to Interrogatory No. 11:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 12:** Describe in detail any way in which the conduct of any agent of Salt Lake County, including all employees, all officers, all of the individually named Defendants, and all persons affiliated with Wellcon, deviated from the practices or policies described in response to Interrogatories 10 and 11.

**Answer to Interrogatory No. 12:**  Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Wilcox further objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product.  Furthermore, Defendant Wilcox objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant Wilcox objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 13:** For each instance in the last 10 years in which an Incarcerated Person was known to have not eaten for a period that extended for at least three consecutive meals, pursuant to an appropriate protective order if required, describe in detail the response by Salt Lake County and its agents, officers, and employees, including, but not limited to, all medical evaluations performed, all diagnoses made, and all referrals for treatment made.

**Answer to Interrogatory No. 13:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Defendant Wilcox also objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Defendant Wilcox objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possesses specific information to respond.

**INTERROGATORY NO. 14:** Describe in detail all training provided to each of the individually named Defendants, including, but not limited to, all academic degrees earned, all certificates awarded, and all vocational training programs completed at any time and all training provided within the last ten years in connection to the individual's employment.

**Answer to Interrogatory No. 14:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Defendant

Wilcox also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waving these objections and subject to them, Defendant Wilcox indicates that he obtained the following degrees:

Bachelor of Science, Duke University, 1988
Medical Doctorate, Vanderbilt University, 1992
Masters in Business Administration, University of Utah 1998

**INTERROGATORY NO. 15:** Describe in detail the job description for the positions held by each of the individually named Defendants for the period of March 29, 2016, to April 2, 2016, including, but not limited to, the position's supervisory responsibilities, duties to respond to requests for medical treatment, duties to provide medical treatment, duties to make referrals for medical treatment, and duties to monitor or evaluate the health and safety of people incarcerated at Salt Lake County Metro Jail.

**Answer to Interrogatory No. 15:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant Wilcox also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is best summarized in the individual job descriptions SLCo Ostler 000259-000266 (with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties)) produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Additionally, the scope of my duties as better described in the contracts

publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 16:** Describe in detail the supervisory duties, including what persons or entities are responsible for each aspect of the supervision, of the Salt Lake County Metro Jail, including, but not limited to, the implementation and establishment of policies and procedures applicable to the Salt Lake County Metro Jail and the supervision and training of officers, agents, and employees assigned to work at the Salt Lake County Metro Jail.

**Answer to Interrogatory No. 16:** Defendant Wilcox objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Wilcox further objects to this interrogatory to the extent such information is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, this information is best summarized in the individual job descriptions SLCo Ostler 000259-000266 (with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties)) produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Additionally, the scope of my duties, including supervisory duties, are better described in the contracts publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 17:** Describe in detail all evidentiary bases for Defendants' denials of the factual assertions in each of the paragraphs of Plaintiffs' Complaint that were denied in their entirety.

**Answer to Interrogatory No. 17:** Defendant Wilcox objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Wilcox further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, on September 19, 2018, the parties agreed that Plaintiffs withdraw this question as each individual denial would constitute a discrete subpart under Fed. R. Civ. P. 33 and therefore exceed the number allowed under the Scheduling Order.

**INTERROGATORY NO. 18:** Describe in detail all disciplinary investigations or decisions by anybody, whether or not the investigation ultimately resulted in disciplinary action, regarding any of the individually named Defendants.

**Answer to Interrogatory No. 18:** Defendant Wilcox objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Wilcox further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 19:** Describe in detail all requests that were made by any person to any of the Defendants, including their employees and agents, for Lisa Marie Ostler to receive medical evaluation or assistance.

**Answer to Interrogatory No. 19:** Defendant Wilcox objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Defendant Wilcox further objects to the extent that such information is outside the scope of his knowledge.

Without waiving these objections and subject to them, please see my response to Interrogatory Nos. 2 and 21.

**INTERROGATORY NO. 20:** Describe in detail all responses, including communications to Lisa Marie Ostler, by Defendants, including their employees and agents, to requests for Lisa Marie Ostler to receive medical evaluation or treatment.

**Answer to Interrogatory No. 20:** Defendant Wilcox objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome. Defendant Wilcox further objects to the extent it calls for information outside the scope of his personal knowledge.

Without waiving these objections and subject to them, please see my response to Interrogatory Nos. 2 and 21.

**INTERROGATORY NO. 21:** Describe in detail any evidence or facts that support Defendants' Fifth Affirmative Defense that "Lisa Ostler's own conduct, or that of others, illegal and otherwise, and Ms. Ostler's own contributory negligence and/or affirmative acts, directly caused or contributed to Plaintiffs' alleged injuries."

**Answer to Interrogatory No. 21:** Defendant Wilcox objects to this interrogatory as overly broad, vague, unduly burdensome, and calls for information that is outside the scope of his personal knowledge. Defendant Wilcox further objects to the extent this information calls for information that is subject to attorney-client privilege and/or attorney work product. Moreover, Defendant Wilcox objects to the extent that discovery, including fact discovery is not complete.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 22:** Describe in detail the exact sequence of events at the Salt Lake County Metro Jail from April 29, 2016, until April 2, 2016, involving Lisa Marie Ostler.

**Answer to Interrogatory No. 22:** Defendant Wilcox objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 23:** Describe in detail the policies and practices implemented at the Salt Lake County Metro Jail relating to discharging from confinement injured or ill Incarcerated Persons to be taken to a hospital or other medical facility.

**Answer to Interrogatory No. 23:** Defendant Wilcox objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policy and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto, that include those policies and procedures in the Salt Lake County Jail Health Services Unit Policies and Procedures. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Respectfully submitted this 1st day of October 2018.

SIM GILL
District Attorney for Salt Lake County

As to Objections /s/ Jacque M. Ramos
JACQUE M. RAMOS
Deputy District Attorney
*Attorney for Defendants*

<u>VERIFICATION:</u>

I, Todd R. Wilcox, M.D., in my capacity as a Medical Director at the Salt Lake County Adult Detention Center, declare under criminal penalty under the law of Utah that the foregoing Answers to the Interrogatories served upon me by Plaintiff are true to the best of my knowledge and belief.

_____

Todd R. Wilcox

<u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct copy of the foregoing Responses to Plaintiffs' first

Set of Interrogatories was SERVED via U.S. Mail, first-class, postage prepaid on this the 1st day

of October, 2018, to the following:

Ross C. Anderson
Law Offices of Rocky Anderson
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, UT 84111

<u>/s/ Iris Pittman</u>
Paralegal

EXHIBIT D-8

Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email:jmramos@slco.org
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants*

---

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| CALVIN OSTLER, et al. | **RESPONSES TO PLAINTIFFS' REQUEST FOR INTERROGATORIES** |
| Plaintiff, | |
| v. | Case No. 2:18-cv-00254-001 |
| HOLLY PATRICE HARRIS, et al., | |
| Defendants. | Judge:  Bruce S. Jenkins |

---

James Winder ("Defendant Winder"), pursuant to Federal Rule of Civil Procedure 33,

respectfully objects to and answers Plaintiffs' First Set of Interrogatories as follows:

GENERAL OBJECTIONS

1.    Defendant Winder objects generally to Plaintiffs' First Set of Interrogatories and First

Set of Requests for Production of Documents to the extent they are overly broad, compound,

unduly burdensome and purport to impose obligations that differ from or exceed those imposed

by the Federal Rules of Civil Procedure and the Scheduling Order entered July 17, 2018. In

providing these responses and answers, Mr. Winder gives the wording of Plaintiffs' requests

their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s). Additionally, Mr. Winder does not waive his right to object to future interrogatories propounded on him for exceeding the obligations and number allowed pursuant to the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018.

2.     Defendant Winder objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or is otherwise privileged, protected or exempted from discovery under Utah or federal law.

3.     Defendant Winder objects generally to the Introduction, Instructions, and Definitions contained within Plaintiffs' First Set of Interrogatories and/or First Set of Requests for Production of Documents to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure. In providing these responses and answers, Mr. Winder gives the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s).

4.     Defendant Winder has made reasonable efforts to answer Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents as required by the Federal Rules of Civil Procedure; but as discovery is ongoing and the investigation continues, he hereby reserves the right to supplement or amend his responses as discovery progresses.

. . .

<u>ANSWERS TO INTERROGATORIES</u>

**INTERROGATORY NO. 1:** Identify all Jail Staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.

**Answer to Interrogatory No. 1:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert medical opinions. Mr. Winder further objects to the extent it is overbroad and compound.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 2:** For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited to, all failures to act, all information reviewed, all communications made or received, all medical decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.

**Answer to Interrogatory No. 2:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 3:** Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C.

**Answer to Interrogatory No. 3:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 4:** Describe in detail the relationship between Salt Lake County Metro Jail or Salt Lake County and Wellcon, including, but not limited to, the services provided by Wellcon, the manner in which compensation to Wellcon is determined, what types of decisions Wellcon is authorized to make, what information is reported by Wellcon, and what information is communicated between Salt Lake County Metro Jail and Wellcon pertaining to medical treatment.

**Answer to Interrogatory No. 4:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is described in the contracts publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 5:** Identify all communications that occurred from and including March 29, 2016, through and including April 2, 2016, between Wellcon and any Jail Staff.

**Answer to Interrogatory No. 5:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and or attorney-client privilege. Defendant Winder further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Winder objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 6:** Describe in detail all changes within the last ten years to policies, whether written or unwritten, applicable to the medical diagnosis, evaluation, monitoring, and treatment of persons incarcerated at Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Health Services Unit Policies and Procedures, the Salt Lake County Jail Policy Manual, and any other policy, practice, pattern, or custom.

**Answer to Interrogatory No. 6:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge. Defendant Winder further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Mr. Winder further objects to the extent this interrogatory calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, I do not recall specific policy changes to be able to respond to this interrogatory. Generally, however, I presently recall changes were made during my tenure to the substance abuse withdrawal policies and mental health model.

**INTERROGATORY NO. 7:** Describe in detail each instance of conduct or inaction relating to Lisa Marie Ostler by any employee or agent of Salt Lake County, including any person associated with Wellcon, Inc., that violated any policy applicable to the Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Policy Manual, Salt Lake County Jail Health Services Unit Policies and Procedures, and any other applicable policy, practice, or procedure, whether written or unwritten, and identify each policy that was violated.

**Answer to Interrogatory No. 7:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions. Defendant Winder further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Winder objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waving these objections and subject to them, I am not aware of information responsive to this request nor do I recall or possess specific information to respond.

**INTERROGATORY NO. 8:** Identify all Incarcerated Persons who had a Serious Medical Event in the Salt Lake County Metro Jail in the last 10 years, pursuant to an appropriate protective order if required, including, but not limited to, Incarcerated Persons who died in custody in Salt Lake County Metro Jail, were released from Salt Lake County Metro Jail for medical reasons, or were transported from the Salt Lake County Metro Jail to any hospital or medical facility.

**Answer to Interrogatory No. 8:**   Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Winder further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Winder objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 9**: For each person identified in response to Interrogatory No. 8, pursuant to an appropriate protective order if required, describe in detail the Serious Medical Event, including, but not limited to, the following, if applicable: the dates on which symptoms were reported, to whom the symptoms were reported, what those symptoms were, what diagnoses were made, on what date each diagnosis was made, who made each diagnosis, what treatment was provided, when each treatment was provided, who provided each treatment, all referrals for medical treatment, all transfers to medical units or medical facilities, the medical outcome, and the cause of death.

**Answer to Interrogatory No. 9:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.  Defendant Winder further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Winder objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 10:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person does not eat one or more meals.

**Answer to Interrogatory No. 10:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 11:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person requests medical assistance, whether formally or informally, whether for herself or for another person.

**Answer to Interrogatory No. 11:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 12:** Describe in detail any way in which the conduct of any agent of Salt Lake County, including all employees, all officers, all of the individually named Defendants, and all persons affiliated with Wellcon, deviated from the practices or policies described in response to Interrogatories 10 and 11.

**Answer to Interrogatory No. 12:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge and calls for expert opinions. Mr. Winder further objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product. Furthermore, Mr. Winder objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Mr. Winder objects to this interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 13:** For each instance in the last 10 years in which an Incarcerated Person was known to have not eaten for a period that extended for at least three consecutive meals, pursuant to an appropriate protective order if required, describe in detail the

response by Salt Lake County and its agents, officers, and employees, including, but not limited

to, all medical evaluations performed, all diagnoses made, and all referrals for treatment made.

**Answer to Interrogatory No. 13:** Defendant Winder objects to this interrogatory to the

extent it calls for information that is outside the scope of his personal knowledge.  Mr. Winder also

objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.

Moreover, Mr. Winder objects to this interrogatory because it calls for the release of information

protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order

and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific

information to respond.

**INTERROGATORY NO. 14:** Describe in detail all training provided to each of the

individually named Defendants, including, but not limited to, all academic degrees earned, all

certificates awarded, and all vocational training programs completed at any time and all

training provided within the last ten years in connection to the individual's employment.

**Answer to Interrogatory No. 14:** Defendant Winder objects to this interrogatory to the

extent it calls for information that is outside the scope of his personal knowledge.  Mr. Winder also

objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and

compound.

Without waving these objections and subject to them, I do not hold a degree in higher

education, however I did attend some college. I have participated in various mandatory and elective

training opportunities locally and internationally over my career, but I have not kept a list of those

to refer to and provide a specific response. The Sheriff's Office should have a record of my attendance. I also recall participating in the FBI Executive Institute training. I do not know specific information about other defendants to respond.

**INTERROGATORY NO. 15:** Describe in detail the job description for the positions held by each of the individually named Defendants for the period of March 29, 2016, to April 2, 2016, including, but not limited to, the position's supervisory responsibilities, duties to respond to requests for medical treatment, duties to provide medical treatment, duties to make referrals for medical treatment, and duties to monitor or evaluate the health and safety of people incarcerated at Salt Lake County Metro Jail.

**Answer to Interrogatory No. 15:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.  Mr. Winder also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is best summarized in the individual job descriptions Bates Nos. SLCo Ostler 000259-000266 with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties) produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 16:** Describe in detail the supervisory duties, including what persons or entities are responsible for each aspect of the supervision, of the Salt Lake County Metro Jail, including, but not limited to, the implementation and establishment of

policies and procedures applicable to the Salt Lake County Metro Jail and the supervision and training of officers, agents, and employees assigned to work at the Salt Lake County Metro Jail.

**Answer to Interrogatory No. 16:** Mr. Winder objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is summarized in documents Bates Nos. SLCo Ostler 000259-000267 with respect to the Sheriff please see Utah Code § 17-22-2 (Sheriff General duties). Generally, as Sheriff for Salt Lake County, I managed the Salt Lake County Sheriff's Office and the Unified Police.  Duties also included budgetary responsibilities, assisting in formulating policies and procedures, personnel management issues (state and county) and the general enhancement of criminal justice.

**INTERROGATORY NO. 17:** Describe in detail all evidentiary bases for Defendants' denials of the factual assertions in each of the paragraphs of Plaintiffs' Complaint that were denied in their entirety.

**Answer to Interrogatory No. 17:** Mr. Winder objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Mr. Winder further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, on September 19, 2018, the parties agreed that Plaintiffs withdraw this question as each individual denial would constitute a discrete subpart under Fed. R. Civ. P. 33 and therefore exceed the number allowed under the Scheduling Order.

**INTERROGATORY NO. 18:** Describe in detail all disciplinary investigations or decisions by anybody, whether or not the investigation ultimately resulted in disciplinary action, regarding any of the individually named Defendants.

**Answer to Interrogatory No. 18:** Mr. Winder objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Mr. Winder further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 19:** Describe in detail all requests that were made by any person to any of the Defendants, including their employees and agents, for Lisa Marie Ostler to receive medical evaluation or assistance.

**Answer to Interrogatory No. 19:** Mr. Winder objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 20:** Describe in detail all responses, including communications to Lisa Marie Ostler, by Defendants, including their employees and agents, to requests for Lisa Marie Ostler to receive medical evaluation or treatment.

**Answer to Interrogatory No. 20:** Mr. Winder objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome. Mr. Winder further objects to the extent it calls for information outside the scope of personal knowledge.

Without waiving these objections and subject to them, I do not recall specific information to respond.

**INTERROGATORY NO. 21:** Describe in detail any evidence or facts that support Defendants' Fifth Affirmative Defense that "Lisa Ostler's own conduct, or that of others, illegal and otherwise, and Ms. Ostler's own contributory negligence and/or affirmative acts, directly caused or contributed to Plaintiffs' alleged injuries."

**Answer to Interrogatory No. 21:** Mr. Winder objects to this interrogatory as overly broad, vague, unduly burdensome, and calls for information that is outside the scope of his personal knowledge. Mr. Winder further objects to the extent this information calls for information that is subject to attorney-client privilege and/or attorney work product. Moreover, Mr. Winder objects to the extent that discovery, including fact discovery is not complete.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 22:** Describe in detail the exact sequence of events at the Salt Lake County Metro Jail from April 29, 2016, until April 2, 2016, involving Lisa Marie Ostler.

**Answer to Interrogatory No. 22:** Mr. Winder objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and calls for information that is outside the scope of his personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 23:** Describe in detail the policies and practices implemented at the Salt Lake County Metro Jail relating to discharging from confinement injured or ill Incarcerated Persons to be taken to a hospital or other medical facility.

**Answer to Interrogatory No. 23:** Defendant Winder objects to this interrogatory to the extent it calls for information that is outside the scope of his personal knowledge.

Without waving these objections and subject to them, this information is best described in the policy and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto, that include those policies and procedures in the Salt Lake County Jail Health Services Unit Policies and Procedures. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Respectfully submitted this 1st day of October 2018.

SIM GILL
District Attorney for Salt Lake County

As to Objections          /s/ Jacque M. Ramos
                          JACQUE M. RAMOS
                          Deputy District Attorney
                          *Attorney for Defendants*

<u>VERIFICATION</u>:

I, James Winder, in my capacity as the former Salt Lake County Sheriff, declare under criminal penalty under the law of Utah that the foregoing Answers to the Interrogatories served upon me by Plaintiff are true to the best of my knowledge and belief.

James Winder

<u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct copy of the foregoing Responses to Plaintiffs' first

Set of Interrogatories was SERVED via U.S. Mail, first-class, postage prepaid on this the 1st day

of October, 2018, to the following:

Ross C. Anderson
Law Offices of Rocky Anderson
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, UT 84111

<u>/s/ Iris Pittman</u>
Paralegal

EXHIBIT D-9

Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email:jmramos@slco.org
Telephone: 385.468.7700
Facsimile: 385.468.7800
*Attorneys for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CALVIN OSTLER, et al.<br><br>            Plaintiff,<br>v.<br><br>HOLLY PATRICE HARRIS, et al.,<br><br>        Defendants. | **RESPONSES TO PLAINTIFFS' REQUEST FOR INTERROGATORIES**<br><br>Case No. 2:18-cv-00254-001<br><br><br>Judge:  Bruce S. Jenkins |

Pamela Lofgreen ("Defendant Lofgreen"), pursuant to Federal Rule of Civil Procedure

33, respectfully objects to and answers Plaintiffs' First Set of Interrogatories as follows:

## GENERAL OBJECTIONS

1.      Defendant Lofgreen objects generally to Plaintiffs' First Set of Interrogatories and First

Set of Requests for Production of Documents to the extent they are overly broad, compound,

unduly burdensome and purport to impose obligations that differ from or exceed those imposed

by the Federal Rules of Civil Procedure and the Scheduling Order entered July 17, 2018. In

providing these responses and answers, Ms. Lofgreen gives the wording of Plaintiffs' requests

their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s). Additionally, Ms. Lofgreen does not waive her right to object to future interrogatories propounded on her for exceeding the obligations and number allowed pursuant to the Federal Rules of Civil Procedure and Scheduling Order entered July 17, 2018.

2.    Defendant Lofgreen objects generally to Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to the extent they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or is otherwise privileged, protected or exempted from discovery under Utah or federal law.

3.    Defendant Lofgreen objects generally to the Introduction, Instructions, and Definitions contained within Plaintiffs' First Set of Interrogatories and/or First Set of Requests for Production of Documents to the extent they purport to impose obligations that differ from or exceed those imposed by the Federal Rules of Civil Procedure. In providing these responses and answers, Ms. Lofgreen gives the wording of Plaintiffs' requests their normal and plain meaning, and answers and responds in conformity with the Federal Rules of Civil Procedure subject to any specific objection(s) that follow(s).

4.    Defendant Lofgreen has made reasonable efforts to answer Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents as required by the Federal Rules of Civil Procedure; but as discovery is ongoing and the investigation continues, she hereby reserves the right to supplement or amend her responses as discovery progresses.

. . .

<u>ANSWERS TO INTERROGATORIES</u>

**INTERROGATORY NO. 1:** Identify all Jail Staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.

**Answer to Interrogatory No. 1:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert medical opinions.   Ms. Lofgreen further objects to the extent it is overbroad and compound.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SCLo Ostler 000001-258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 2:** For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited to, all failures to act, all information reviewed, all communications made or received, all medical decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.

**Answer to Interrogatory No. 2:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the medical and jail records Bates Nos. SCLo Ostler 000001-258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 3:** Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C.

**Answer to Interrogatory No. 3:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 4:** Describe in detail the relationship between Salt Lake County Metro Jail or Salt Lake County and Wellcon, including, but not limited to, the services provided by Wellcon, the manner in which compensation to Wellcon is determined, what types of decisions Wellcon is authorized to make, what information is reported by Wellcon, and what information is communicated between Salt Lake County Metro Jail and Wellcon pertaining to medical treatment.

**Answer to Interrogatory No. 4:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is described in the contracts publicly available at https://www.slcounty.org/sire/portal.aspx. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 5:** Identify all communications that occurred from and including March 29, 2016, through and including April 2, 2016, between Wellcon and any Jail Staff.

**Answer to Interrogatory No. 5:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and or attorney-client privilege. Defendant Lofgreen further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Lofgreen objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 6:** Describe in detail all changes within the last ten years to policies, whether written or unwritten, applicable to the medical diagnosis, evaluation, monitoring, and treatment of persons incarcerated at Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Health Services Unit Policies and Procedures, the Salt Lake County Jail Policy Manual, and any other policy, practice, pattern, or custom.

**Answer to Interrogatory No. 6:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.  Defendant Lofgreen further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Ms. Lofgreen further objects to the extent this interrogatory calls for information that constitutes subsequent remedial measures.

Without waiving these objections and subject to them, I do not recall specific policy changes to be able to respond to this interrogatory.  Generally, however, I recall the Jail did make a significant change during my tenure to the mental health model where the for-profit contracted services were terminated and the service was shifted to in-house/county staff to ensure better communication and care for the prisoner population.

**INTERROGATORY NO. 7:** Describe in detail each instance of conduct or inaction relating to Lisa Marie Ostler by any employee or agent of Salt Lake County, including any person associated with Wellcon, Inc., that violated any policy applicable to the Salt Lake County Metro Jail, including, but not limited to, the Salt Lake County Jail Policy Manual, Salt Lake County Jail Health Services Unit Policies and Procedures, and any other applicable policy, practice, or procedure, whether written or unwritten, and identify each policy that was violated.

**Answer to Interrogatory No. 7:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions.  Defendant Lofgreen further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Lofgreen objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA.

Without waving these objections and subject to them, I am not aware of information responsive to this request nor do I recall or possess specific information to respond.

**INTERROGATORY NO. 8:** Identify all Incarcerated Persons who had a Serious Medical Event in the Salt Lake County Metro Jail in the last 10 years, pursuant to an appropriate protective order if required, including, but not limited to, Incarcerated Persons who died in custody in Salt Lake County Metro Jail, were released from Salt Lake County Metro Jail for medical reasons, or were transported from the Salt Lake County Metro Jail to any hospital or medical facility.

**Answer to Interrogatory No. 8:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions. Defendant Lofgreen further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Lofgreen objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 9**: For each person identified in response to Interrogatory No. 8, pursuant to an appropriate protective order if required, describe in detail the Serious Medical Event, including, but not limited to, the following, if applicable: the dates on which symptoms were reported, to whom the symptoms were reported, what those symptoms were, what diagnoses were made, on what date each diagnosis was made, who made each diagnosis, what treatment was provided, when each treatment was provided, who provided each treatment, all

referrals for medical treatment, all transfers to medical units or medical facilities, the medical outcome, and the cause of death.

**Answer to Interrogatory No. 9:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions.  Defendant Lofgreen further objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Defendant Lofgreen objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 10:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person does not eat one or more meals.

**Answer to Interrogatory No. 10:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.

Without waving these objections and subject to them, this information is best described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto.  Please see those documents in accordance with Federal Rule of Civil Procedure 33(d). Additionally, generally, I recall that an attending officer would document a meal refusal on the shift log. I recall that the Jail did create a process and written policy on forced feeding/hydration but I do not recall the specific language.

**INTERROGATORY NO. 11:** Describe in detail the practices and policies of the Salt Lake County Metro Jail when an Incarcerated Person requests medical assistance, whether formally or informally, whether for herself or for another person.

**Answer to Interrogatory No. 11:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for expert opinions.

Without waving these objections and subject to them, this information is more accurately described in the policies and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d). Additionally, generally, I recall if a prisoner requires or desires medical attention they submit a medical request form. The forms are reviewed by nurses and triaged during unit visits, either providing immediate assistance or making arrangements for an appointment with medical staff depending on the specific need. If a prisoner expresses or is observed to be experiencing an exigent health situation the attending staff member will notify the medical unit for an emergency response. This also applies to situations when reported by a third party.

**INTERROGATORY NO. 12:** Describe in detail any way in which the conduct of any agent of Salt Lake County, including all employees, all officers, all of the individually named Defendants, and all persons affiliated with Wellcon, deviated from the practices or policies described in response to Interrogatories 10 and 11.

**Answer to Interrogatory No. 12:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge and calls for

expert opinions.  Ms. Lofgreen further objects to this interrogatory to the extent it calls for information that is protected under the attorney-client privilege and/or constitutes attorney work product.  Furthermore, Ms. Lofgreen objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate.  Moreover, Ms. Lofgreen objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 13:** For each instance in the last 10 years in which an Incarcerated Person was known to have not eaten for a period that extended for at least three consecutive meals, pursuant to an appropriate protective order if required, describe in detail the response by Salt Lake County and its agents, officers, and employees, including, but not limited to, all medical evaluations performed, all diagnoses made, and all referrals for treatment made.

**Answer to Interrogatory No. 13:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.  Ms. Lofgreen also objects to this interrogatory as overly broad, vague, unduly burdensome, and not proportionate. Moreover, Ms. Lofgreen objects to the interrogatory because it calls for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions.

Without waving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 14:** Describe in detail all training provided to each of the individually named Defendants, including, but not limited to, all academic degrees earned, all certificates awarded, and all vocational training programs completed at any time and all training provided within the last ten years in connection to the individual's employment.

**Answer to Interrogatory No. 14:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.  Ms. Lofgreen also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waving these objections and subject to them, I do not hold a degree in higher education. Other than my POST (SFO/BCO) certifications, I did participate in various mandatory and elective training opportunities over my career, but I have not kept a list of those to refer to and provide a specific response. The Sheriff's Office should have a record of my attendance. I do not know specific information about other defendants to respond.

**INTERROGATORY NO. 15:** Describe in detail the job description for the positions held by each of the individually named Defendants for the period of March 29, 2016, to April 2, 2016, including, but not limited to, the position's supervisory responsibilities, duties to respond to requests for medical treatment, duties to provide medical treatment, duties to make referrals for medical treatment, and duties to monitor or evaluate the health and safety of people incarcerated at Salt Lake County Metro Jail.

**Answer to Interrogatory No. 15:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.  Ms. Lofgreen

also objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is best summarized in the individual job descriptions Bates Nos. SLCo Ostler 000259-000266 with respect to the Sheriff see Utah Code § 17-22-2 (Sheriff General duties) produced as part of Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 16:** Describe in detail the supervisory duties, including what persons or entities are responsible for each aspect of the supervision, of the Salt Lake County Metro Jail, including, but not limited to, the implementation and establishment of policies and procedures applicable to the Salt Lake County Metro Jail and the supervision and training of officers, agents, and employees assigned to work at the Salt Lake County Metro Jail.

**Answer to Interrogatory No. 16:** Ms. Lofgreen objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound.

Without waiving these objections and subject to them, this information is summarized in documents Bates Nos. SLCo Ostler 000259-000267 with respect to the Sheriff see Utah Code § 17-22-2 (Sheriff General duties). Please see those documents in accordance with Federal Rule of Civil Procedure 33(d). Additionally, generally, The Jail Policy Advisory Committee (JPAC) consists of members of the Corrections Bureau and the District Attorney's Office. These members under direction and of a committee chair (lieutenant) systematically review existing policies for necessary changes and puts forth language for new policy creation. The committee members

facilitate a review and comment process through their respective chains of command and return the product to the committee. Once a product is complete, the committee chair has each division commander sign off on the policy with any comments prior to being submitted to the bureau chief for final approval and distribution.

Training of jail personnel is managed by the Training Unit under the direction of a Division Commander. Training academies for new officers are facilitated by internal training staff and external partners under the authority of and following established curriculum and testing standards of Utah POST.

Corrections Training Officer (CTO) Program is an in-house field training that begins once an officer has successfully graduated from the academy and is immersed in department specific, hands-on training under the supervision of another specially trained and seasoned officer and program supervisors. The trainee is not allowed to complete the program until they have demonstrated competence in all objectives.

Annual training in-service training curriculum is created by the Training Unit and submitted through the chain of command for final approval by the Sheriff and/or his designee. When possible, the individual courses are pre-screened by the division commanders and administration. Minimum number of training hours for sworn personnel is 40 and records are provided to POST annually to ensure certifications are maintained.

**INTERROGATORY NO. 17:** Describe in detail all evidentiary bases for Defendants' denials of the factual assertions in each of the paragraphs of Plaintiffs' Complaint that were denied in their entirety.

**Answer to Interrogatory No. 17:** Ms. Lofgreen objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Ms. Lofgreen further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, on September 19, 2018, the parties agreed that Plaintiffs withdraw this question as each individual denial would constitute a discrete subpart under Fed. R. Civ. P. 33 and therefore exceed the number allowed under the Scheduling Order.

**INTERROGATORY NO. 18:** Describe in detail all disciplinary investigations or decisions by anybody, whether or not the investigation ultimately resulted in disciplinary action, regarding any of the individually named Defendants.

**Answer to Interrogatory No. 18:** Ms. Lofgreen objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and compound. Ms. Lofgreen further objects to the extent it calls for information protected by attorney-client privilege and/or attorney work-product.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 19:** Describe in detail all requests that were made by any person to any of the Defendants, including their employees and agents, for Lisa Marie Ostler to receive medical evaluation or assistance.

**Answer to Interrogatory No. 19:** Ms. Lofgreen objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 20:** Describe in detail all responses, including communications to Lisa Marie Ostler, by Defendants, including their employees and agents, to requests for Lisa Marie Ostler to receive medical evaluation or treatment.

**Answer to Interrogatory No. 20:** Ms. Lofgreen objects to this interrogatory as overly broad, vague, not proportionate, and unduly burdensome. Ms. Lofgreen further objects to the extent it calls for information outside the scope of personal knowledge.

Without waiving these objections and subject to them, I do not recall specific information to respond.

**INTERROGATORY NO. 21:** Describe in detail any evidence or facts that support Defendants' Fifth Affirmative Defense that "Lisa Ostler's own conduct, or that of others, illegal and otherwise, and Ms. Ostler's own contributory negligence and/or affirmative acts, directly caused or contributed to Plaintiffs' alleged injuries."

**Answer to Interrogatory No. 21:** Ms. Lofgreen objects to this interrogatory as overly broad, vague, unduly burdensome, and calls for information that is outside the scope of her personal knowledge. Ms. Lofgreen further objects to the extent this information calls for information that is subject to attorney-client privilege and/or attorney work product.  Moreover, Ms. Lofgreen objects to the extent that discovery, including fact discovery is not complete.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 22:** Describe in detail the exact sequence of events at the Salt Lake County Metro Jail from April 29, 2016, until April 2, 2016, involving Lisa Marie Ostler.

**Answer to Interrogatory No. 22:** Ms. Lofgreen objects to this interrogatory as overly broad, vague, not proportionate, unduly burdensome, and calls for information that is outside the scope of her personal knowledge.

Without waiving these objections and subject to them, I do not recall or possess specific information to respond.

**INTERROGATORY NO. 23:** Describe in detail the policies and practices implemented at the Salt Lake County Metro Jail relating to discharging from confinement injured or ill Incarcerated Persons to be taken to a hospital or other medical facility.

**Answer to Interrogatory No. 23:** Defendant Lofgreen objects to this interrogatory to the extent it calls for information that is outside the scope of her personal knowledge.

Without waving these objections and subject to them, this information is best described in the policy and procedures that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto, that include those policies and procedures in the Salt Lake County Jail Health Services Unit Policies and Procedures. Please see those documents in accordance with Federal Rule of Civil Procedure 33(d).

Generally, I recall that if a prisoner experiences a medical condition or emergency that requires care or treatment that exceeds the Jail's ability to address, Health Services staff will make arrangements/orders for their transfer to a local facility. The transfer could be pre-scheduled such as an external appointment for dialysis or for an unplanned medical event. In most instances these

visits are temporary with the prisoner returning to the jail facility when the hospital or other treatment facility releases the prisoner from their care. Continuity of care is coordinated between the jail medical staff and the external provider.

Respectfully submitted this 1st day of October 2018.

SIM GILL
District Attorney for Salt Lake County

As to Objections                    /s/ Jacque M. Ramos
                                     JACQUE M. RAMOS
                                     Deputy District Attorney
                                     *Attorney for Defendants*

<u>VERIFICATION</u>:

I, Pamela Lofgreen, in my capacity as the former Chief of the Salt Lake County Adult Detention Center, declare under criminal penalty under the law of Utah that the foregoing Answers to the Interrogatories served upon me by Plaintiff are true to the best of my knowledge and belief.

_____

PAMELA LOFGREEN

<u>CERTIFICATE OF SERVICE:</u>

I hereby certify that a true and correct copy of the foregoing Responses to Plaintiffs' first

Set of Interrogatories was SERVED via U.S. Mail, first-class, postage prepaid on this the 1st day

of October, 2018, to the following:

Ross C. Anderson
Law Offices of Rocky Anderson
The Judge Building
Eight East Broadway, Suite 450
Salt Lake City, UT 84111

/s/ Iris Pittman
Paralegal

EXHIBIT E

# LAW OFFICES OF ROCKY ANDERSON

December 26, 2018

Via email - jmramos@slco.org

Jacque M. Ramos
Deputy District Attorney
Salt Lake County
35 East 500 South
Salt Lake City, UT 84111

**Re:    Responses to Your Letter Dated December 21, 2018**

Dear Ms. Ramos:

This letter is to respond to your letter dated December 21, 2018, with the subject "In preparation of our meet and confer regarding discovery issues,"[1] and to correct numerous mischaracterizations, omissions, and after-the-fact additions contained therein. While your letter states it is a "summary of what we have agreed," which would be the appropriate scope of such a letter, you in fact went far beyond that by adding your arguments and mischaracterizations of the facts. This is a classic example of the futility of meeting and conferring with some lawyers.

The purpose of this letter is not to argue the merits of the parties' claims and defenses, but where you have included in your letter your argument and erroneous characterization of the facts, we cannot ignore it. In addressing the substance of your letter, I will, for clarity, utilize the same headings contained in your letter.

1. <u>Plaintiff[s'] Interrogatory No. 1:</u>

You stated that you and your clients "simply don't know or can [sic] know *all* Jail Staff who would have passed Ms. Ostler in the hall or possibly exchanged niceties that would fall within your overly broad request." (Emphasis in original.) First, your statement is a bizarre mischaracterization of the record, which reflects that Lisa Ostler, while she was suffering an extremely painful, fatal medical condition, was not roaming the hallways but was instead locked in her cell[2] and that Lisa Ostler was subject to cruel, vulgar,

---

[1] The subject line of your letter is erroneous in that it was sent *after* we met and conferred, and not in "preparation" for any such meeting.
[2] *See* Deposition of Zachary Frederickson, 134:15–25.

Ross C. "Rocky" Anderson    Heather DeBusk, *Paralegal*        Judge Building, Eight East Broadway, Suite 450, Salt Lake City, Utah 84111
Walter M. Mason                                                     801-349-1690 | RockyAnderson.org | email: Justice@AndersonLawOffices.org

December 26, 2018
Page 2

threatening, and degrading language[3]—not "niceties." Second, Lisa Ostler was in the Salt Lake County Metro Jail for a very brief period of time, most of which is reflected on the video recordings your client has maintained, and Defendants certainly *can* know, and identify to Plaintiffs, every member of the Jail Staff who interacted with Lisa Ostler.

You state that you "now understand" that Plaintiffs seek "the identification of those individuals in control from April 1, 2016[,] to April 2, 2016, who would have been assigned to 8C and may have communicated with Ms. Ostler or other individuals who purportedly spoke to control concerning Lisa Ostler." We object that you could only "now understand" this because the fact that Plaintiffs sought such information was clear from August 23, 2018, when you were served with Plaintiffs' Interrogatories, which asked Defendants to "identify" all jail staff who "had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation or treatment would be provided to Lisa Marie Ostler . . . ."

Additionally, under your headings for Interrogatories No. 1 and No. 2, you attempted to "remind" us "that there is no direct evidence" supporting our "theory" that "Ms. Ostler was pushing her intercom button in her cell or that she spoke to anyone in control or other Jail Staff as a result." What you characterize as our "theory" is what, in addition to being supported by the testimony of other witnesses, your client, who was the last person responsible for the care and custody of Lisa Ostler before she was found unresponsive and not breathing in her cell, repeatedly testified he understood to be true before Lisa Ostler died.[4] You cannot credibly argue that you can withhold any information, whether related to communications between Unit 8C and Central Control on the night of April 1, 2016, or otherwise, on this basis.

   3. Plaintiff[s'] Interrogatory No. 3

You state that individuals who were incarcerated at the Salt Lake County Metro Jail "have certain privacy rights restricting disclosure of their personal identifying information and the County must be diligent in protecting it from release." Your unsupported notion that these witnesses' addresses, phone numbers, and other contact information is not discoverable is wasting time and expense and depriving Plaintiffs of vital information. To be clear, we will seek sanctions for discovery abuse for your withholding of this information if it is not produced by January 4, 2019.

---

[3] *See e.g.,* Deposition of Nicole Danielle Bates, 61:16–19 ("I remember Harris being extremely rude to Lisa. I remember her kicking the window, yelling at her, threatening to write her up for misusing Medical.").

[4] *See, e.g.*, Deposition of Zachary Frederickson, 143:7–14 ("Q: Do you remember at least one or the other Sergeant Beasley or the graveyard shift officer informing you that the inmate [Lisa Ostler] had *constantly pushed her intercom button asking for a nurse*? A: I remember getting this information. I would have gotten this information during shift briefing which would have come from Sergeant Beasley. As to if I heard it both from the grave shift officer and Sergeant Beasley, I don't remember." (emphasis added)).

December 26, 2018
Page 3

You also state in your letter that any disclosure you make of the incarcerated persons' contact information will be subject to a protective order. In our meeting, you never mentioned that you contend such information would be subject to a protective order. Instead, you said this information was easily ascertainable and "equally available" to Plaintiffs, which is not only false (because the information is in your clients' records), but quite the opposite of saying it is private, protected information. Your shifting of your position after our meeting is not conducive to efficiently resolving our discovery disputes and causes additional delay, frustration, and barriers to Plaintiffs acquiring necessary information. Even though it is not at all what we agreed to at our meeting, if you believe the identifying information pertaining to incarcerated persons is to be protected, then you may identify it as protected information and invoke the protection granted by the Court's Standard Protective Order. However, the identifying information of those incarcerated persons does not fall within any category of protected information defined in the Court's Standard Protective Order. Accordingly, we will challenge any such designation made by you. Because designating such information as protected would be baseless, we will also seek sanctions for discovery abuses for your frivolous designations.

Inexplicably, you cite to Rule 26(a)(1)(A), Fed. R. Civ. P., which addresses *initial disclosures*, for your argument that you do not need to produce the information requested in Plaintiffs' Interrogatory No. 3. Your position is baseless.

4. RFPD No. 8

You state in your letter that you will "again see if [responsive] photos are available and within Defendants [sic] possession." Your letter quotes a description of Plaintiffs' RFPD No. 8, but it is not the language of RFPD No. 8. Please refer to the language of RFPD No. 8 in preparing your supplemental responses.

Your letter states that you again object to the request on the basis the "County does not have photographs" that are responsive to the request. That is contrary to your statement to us in the meeting, as well as deposition testimony, that the County maintains identification photos for staff at the Salt Lake County Metro Jail.

In our meeting, you agreed you would, for persons identified in response to Interrogatory No. 1, (1) see if the County's identification photos that were used during a time near March or April of 2016 are still within the County's records and, if so, produce them and (2) if identification photos that were used during that approximate time period are not in your client's control, you would look to identification photos used at earlier or later dates and provide a "reasonable response." A "reasonable response" would entail producing identification photos taken or used anytime within the last five years.

In your letter you further object, unnecessarily, to producing photographs of "*all* Jail Staff." We have never made such a request. Neither was this point discussed in our meeting.

December 26, 2018
Page 4

    5. <u>RFPD No. 5</u>

    For the highly relevant videos that would depict Lisa Ostler's physical condition less than twenty-four hours before she was found unresponsive and not breathing in her cell, you state in your letter that you agree to provide "the reasons based on Defendants [sic] present knowledge and understanding concerning the video footage." That is not what was agreed at the meeting. We do not accept that what is within Defendants' present knowledge and understanding is sufficient. We expect that you inquire and adequately explain what happened to this highly relevant video that was in your client's possession and which contained some of the last depictions of Lisa Ostler while she was alive. We expect if you are not able to produce the video recordings that you provide an affidavit explaining their destruction while in your client's custody and control long after your client received notice not to destroy evidence relating to Lisa Ostler's death.

    6. <u>Deposition of Ron Seewer</u>

    I have provided herewith an amended notice for the depositions of Ron Seewer and Heather Beasley. On November 14, 2018, Iris Pittman provided me with a "Waiver and Acceptance of Service of Subpoena" for each Mr. Seewer and Ms. Beasley bearing your electronic signature. The depositions for Mr. Seewer and Ms. Beasley have only been rescheduled because of your request to postpone them. Accordingly, we expect Mr. Seewer and Ms. Beasley to attend their depositions with no further action from us.

    7. <u>RFPD 16</u>

    We disagree with the characterization in your letter of the history of communications about RFPD 16, most of which are written and speak for themselves.

    We will provide to you by Monday, December 31, 2018, the topics from the Sheriff's Office Policy Manual and Post Orders for which we request further production of documents. Those indexes, which should have been provided months ago, were only provided after we were forced to press the matter and to spend almost three hours meeting and conferring with you.

    8. <u>Inmate Handbook</u>

    You state in your letter that "Your representation that we have not responded to your request is disingenuous as we provided you the Medical Request Form that was available to Ms. Ostler as Bates No. SLCo 002494 the day you requested the information." Our representation was not what you described it to be and was not disingenuous. Your documents, on page SLCo Ostler 1644, reflect that official policy, which you have said was not violated with respect to Lisa Ostler,[5] at the Salt Lake County Metro Jail was that "[a] written pamphlet is given to each patient upon admission." My representation to you, by letter dated December 18, 2018, was that you did not provide documents reflecting the information provided to

---

[5] *See* Defendants' responses to Plaintiffs' Interrogatory No. 7.

December 26, 2018
Page 5

Lisa Ostler relating to requests for medical treatment. We expect from you either a copy of the described written pamphlet or amended answers to interrogatories reflecting that the policy was violated.

    9. <u>Invocation of HIPAA</u>

    You asked us at our meeting last Friday, and in your letter, to consider avenues for obtaining information about Serious Medical Events other than obtaining medical records.

    Defendants have entirely ignored Interrogatory Nos. 5, 7, 8, 9, 12, and 13 and Request for Production of Documents Nos. 12 and 13, with the excuse that *medical records* cannot be produced in conformity with HIPAA (with which we vigorously disagree as being contrary to the clear legal guidance regarding the production of medical records, particularly with the application of an available protective order). Defendants have also objected on grounds of overbreadth and vagueness. We will move the Court to compel the production of the medical records.

    For several months, Defendants have violated their duty to provide documents *other than medical records* responsive to Plaintiffs' discovery requests regarding Serious Medical Events, although Defendants' primary objections have focused on the HIPAA issues, which have no relevance to non-medical records.

    For instance, Defendants have failed to provide (1) nursing logs, (2) housing officer logs, (3) control logs, (4) disciplinary records, (5) records relating to morbidity and mortality meetings, (6) investigations concerning deaths or failures to respond to medical emergencies or to refer for medical diagnosis, monitoring, or treatment, (7) medical request forms (*i.e.,* kites) relating to Serious Medical Events, and (8) other non-medical-record documents relating to serious medical events. Obviously, jail records (other than medical records) will disclose when inmates have died or been taken from the jail to a hospital, yet you have not produced one such document. Jail records (other than medical records) certainly disclose when inmates have claimed in writing that they or others suffered, or had suffered, from serious medical conditions. Yet, you have not produced one page of any such documents. Has a nurse or housing officer not been disciplined for failing to attend to an inmate's serious medical condition during the last ten years? You have not disclosed one page of any such records.

    For purposes of greater clarity, we will agree to limit the definition of "Serious Medical Event" to "Any event or medical condition (an illness, injury, impairment or physical or mental condition) that (1) resulted in death at either Salt Lake County Metro Jail or the Oxbow Jail ("Jails") or elsewhere (to the knowledge of any staff at the Jails), (2) led to or required in-patient hospitalization, (3) led to or required an inmate being housed, monitored, or treated in a medical unit (including the Acute Medical Unit) at the Jails, or (4) related to any matter considered at a disciplinary proceeding regarding, in whole or in part, the failure to obtain or provide appropriate medical diagnosis, referral, or treatment for any medical condition.

    We will not agree to reduce the time period for which such documents and information are being sought. We are entitled to demonstrate a custom and practice at the Jails, as we have alleged. The last

December 26, 2018
Page 6

jury trial Mr. Anderson tried (which, coincidentally, was before Judge Jenkins) was a death case against Salt Lake County and staff at the jail, in which he established the failure to provide necessary medical treatment for a man with a serious head injury. That was a long time ago – and it appears nothing has changed in terms of the abysmal, indifferent medical treatment provided at the Salt Lake County jails. We are entitled to demonstrate that to the jury.

10. <u>Other items</u>

We will provide to you executed releases for medical records pertaining to Lisa Ostler by December 31, 2018.

The last phone number for Laura Lee known by Plaintiffs was 605-777-1135. The last that Plaintiffs knew of Laura Lee's location is that she was moving to California.

You state that you may schedule depositions for "any days in January" "without again confirming" our availability. As Mr. Anderson stated in his email to you on December 14, 2018, and as we reiterated in our meeting, we are unavailable on January 8 and we request you provide us with notice as soon as possible, not less than two weeks in advance.

Sincerely,

/s/ Walter M. Mason
Walter M. Mason

cc:   Tajha Ferrara
tferrara@slco.org

EXHIBIT F

# LAW OFFICES OF ROCKY ANDERSON

December 18, 2018

Via email - jmramos@slco.org

Jacque M. Ramos
Deputy District Attorney
Salt Lake County
35 East 500 South
Salt Lake City, UT 84111

**Re:    Request to Meet and Confer to Address Outstanding Discovery Disputes**

Dear Ms. Ramos:

This letter reflects our request that you confer with us by telephone pursuant to Rule 37(a)(1), Fed. R. Civ. P., regarding several outstanding discovery disputes. Mr. Anderson and I will make ourselves available any time today, tomorrow, or Thursday (December 18, 19, or 20) for a teleconference. Please let us know when you, Ms. Ferrara, or another lawyer in your office will be available for such a conference. For clarity, we will outline here the separate discovery requests, relevant subsequent communications regarding those requests, and the outstanding issues.

1)  **Plaintiffs' Interrogatory No. 1**. Plaintiffs' First Set of Interrogatories was delivered to you electronically on August 23, 2018.[1] Interrogatory No. 1 requested that you:

> Identify all jail staff who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler from March 29, 2016, until her death, including anyone involved, either directly or in a supervisory or consulting capacity, in the screening, interviewing, evaluating, diagnosing, monitoring, triaging, receiving requests for medical treatment, medical decision-making, providing treatment, and choosing to withhold treatment pertaining to Lisa Marie Ostler.[2]

---

[1] Exhibit A, *Plaintiffs' First Set of Interrogatories*.
[2] Exhibit A at 5.

December 18, 2018
Page 2

Defendant Salt Lake County responded on October 1, 2018, that, subject to objections, "this information is best described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto."[3]

On October 26, 2018, I wrote you to by email and stated as follows (emphasis added):

> Plaintiffs' Interrogatory No. 1 requested that Defendants "identify" all jail staff who "had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation or treatment would be provided to Lisa Marie Ostler . . ." In response, **Defendants did not "identify" anyone as that term was defined in Plaintiffs' First Set of Interrogatories**. The very basic information sought in this interrogatory is critical to the merits of the litigation. I am confident that this information would be compelled by the Court. Instead of "identifying" anyone, Defendants referred Plaintiffs to documents numbered SLCo Ostler 1–258. Those documents do provide relevant information, but they do not "identify" the persons whose identities were sought in the interrogatory. **This deficiency is material**. . . . **Defendants have not identified any of the individuals who were receiving requests for medical help from Lisa Ostler on the night of 4/1/16 through Lisa "constantly" (in Defendant Frederickson's words) pushing the intercom button in her cell**. The documents produced by Defendants in response to Plaintiffs' Interrogatory No. 1 are inadequate. . . . **Please actually "identify," as that term is defined in Plaintiffs' Interrogatories, the persons defined in Plaintiffs' Interrogatory No. 1, including those who were receiving messages through Lisa's intercom button**. Also, please immediately "identify" the nurse referenced by Defendant Harris, or, in the alternative, "identify" the nurses on duty at the Salt Lake County Metro Jail on 4/1/16 and 4/2/16.[4]

Having heard no response from you, I wrote to you by email again on November 23, 2018, and repeated our request as follows:

> Plaintiffs' Interrogatory No. 1 requested that Defendants "identify" all jail staff who "had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation or treatment would be provided to Lisa Marie Ostler . . ." In response, Defendants

---

[3] Exhibit B, *Defendant Salt Lake County's Responses to Plaintiffs' Request for Interrogatories* [sic], at 3. Each Defendant in this action provided separate responses to Plaintiffs' Interrogatories, but each of the Defendants' responses to Interrogatory No. 1 similarly referred Plaintiffs to documents SLCo Ostler 1–258.

[4] Exhibit C, *10-26-2018 Email from Walter Mason RE Several Discovery Issues*.

December 18, 2018
Page 3

did not "identify" anyone as that term was defined in Plaintiffs' First Set of Interrogatories. Instead of "identifying" anyone, Defendants referred Plaintiffs to documents numbered SLCo Ostler 1–258. Those documents do provide relevant information, but they do not "identify" the persons whose identities were sought in the interrogatory. Please actually "identify," as that term is defined in Plaintiffs' Interrogatories, the persons defined in Plaintiffs' Interrogatory No. 1, including those who were receiving messages through Lisa's intercom button.[5]

Over a month after my initial email, you finally responded on November 28, 2018, , and stated, in relevant part, as follows (emphasis added):

Defendants' responses refe [sic] you to the medical and jail records identified as SLCo Ostler 0000001-258 produced with Defendants' Initial Disclosures or responses to discovery. Your claim that these documents do not identify those individuals "who had any contact or communication with Lisa Marie Ostler or who had any role in determining whether medical monitoring, diagnosis, evaluation, or treatment would be provided to Lisa Marie Ostler" is without merit. Those records and Defendants' disclosures identify (and you have taken or will be taking the depositions of) individuals responsive to your request, including: Dr. Todd Wilcox, Todd Booth, Brent Tucker, Holly Harris, Zachary Fredrickson, Brad Lewis, and Ron Seewer. Additionally, you have been provided the name of the admitting nurse, Diane Hardy (but have declined to take her deposition). You have also been provided the name of the graveyard nurse, Tim Lewis, which last known address and telephone number has been supplemented to you in Defendants' Supplemental Initial Disclosures, provided herewith.

**You are also aware that the intercom button either goes to the officer in the pod, who have been identified above and in Defendants' disclosures, or control. Control logs have been provided through Defendants' Supplemental Initial Disclosures**, Bates Nos. SLCo Ostler 002495-002505.[6]

Your response is inadequate. First, the documents to which you referred, SLCO OSTLER 2495–2505, do not "identify" the individuals who worked in Central Control in any meaningful way, and certainly not within the meaning of "identify" as defined in Plaintiffs' First Set of Interrogatories.[7] The employees are "identified" in those documents only by their last name

---

[5] Exhibit D, *11-23-2018 Email from Walter Mason RE Follow-up on several discovery issues*.

[6] Exhibit D, at 1–2.

[7] Exhibit A, at 3 ("'Identify' with respect to a person means to give, to the extent known, the person's (a) full name; (b) current or last known home and business address; (c) current or last known home and business telephone number; (d) current or last known place of employment; (e) job title; (f) job description;

December 18, 2018
Page 4

and a call code (and sometimes a first initial), for example, "Salazar JH1" or "Peterson IW9." These documents to which you have referred are not responsive to Plaintiffs' Interrogatory No. 1. Also, you have failed to identify anyone in Central Control who had any intercom communication from or to Lisa Marie Ostler. We should not have to depose everyone on shift on April 1 and 2, 2016, to determine who communicated with, or received communication from, Lisa Marie Ostler. The individuals named in the documents are, or were, employees of Defendant Salt Lake County, which is in possession of all identifying information for these individuals. Information such as "Salazar JH1" is obviously useless to Plaintiffs in so far as Plaintiffs cannot subpoena "Salazar JH1", Plaintiffs do not have any means to contact "Salazar JH1", and "Salazar JH1" has no meaning outside of Defendant Salt Lake County's system. Defendants have an obligation to immediately "identify," as that term was defined in Plaintiffs' First Set of Interrogatories, all employees who were in Central Control and who had any communication with Lisa Marie Ostler, as requested in Plaintiffs' Interrogatory No. 1.

Second, despite my numerous requests, Defendants have never "identified", within the meaning defined in Plaintiffs' First Set of Interrogatories, *anyone*. While *some* identifying information is included in the documents produced, Defendants have not provided all the identifying information requested about any of the people sought to be identified in Plaintiffs' Interrogatory No. 1. Defendants have an obligation to immediately "identify," as that term was defined in Plaintiffs' First Set of Interrogatories, all Jail Staff who fall within the scope of Plaintiffs' Interrogatory No. 1, including the individuals, who appear to be housing officers, who interacted with Lisa Marie Ostler on the night of April 1, 2016, during the "clothing exchange."

2) **Plaintiffs' Interrogatory No. 2.** Plaintiffs sought in Interrogatory No. 2, the following:

> For each person identified in response to Interrogatory No. 1, describe in detail his or her conduct pertaining to Lisa Marie Ostler, including, but not limited to, all failures to act, all information reviewed, all communications made or received, all medical decisions made, all documentation created, all treatment provided, all referrals made, all monitoring performed, and all duties or responsibilities delegated.[8]

Defendant Salt Lake County responded, subject to objections, that "this information is best described in the medical and jail records Bates Nos. SLCo Ostler 000001-000258 that were

---

and (g) any other contact information, including any other information for any person identified as an emergency or other contact person.").

[8] Exhibit A, at 5.

December 18, 2018
Page 5

provided in Defendants' initial disclosures and in response to Requests for Production of Documents, including supplements thereto."[9]

Defendants' response is, again, inadequate. Nowhere in the documents you have referenced is there any indication as to whether there was any communication with, from, or to Lisa Marie Ostler involving many of the people whose names appear in the documents. Defendants cannot fail to provide the basic, necessary information sought in Interrogatory No. 2 on the basis that Defendants refused to "identify" *anyone* as that term was defined in Plaintiffs' First Set of Interrogatories in response to Interrogatory No. 1. Further, the documents referenced provide *absolutely no information* about whether or how *anyone* responded, from approximately 3:30 p.m. on April 1, 2016, until approximately 6:40 a.m. on April 2, 2016, to the repeated, "constant" requests for help made by Lisa Marie Ostler. Lastly, the documents you produced do not fully and accurately "describe in detail"—or, in some instances, describe anything at all regarding—each relevant person's "conduct pertaining to Lisa Marie Ostler."

Defendants are required to immediately provide a substantive response describing the relevant conduct of Jail Staff that is not reflected in the documents produced by Defendants. That includes the conduct and communications of employees in Central Control in addition to their identification.

3) **Plaintiffs' Interrogatory No. 3.** Plaintiffs' Interrogatory No. 3 requested that you "Identify all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C."[10] In response, Defendants referred Plaintiffs to SLCo Ostler 268–69.[11] That document only provides the names of certain incarcerated persons, which is far short of the information required to be provided to "identify" someone within the definition of that word in Plaintiffs' First Set of Interrogatories. On October 26, 2018, I wrote to you and explained that Defendants' responses to this interrogatory were inadequate and requested that you provide the identifying information for these persons.[12] On November 23, 2018, I repeated my request that you provide further identifying information about those incarcerated persons.[13] You finally responded on November 28, 2018, and stated, in relevant part, as follows:

> The document provides the name of each of those individuals incarcerated with Lisa in 8C. Rule 33 does not require Defendants to perform additional research beyond its records, with such research opportunity equally

---

[9] Exhibit B, at 4. Each Defendant in this action provided separate responses to Plaintiffs' Interrogatories, but each of the Defendants' responses to Interrogatory No. 1 similarly referred Plaintiffs to documents SLCo Ostler 1–258.

[10] Exhibit A, at 5.

[11] Exhibit B, at 4.

[12] Exhibit C, at 1.

[13] Exhibit D, at 1.

December 18, 2018
Page 6

available to you, to locate the telephone number and last known address of these inmates.

Your response is inadequate. First, you write as if Defendant Salt Lake County has no other "records" about these incarcerated persons. In fact, Defendant Salt Lake County Jail produced to Plaintiffs warrant records pertaining to Lisa Marie Ostler that contained her identifying information, including her address, telephone number, email address, and date of birth. It is inconceivable that Defendant Salt Lake County does not also have records, whether relating to warrants or otherwise, that contain the requested contact information for these incarcerated persons.

Second, Rule 26(b)(1), Fed. R. Civ. P., defines the scope of discovery as follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Every one of those factors weighs in favor of Defendants ascertaining and disclosing the identifying information about those incarcerated persons if it is accessible through a database search available to Defendants, which we know is available based upon the information your client provided pertaining to Lisa Marie Ostler.

4) **Plaintiffs' RFPD No. 8.** Plaintiffs' First Set of Requests for Production of Documents was served to you on August 23, 2018.[14] Defendants responded on October 1, 2018.[15] I explained to you in an email on October 26 as follows:

> Plaintiffs' Document Request No. 8 sought photographs of jail staff "sufficient to identify the person based upon how he or she appeared at the Salt Lake County Jail between March 29, 2016, to April 2, 2016." Defendants responded that they "are not in possession of photographs depicting individuals as they appeared between March 29, 2016 – April 2, 2016." That response misconstrues Plaintiffs' request. Plaintiffs did not seek photographs "depicting individuals as they appeared" but instead sought photographs "sufficient to identify the person based upon how he or she appeared." Defendant Harris testified that jail staff members maintain photo identification badges. Please provide the identification photos maintained by Defendants for the persons specified in Plaintiffs' Document Request No. 8.[16]

---

[14] Exhibit F, *Plaintiffs' First Set of Requests for Production of Documents*.
[15] Exhibit G, *Defendants' Responses to Plaintiffs' First Set of Requests for Production of Documents*.
[16] Exhibit C, at 2.

December 18, 2018
Page 7

I repeated my request in my November 23, 2018, email to you.[17] On November 28, 2018, you responded to that email, but said nothing about Plaintiffs' RFPD No. 8.[18]

We are sure it is obvious to you how frustrating it is to receive no response from you at all regarding this issue that I first raised with you on October 26. You have an obligation to provide the requested documents immediately.

5) **RFPD No. 5.** Plaintiffs' First Set of Requests for Production of Documents was served to you on August 23, 2018.[19] Defendants responded on October 1, 2018.[20] I emailed you on November 5, and stated:

> [I]t appears that Defendants have omitted relevant videos from their discovery responses. The video recordings from unit 8C begin at 10:10 a.m. on 4/1/2016. However, it appears that Lisa was transferred to 8C a few minutes before that. Also, no video reflects Lisa's movement from 5C to 8C. Accordingly, Plaintiffs request that Defendants immediately supplement their response to Plaintiffs RFP No. 5 with the video from 8C prior to 10:10 a.m. on 4/1/16 as well as the videos reflecting Lisa's transfer from 5C to 8C

You responded on November 28 as follows:

> The video recording from 8C on April 2, 2016, beginning at 0000 hours was provided with Defendants' Responses to Plaintiffs' First Set of Requests for Production of Documents. I believe you are referencing the movement of prisoners on April 1, 2016, noted on the C Pod Sgt. Shift Log Bates No. SLCo Ostler 000043, Officer Shift Logs Bates No. SLCo Ostler 000062. Video of 5C beginning at 0000 to 1200 reflecting the movement of prisoners was also provided with Defendants' Responses to Plaintiffs' First Set of Requests of Production of Documents. Video of 8C on April 1, 2016, prior to 1010 has been requested and will be provided as soon as it has been received by my office.[21]

Your claimed request for the video of 8C prior to 1010 on April 1, 2016, is appreciated, but we still have not yet received it. Please provide it immediately.

You are also obligated to provide immediately the video records reflecting Lisa Marie Ostler being moved through the hallways from Unit 5C to Unit 8C on April 1, 2016. Please provide those video records immediately.

---

[17] Exhibit D, at 1.
[18] Exhibit E.
[19] Exhibit F.
[20] Exhibit G.
[21] Exhibit E, at 2–3.

December 18, 2018
Page 8

6) **Deposition of Ron Seewer.** I will not repeat here the numerous communications since November 18, 2018, in which Mr. Anderson and I have asked for the alternative date for Mr. Seewer's deposition, which was only required because we agreed to *your* request to postpone his deposition. Again, we insist that you provide us a date for his deposition as soon as possible.

7) **RFPD No. 16.** Plaintiffs' First Set of Requests for Production of Documents was served to you on August 23, 2018.[22] Defendants responded on October 1, 2018.[23] On October 28, I sent an email to you stating as follows:

> In Plaintiffs' Request for Production of Documents No. 16, Plaintiffs requested all "Documents not otherwise produced that reflect any policy or procedure relied upon or implemented by any of the Defendants, including, but not limited to, documents provided by Gary DeLand or any person affiliated with him." Defendants produced the Salt Lake County Jail Policy Manual but did not produce the "Post Order Manual" or "Bureau Orders," as those terms are identified in the Jail Policy Manual on page SLCo Ostler 283.

> Please provide all versions of the Post Order Manual and all Bureau Orders created or used in the relevant time period defined in Plaintiffs' First Set of Requests for Production of Documents, from ten years prior to March 29, 2016, through and including the present.[24]

You did not respond.

I again emailed you on December 16, stating as follows:

> On October 28, 2018, I requested that you supplement Defendants' response to Plaintiffs' RFPD No. 16 by providing relevant versions of the Post Order Manual, a type of document that was identified by Pam Lofgreen during her deposition.

> As it has now been more than six weeks since my request and you have not responded, I assume you have had time to locate the responsive documents and do not have an objection to producing the requested versions of the Post Order Manual. Please provide these documents as soon as possible.

---

[22] Exhibit F.
[23] Exhibit G.
[24] Exhibit H, *Emails from Walter Mason RE Post Order Manual and Bureau Orders*.

December 18, 2018
Page 9

Additionally, if there are other policy manuals utilized or referenced by the staff at the Salt Lake County Metro Jail, whether promulgated by the Sheriff's office, the County, or otherwise, those fall within the request and must be produced.[25]

We then exchanged several emails on this topic on December 17, with your last word on the matter being as follows:

[P]lease provide me the subject matters and I will see if there are post orders that are not reflected in the Jail Policy Manual that you have in your possession.[26]

Plaintiffs are without knowledge of the subject matters of the post orders because they have never been produced to us, despite that Plaintiffs requested you produce all "[d]ocuments not otherwise produced that reflect any policy or procedure relied upon or implemented by any of the Defendants." It is unacceptable for you to endlessly delay your production of documents by ignoring our communications and, when we are finally able to get a response from you, putting forward unanswerable follow-up questions. You are obligated to produce the entire Post Order Manual (or the collection of Post Orders in any other form that is not a "manual") as well as the requested Bureau Orders and any other documents reflecting the policies or procedures relied upon at the Salt Lake County Metro Jail as requested on August 23, whether promulgated by the County, the Sheriff's Office, other persons responsible for managing the Salt Lake County Metro Jail, or any other person or entity. You have failed to provide policies of the Sheriff's Office or Salt Lake County that apply to staff at the Salt Lake County Metro Jail.

8) **Inmate Handbook, Plaintiffs' Interrogatory No. 2 and RFPD Nos. 1 and 16.** On November 1, I emailed you as follows:

For tomorrow's deposition, can you provide documents reflecting what information was provided to Lisa Ostler relating to requests for medical treatment? Prior deposition testimony reflected that inmates have access to a type of handbook at a kiosk that contains policies or rules that include requesting medical assistance. The documents produced by Defendants reflects that Lisa Ostler was instructed at the time of booking about how to request medical assistance. The documents produced by Defendants also reflect, on page SLCo Ostler 1644, that "A written pamphlet is given to each patient upon admission."

---

[25] Exhibit H.
[26] Exhibit I, *Email exchange RE Post Order Manual and Bureau Orders*.

December 18, 2018
Page 10

> The documents reflecting what information was provided to Lisa Ostler relating to request for medical treatment are within the scope of Plaintiffs' Document Request Nos. 1 and 16. Those documents also should be included with Defendants' response to Interrogatory No. 2, which was answered by reference to documents produced by Defendants.[27]

At the deposition the following day, you did not provide the requested documents. Neither have you sent me any response to my email or otherwise produced the requested documents. You have an obligation to immediately produce whatever documents comprise the information given to, or made available to, Lisa Marie Ostler by staff at the Salt Lake County Jail pertaining to any policies, procedures, or rules, including the "written pamphlet."

9) **Defendants' Invocation of HIPAA in Response to Plaintiffs' Interrogatory Nos. 5, 7, 8, 9, 12, and 13 and Plaintiffs' RFDP Nos. 12 and 13.** Plaintiffs have never objected to the entry of a protective order pertaining to protected health information sought in Plaintiffs' discovery requests. Plaintiffs' counsel has, in fact, on numerous occasions, suggested that Defendants' disclosures can be made pursuant to the Court's Standard Protective Order. Nonetheless, you have, entirely without basis, absolutely refused to provide information in response to numerous written discovery requests on the purported grounds that they call "for the release of information protected from disclosure under HIPAA irrespective of DUCivR 26-2 Standard Protective Order and Stays of Depositions."[28] Never have you given any explanation, any fact, any legal argument, any case, any statute, or any other legal citation supporting your proposition that the information sought by Plaintiffs is "protected from disclosure under HIPAA irrespective of DUCivR 26-2".

Plaintiffs served their First Set of Interrogatories and First Set of Requests for Production of Documents on August 23, 2018.[29] Those requests specifically contemplated that a protective order may be required by stating, for example, that information was to be produced "pursuant to an appropriate protective order if required."[30] Defendants responded on October 1, 2018, and repeatedly invoked HIPAA as a basis for withholding information, "irrespective" of the Court's Standard Protective Order.

On October 26, 2018, I asked for an explanation of your adamant, unfounded position by stating as follows:

---

[27] Exhibit J, *Email from Walter Mason RE Inmate Handbook*.
[28] *See, e.g.,* Exhibit G, at 8.
[29] Exhibits A and F.
[30] *See, e.g.*, Exhibit A, at 6.

December 18, 2018
Page 11

>Defendants have repeatedly stated that information sought by Plaintiffs is protected by HIPAA from disclosure, irrespective of the Court's standard protective order. To avoid bringing this dispute before the Court, please explain the basis for your argument so that we may attempt to resolve the dispute.[31]

You did not respond.

On November 23, 2018, I reiterated my request as follows:

>Defendants have repeatedly stated that information sought by Plaintiffs is protected by HIPAA from disclosure, irrespective of the Court's standard protective order. Defendants raised this objection in response to Plaintiffs' Interrogatory Nos. 5, 7, 8, 9, 12, and 13 and Plaintiffs' RFPD Nos. 12 and 13. The information Defendants seek to withhold pursuant to HIPAA includes information that is highly relevant to Plaintiffs' claims. Please withdraw the objection and produce the requested information subject to the Court's Standard Protective Order or explain the basis for your argument so that we may attempt to resolve the dispute.[32]

You finally deigned to respond on November 28, 2018, stating as follows:

>DUCivR 26-2 provides that the Standard Protective Order is effective in every case by virtue of the rule. However, the Protective Order does not require production of documents of other non-party's [sic] privileged medical information in violation of HIPAA. This is particularly true when no notice has been provided to these individuals or their representatives and no opportunity has been afforded to them to object to the production of their privileged medical information. You have not presented any argument or authority as to how the Standard Protective Order requires the disclosure of non-parties [sic] medical information, where such release would violate HIPAA and may cause harm to those individuals.

You cited no authority for your position. You did not cite to any provision of HIPAA. And, unbelievably, three months after Plaintiffs' written discovery requests, and nearly two months after Defendants' responses and objections, you say that somehow Plaintiffs have the burden of negating your objection (rather than, as the law provides, it being *your* burden

---

[31] Exhibit C, at 2.
[32] Exhibit D, at 1.

December 18, 2018
Page 12

to prove the validity of your objection[33]) and state, nonsensically, that Plaintiffs "have not presented any argument or authority as to how the Standard Protective Order requires the disclosure" of the requested information. No one has said, or would have any reason to say, that the Standard Protective Order "requires" the disclosure of information. Your clients' responses are required by the Federal Rules of Civil Procedure.

HIPAA does not exempt you and your clients from producing information in response to Plaintiffs' discovery requests, subject to the Court's Standard Protective Order. 45 C.F.R. § 154.512, titled "Uses and disclosures for which an authorization or opportunity to agree or object is not required," provides, under subsection (e), as follows:

> (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
>     *       *       *
>
> > (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
> >
> >     *       *       *
> >
> > > (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

DUCivR 26-2(a) provides as follows:

> [I]t shall not be a legitimate ground for objecting to or refusing to produce information or documents in response to an opposing party's discovery request (e.g. interrogatory, document request, request for admissions, deposition question) or declining to provide information otherwise required to be disclosed pursuant to Fed. R. Civ. P. 26 (a)(1) that the discovery request or disclosure requirement is premature because a protective order has not been entered by the court. Unless the court enters a different protective order, pursuant to motion or stipulated motion, the Standard Protective Order available on the Forms page of the court's website http://www.utd.uscourts.gov shall govern and discovery under the Standard Protective Order shall proceed. The Standard Protective Order is effective

---

[33] *See, e.g., Combe v. Cinemark USA, Inc*, No. 1:08-CV-142 TS, 2009 WL 3584883, at *2 (D. Utah Oct. 26, 2009) ("When the discovery requested appears relevant, the burden is on the party objecting to show discovery is not relevant.").

December 18, 2018
Page 13

> by virtue of this rule and need not be entered in the docket of the specific case.

The plain language of the above authorities makes it clear that HIPAA does *not* serve as a justification for you to withhold the information that plaintiffs have sought through written discovery requests and that you may produce subject to the Court's Standard Protective Order.

10) **Sanctions.** We intend to seek sanctions against you and your clients to the fullest extent allowable, based upon, among the items discussed above, the following reasons:

- Your unreasonable delays in providing dates for Mr. Seewer's deposition, apparently having not even asked Mr. Seewer for the dates he is available until an entire month after we requested alternative dates, even though he is an employee of your client and you have previously accepted service of a subpoena on his behalf. All of this was, of course, after we accommodated your request to postpone Mr. Seewer's deposition.
- Your refusal to allow us to take a deposition in the entire month of December, causing significant delay, without ever providing an explanation as to why your co-counsel or another attorney in your office could not attend the deposition in your absence.
- Your baseless objections to written discovery requests on HIPAA grounds, creating unreasonable delay and deprivation of vital discovery.
- Your failure to properly destroy, and actual use of, information that was identified as inadvertently produced material protected by the attorney work-product doctrine.
- Your providing of authentications to interrogatory answers signed by your clients when your clients had not read the answers you provided and later testified the responses were incorrect, including an identical paragraph in the answers of Defendant Frederickson and Defendant Tucker that was disclaimed by both of them.
- The provision by you and your clients Defendant Frederickson and Defendant Harris's of interrogatory answers that were blatantly false, and even contradicted by the documents you produced, regarding their disciplinary history.
- Your unreasonable and baseless objections to deposition questions, with the intended and actual effect of coaching the witnesses.
- Denying the entirety of allegations in the Complaint where you had no basis for denying parts of the allegation.
- Your refusal to provide reasonable answers to written discovery requests, including not identifying members of the jail staff, not describing the conduct of those staff members, not providing the identifying information known or otherwise available to you about incarcerated persons, and not providing all requested manuals, handbooks, and video recordings.

December 18, 2018
Page 14

Please let me know as soon as possible when you are available for a teleconference.

Sincerely,

/s/ Walter M. Mason

Walter M. Mason

Enclosures

cc:   Tajha Ferrara
        tferrara@slco.org

EXHIBIT G

# LAW OFFICES OF ROCKY ANDERSON

December 21, 2018

Via email - jmramos@slco.org

Jacque M. Ramos
Deputy District Attorney
Salt Lake County
35 East 500 South
Salt Lake City, UT 84111

**Re:    Confirmation of terms from 12/21/2018 meeting regarding discovery disputes**

Ms. Ramos,

This message is to confirm in writing the terms to which we agreed earlier today during our meeting regarding several discovery disputes. It is also to confirm our areas of disagreement.

You have agreed to do the following by January 4, 2019:

(1) In response to Interrogatory No. 1, you will (a) identify the individuals who were in Central Control who were assigned to receive, or actually received, communications from inmates in Unit 8C on April 1 and 2 of 2016; (b) identify the jail staff who were in Unit 8C during clothing exchange on the night of April 1, 2016; (c) identify the jail staff who assisted in transferring Lisa Ostler from Unit 5C to Unit 8C on April 1, 2016; and (d) provide information which, in your words, "correlate the records" heretofore produced by Defendants and the individuals identified in Defendants' Initial Disclosures.

(2) You will confirm whether video recordings are available for (a) the route from 5C to 8C when Lisa Ostler was transferred to 8C on April 1, 2016, and (b) Lisa Ostler's entry to 8C and that unit from the time Lisa arrived until the time the video you provided to us begins. If any of those video recordings do not exist, you will provide an affidavit explaining why those recordings do not exist.

(3) In response to Interrogatory No.2, you will provide all information about communications by or to Lisa Ostler, by or to any employee of the County or Wellcon, Inc., including those in Central Control, those present during clothing exchange, and those who escorted Lisa Ostler from 5C to 8C on April 1, 2016.

December 21, 2018
Page 2

(4) In response to RFPD No. 8, you will provide photographs of individuals within the scope of Interrogatory No. 1 if you have photos used at some point in time near March or April of 2016 and, if you do not have photos of them from that time period, you will provide other identification photos of them. We contend a reasonable response would entail producing any identification photo taken within the last five years.

(5) In response to RFPD No. 16, you will provide (a) an index of Sheriff's Office policies, (b) all information that was made available to Lisa Ostler regarding medical requests, including information available on the in-unit kiosk and any written handbook or pamphlet, and (c) responsive Post Orders and Sheriff's Office policies within categories from their respective indexes that we identify to you.

In response to Interrogatory No. 3, you have not agreed to produce any additional information. You have not agreed to provide any medical record relating to any inmate other than Lisa Ostler because you contend that such inmates should be given notice of the disclosure and given the opportunity to object.

Rocky and I agreed to provide to you the following:

(1) Signed medical record release forms for Lisa Ostler.
(2) A phone number, if known, for Laura Lee.

We understand you will be providing additional release forms, including for Medicare, Medicaid, and Social Security Disability.

Rocky and I agreed not to file a motion to compel until after January 4, 2019.

Sincerely,

/s/ Walter M. Mason
Walter M. Mason

cc:   Tajha Ferrara
      tferrara@slco.org

EXHIBIT H





**SIM GILL**

DISTRICT ATTORNEY

**Ralph Chamness**
*Chief Deputy*
*Civil Division*

**Lisa Ashman**
*Administrative*
*Operations*

**Jeffrey William Hall**
*Chief Deputy*
*Justice Division*

**Blake Nakamura**
*Chief Deputy*
*Justice Division*

December 21, 2018

Rocky Anderson
Walter Mason
Law Offices of Rocky Anderson
Judge Building
8 East Broadway, Suite 450
Salt Lake City, Utah 84111
*Via Email and Regular Mail*

RE:    In preparation of our meet and confer regarding discovery issues.

Dear Mr. Anderson & Mr. Mason:

As a follow-up to our discussion at the meet and confer meeting today, below is a summary of what we have agreed regarding discovery issues:

1. **Plaintiff's Interrogatory No. 1**:

We objected, among others, to this request to the extent it calls for expert medical opinion and as overly broad and vague. We simply don't know or can know *all* Jail Staff who would have passed Ms. Ostler in the hall or possibly exchanged niceties that would fall within your overly broad request. Subject to those objections, we referred you to Ms. Ostler's medical records and those individuals identified in Defendants' Initial Disclosures. Subsequently, in response to your request to "identify" who would have been the nurse that Officer Harris spoke to the evening of April 1, 2016, to early morning of April 2, 2016, I spoke with both you and Mr. Mason and informed you that the nurse scheduled to 8C was Tim Lewis and provided his last known address and telephone number through supplemental disclosure. Additionally, we have also provided Shift Logs for Central Control from April 1, 2016 to April 2, 2016, that identifies by last name Jail Staff on shift that evening. (See, SLCo 002495-002505).

Although you are requesting names of individuals in Central Control who spoke to Lisa, I will remind you that there is no direct evidence of your theory that Ms. Ostler was pushing her intercom button in her cell or that she spoke to anyone in control or other Jail Staff as a result. In

fact, there is no mention in the logs that Lisa, or anyone in 8C, pushed her intercom and requested medical attention for Ms. Ostler. I will further remind you that Officer Frederickson has no direct knowledge of this occurring as well.

I do, however, now understand that you are wanting the identification of those individuals in control from April 1, 2016 to April 2, 2016, who would have been assigned to 8C and may have communicated with Ms. Ostler or other individuals who purportedly spoke to control concerning Lisa Ostler. I will supplement with this information. Additionally, I will review our Rule 26 Disclosures, including supplements, and supplement our interrogatory response correlating the individuals identified in Lisa's Ostler's medical records to those identified in our disclosures and identify any other individuals who may have not been previously identified that had contact with Lisa Ostler, including the officers who were present in 8C during the clothing exchange and who transported Lisa on April 1, 2016 from 5C to 8C.

2. **Plaintiff's Interrogatory No. 2**:

As I discussed, we objected to this request on several grounds. However, I believe once you see the correlation between those individuals identified in the records cited and who are identified in Defendant's initial disclosures, including supplements, you will find that (1) you have deposed these individuals and already have this information; and (2) the information you seek regarding those individuals are reflected in the documents referenced in our response.

Again, there is no direct evidence of your theory that Ms. Ostler was pushing her intercom button in her cell, requesting help all night long, or that she spoke to anyone in control or other Jail Staff requesting medical help from 3:30 P.M. on April 1, 2016 to 6:40 A.M. on April 2, 2016. We simply cannot produce information that does not exist.

However, in accordance with my agreement to review and identify additional individuals in response to Interrogatory No. 1, I will provide any additional information responsive to this request, including his or her conduct and communications that are not reflected in the records previously provided.

3. **Plaintiff's Interrogatory No. 3**:

Your interrogatory requests identification of "all Incarcerated Persons in Unit 8C of the Salt Lake County Metro Jail during any of the time in which Lisa Marie Ostler was incarcerated in Unit 8C." As you acknowledge, we provided a list of each inmates' first and last name who were in 8C. I discussed with you that you have the ability to discover contact information for these individuals, such as through Xchange, as many of these individuals have criminal charges brought against them. Please recognize that these individuals have certain privacy rights restricting disclosure of their personal identifying information and the County must be diligent in protecting it from release.

Rule 26(a)(1)(A) provides that Defendants' have a duty to provide the name, and if known, the address and telephone number of each individual likely to have discoverable information . . . **that the disclosing party may use to support its claims or defenses**. However, in good faith, I will review the list previously provided to you and supplement, if known, their last known address, and telephone number, however, such disclosure will be subject to the protective order pursuant to DUCivR 26-2.



35 East 500 South, Salt Lake City, UT 84111
Telephone 385.468.7700 · Fax 385.468.7800 · www.districtattorney@slco.org

4.  **RFPD No. 8**:

Your request seeks photographs of Jail Staff identified in Interrogatory No. 1.  We again objected to this request and indicated the County does not have photographs that "depict individuals sufficient to identify as they appeared between March 29, 2016 – April 2, 2016" and referred you to the videos produced through discovery.  In speaking with you, you indicated that you need the photographs to show to other inmates so they could "confirm" whether or not they were the individual officer or staff who interacted with or had contact with Lisa Ostler from April 1, 2016 to April 2, 2016.

You confirmed that you have or will have photographs of the individuals that have been identified in the Defendants' disclosures by way of deposition.  These individuals include Officer Harris, Officer Booth, Officer Frederickson, Nurse Ron Seewer, and Nurse Brent Tucker.  I also agreed that in my review of those individuals that would be responsive to Interrogatory No. 1, that I would again see if photos are available and within Defendants possession that "depict [those] individuals sufficient to identify them as they appeared between March 29, 2016 – April 2, 2016."  I will not, however, agree to produce *all* Jail Staff photographs so you can go on a fishing expedition without some evidence that they had contact with Ms. Ostler.

5.  **RFPD No. 5.**

You requested that all documents relating to any video recordings of Lisa Ostler during her incarceration be provided to you.  To the best of our present knowledge, all video recordings that are in Defendants' possession and control have been provided to you.  Salt Lake County does not have the video of 8C from 0000 to 1009 on April 1, 2016.  Additionally, we do not have the video of Lisa Ostler's movement from 5C to 8C.  Similar to other items that you request, Defendants' cannot produce what does not exist.

You requested an explanation for why we do not have these videos.  I have agreed to provide to you the reasons based on Defendants present knowledge and understanding concerning the video footage.

6.  **Deposition of Ron Seewer.**

We provided dates and you have elected to take his deposition on January 8, 2019.  However, I have not seen an Amended Notice of Deposition for Mr. Seewer.  I also remind you that he is not a named Defendant in this matter.

7.  **RFPD 16.**

We have objected to your request as overly broad, vague, unduly burdensome, and not proportionate.  Your request is not related to time or subject matter.  However, in response to your request, we provided the relevant policies and procedures in light of your claims set forth in your Complaint.  Subsequently, you have alleged that these are incomplete and referenced Ms. Lofgreen's testimony concerning "post orders."  To the best of Defendants' present knowledge, most if not all "post orders" are incorporated into the Jail Policies that are contained in the Jail Policy Manual or Health Unit Policies that have been provided to you.  Therefore, to the best of Defendants' present knowledge, all relevant policies responsive to your request are within your



possession.  That said, I have provided to you today the indices of the Emergency Post Orders, Position Post Orders, and Procedural Post Orders so that you may review and identify the subject matters that you wish the County to produce for your review.  Included with this letter, I also provide you the Salt Lake County Sheriff's Office Policy Manual (in effect during 2016) for the same subject matter designation.   To the best of my present knowledge, Salt Lake County-Wide policies and procedures are publicly available to you.

## 8.  Inmate Handbook.

To the best of my present understanding, the Inmate Handbook or any pamphlet as referenced by Ms. Lofgreen is not available in paper copy.  The information, such as the Medical Request Form, and other policy information is available electronically to inmates at the Kiosk in each unit.  Your representation that we have not responded to your request is disingenuous as we provided you the Medical Request Form that was available to Ms. Ostler as Bates No. SLCo 002494 the day you requested the information. You also have the policies and procedures. However, I will review the information provided to you and review what written information was provided or made available to Ms. Ostler and supplement if we discover additional information responsive to this request that has not been produced to you.

## 9.  Invocation of HIPAA.

At the outset, please note our objections to Plaintiffs' Interrogatory Responses Nos. 5, 7, 8, 9, 12, and 13 and Plaintiffs' RFPD Nos. 12 and 13, include but are not exclusive of our objection that the records of third parties are protected under HIPAA.  We have asserted and continue to assert that without first complying with HIPAA, including prior notice to those individuals with an opportunity for them to object to such disclosure, the County is prohibited from producing the records.  We also do not believe the protective order pursuant to DUCivR 26-2 contemplates or covers the release of protected information of third parties that you demand the County turn over.

We proposed that there may be other ways to produce information that you seek, short of producing other non-parties medical records, to allow you to discover information that is admissible to prove or disprove your claim set forth in the Complaint that Salt Lake County has a policy or custom to be deliberately indifferent to serious medical needs and refuses (in violation of the constitutional safeguards) to provide proper and necessary medical care when inmates have life-threatening medical conditions, such as Ms. Lisa Ostler. I suggested that you provide possible alternative methods (such as a list of deaths, etc.) to allow production of non-HIPAA protected documents or information that would provide the information you seek.  However, I do reassert that this information needs to be limited in time and scope. Your request of 10 years of records is unduly burdensome and grossly disproportionate.

## 10. Other items.

You agreed to provide an executed release for records pertaining to Ms. Lisa Ostler.  I look forward to receiving the release.

You agreed to provide Laura Lee Madrigal's ("Ostler") telephone number and last known location so we may locate her and subpoena to appear for deposition.  As discussed, this



information should be readily available as Kim Ostler just recently spoke to her daughter, Laura Lee and delivered items the day of her deposition.

You also confirmed that any days in January that I have available to schedule depositions, I may do so without again confirming your availability.

All the items agreed to be disclosed to either party will be done within the next two weeks.

Thank you for your attention to this matter.  Please call me if you would like to discuss anything.

Sincerely,

*/s/ Jacque M. Ramos*
JACQUE M. RAMOS
Deputy District Attorney
Civil Division
Telephone:  (385) 468-7785

