Sim Gill (USB # 6389)
DISTRICT ATTORNEY FOR SALT LAKE COUNTY
Jacque M. Ramos (USB # 10720)
Tajha L. Ferrara (USB # 10631)
Deputy District Attorneys
Salt Lake County District Attorney's Office
35 East 500 South
Salt Lake City, Utah 84111
Email: jmramos@slco.org
          Tferrara@slco.org
Telephone: 385.468.7700
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CALVIN DONALD OSTLER, individually and as personal representative of the Estate of Lisa Marie Ostler, KIM OSTLER, and the three minor children of Lisa Marie Ostler, C.K., E.L.K., and L.M.O., through their adoptive parents and next friends, CALVIN DONALD OSTLER and KIM OSTLER,<br><br>          Plaintiffs,<br><br>v.<br><br>HOLLY PATRICE HARRIS, ZACHARY PAUL FREDERICKSON, TODD ALLAN BOOTH, TODD RANDALL WILCOX, M.D., RONALD PAUL SEEWER, JR., BRENT LEE TUCKER, JAMES M. WINDER, PAM LOFGREEN, RICHARD BELL, JOHN DOE, whose true name is unknown, and SALT LAKE COUNTY, a political subdivision of the State of Utah, Defendants. | **DEFENDANTS' PARTIAL MOTION TO DISMISS FIRSTAMENDED COMPLAINT AND JURY DEMAND**<br><br>Case No. 2:18-cv-00254-001<br><br><br>Judge:  Bruce S. Jenkins |

Defendants Salt Lake County ("County"); Holly Patrice Harris; Zachary Paul Frederickson; Todd Allan Booth; Todd Randall Wilcox, M.D.; Brent Lee Tucker; James M. Winder; Pam Lofgreen; Richard Bell; and Ronald Paul Seewer, Jr. (collectively "Defendants"), through counsel, pursuant to Federal Rule Civil Procedure 12(b)(6) hereby move the Court to dismiss:

1. Plaintiffs: Mr. Calvin Ostler individually, Kim Ostler, individually, and the natural children of Lisa Ostler, identified as C.K., E.L.K., and L.M.O. as improper parties;

2. Plaintiffs' Wrongful Death Claim as to all Defendants;

3. Plaintiffs' Fifth Amendment Claim as to all Defendants;

4. Defendants Winder, Lofgreen, Bell and Wilcox, in their official and personal capacities;

5. Plaintiff's State Constitutional Claims as to all Defendants; and

6. Plaintiff's Third Claim for Relief as to all Defendants.

As discussed fully below, the above parties and claims fail as a matter of law because: (1) the individual plaintiffs lack standing to assert constitutional claims on behalf of Lisa Ostler, decedent nor can they assert a wrongful death action on behalf of the Estate of Lisa Ostler; (2) Plaintiffs possess no Fifth Amendment due process claim; (3) Plaintiffs claim against Defendants Winder, Lofgreen, Bell, and Wilcox in their official capacities are redundant to the claims against Salt Lake County; (4) Plaintiffs claims against Defendants Winder, Lofgreen, Bell, and Wilcox fail in the absence of an "affirmative link" between those defendants' and any constitutional

violation; (5) Plaintiffs lack standing to challenge the constitutionality of either the bond statute, Utah Code § 78B-3-10 and the undertaking statute at Utah Code § 63G-7-601.[1]

## STATEMENT OF FACTS FOR PURPOSES OF THIS MOTION TO DISMISS

1. On March 22, 2018, Plaintiffs Calvin Donald Ostler, individually and as personal representative of the Estate of Lisa Marie Ostler, Kim Ostler, and the minor children of Lisa Marie Ostler through their adoptive parents and next friends, Calvin Donald Ostler and Kim Ostler filed suit against certain individual Defendants and Salt Lake County alleging two claims for relief: (1) "Survival and Wrongful Death Actions Under 42 U.S.C. §1983" and (2) "Violations of the Utah Constitution, Article I, Sections 7 and 9." (Dkt. 2., Complaint.)

2. On June 19, 2018, Salt Lake County and individual Defendants, Holly Patrice Harris, Zachary Paul Federickson, Todd Allan Booth, Todd Randall Wilcox, M.D. Ronald Paul Roubidoux[2], Colby Grey James, Brent Lee Tucker, James M. Winder, and Pam Lofgreen

---

[1] The Utah Supreme Court has already addressed and upheld the prior bond statute – with language substantially similar to the statute at issue here – on state open courts and federal equal protection grounds.  *See Zamora v. Draper*, 635 P.2d 78, 80-82 (Utah 1981) (open courts and equal protection) (citing *Boddie v. Conn.*, 401 U.S. 371 (1971 and *Kras v. United States*, 409 U.S. 434 (1973)); *Snyder v. Cook*, 688 P.2d 496, 498 (equal protection). Notable here, and regarding a predecessor statute, the Utah Supreme Court has already upheld the bond statute on state constitutional grounds.  And on this point, federal law is in accord. Also, and respecting state constitutional claims, that same court has previously held that the rigors of the Governmental Immunity Act, of which the undertaking statute is a part, do not pertain.  However, given page limit requirements they do not fully brief this issue within the confines of this motion to dismiss. However, Defendants' do not waive these challenges to Plaintiffs' claims and should the court request further briefing Defendants are be able to present such arguments.

[2] On October 1, 2018, pursuant to a stipulated motion, this Court dismissed claims against Ronald Paul Robidoux. (Dkt. 37, Order.)

filed an Answer to Plaintiffs' Complaint and discovery commenced. (Dkt. 29, Answer to Plaintiffs' Complaint.)

3. On January 31, 2019, Plaintiffs Calvin Donald Ostler, individually and as personal representative of the Estate of Lisa Marie Ostler, Kim Ostler, and the three minor children (now identified as) "C.K., E.L.K, and L.M.O." through their adoptive parents and next friends, Calvin D. Ostler and Kim Ostler filed their First Amended Complaint ("Amended Complaint"), naming two additional Defendants: Ronald Paul Seewer; and Richard Bell. (Dkt. 59, First Amended Complaint ("Amend. Comp."))

4. The Amended Complaint restates Plaintiffs' First Claim for Relief ("Survival and Wrongful Death Actions") under 42 U.S.C. §1983 and alleges the Defendants acted with deliberate indifference to Lisa Ostler's serious medical needs as a detainee at the Salt Lake County Metro Jail in violation of both the Fifth and Fourteenth Amendments to the United States Constitution. (Amend. Comp. at ¶19-64.)

5. The Amended Complaint also restates Plaintiffs' Second Claim for "Violations of the Utah Constitution, Article I, Sections 7 and 9" and incorporates by reference all allegations alleged in support of their §1983 claims. (Amend. Comp. at ¶¶65-78.)

6. The Amended Complaint also asserted a Third Claim for Relief challenging "the constitutionality of Utah Code §§63G-7-601 (the 'Undertaking Statute') and 78B-3-104 (the "Bond Statute"). *Id*. at ¶¶ 79-88.

7. Colby Grey James was also dismissed as a Defendant. (Amend. Comp. at ¶¶ 6-12.)

8. The Amended Complaint expressly names:

a.  Defendant James M. Winder ("Winder") as the "Salt Lake County Sheriff, the highest supervisory person in charge of the Salt Lake County Metro Jail";

b.  Defendant Pamela Lofgreen ("Lofgreen") as the "Salt Lake County Sheriff's Office Chief Deputy and Commander . . . in charge of setting and implementing the policies and procedures for, and providing supervision" for the County and its employees";

c.  Defendant Todd Randall Wilcox, M.D. ("Wilcox") as the "Medical Director" at the jail and "responsible for the training and supervision of all medical personnel and for the formulation, adoption, execution, implementation, and enforcement of all policies, procedures, . . [and ] customs. . . ."; and

d.  Defendants Richard Bell as the "Responsible Health Authority" responsible for arrangement of all levels of health care and "the formulation, adoption, execution, implementation, and enforcement of all policies, procedures, and sanctioned customs" at the County.  (Amend. Comp. at ¶¶ 7-10.)

9.  The Amended Complaint, however, fails to delineate whether they are suing Defendants Winder, Lofgreen, Bell, and/or Wilcox in their individual or official capacity.  *Id.*

10. The substantive allegations for Plaintiffs' §1983 claims relating to Defendants Salt Lake County, as the governmental entity, and Defendants Winder, Lofgreen, Bell, and Wilcox allege that acting as "supervising officials" and "high-ranking officials and administrators of Salt Lake County," and Salt Lake County itself are liable because they "followed, established, and implemented" policies or customs that "constituted and reflected deliberate indifference to the serious medical needs and constitutional right of Lisa to

receive proper and necessary medical care" while she was detained at the Salt Lake City Metro Jail.  (Amend. Comp. ¶55-59.)

11. Plaintiffs also allege that Defendants Winder, Lofgreen, Bell and Wilcox "as supervising officials" and "high-ranking officials and administrators" were personally involved in violations of Lisa Ostler's rights under the Fifth and Fourteenth Amendments of the United States Constitution, and Article I, Sections 7 and 9 of the Utah Constitution because they: (1) "failed to remedy serious incompetence and serious deficiencies in the health care system"; (2) "followed, established, and implemented a policy or custom of failing to train or adequately supervise its officers, agents, or employees who they assigned to work, and who they were responsible for supervising"; and (3) "developed, adopted, implemented, condoned, and administered policies, practices, patterns, customs, and a widespread culture of callousness . . . deliberate indifference[, and "unnecessary rigor] toward" medical needs of those incarcerated, including Lisa Ostler. (Amend. Compl. ¶¶ 55-59; 74.)

12. Plaintiffs simply incorporate the same allegations into their second claims for relief for claims arising under the Utah Constitution, Article I, Sections 7 and 9. (Amend. Comp. ¶¶ 65-67.)

13. With respect to damages, Plaintiffs' allege that prior to Ms. Ostler's death, she was "a loving mother to C.K., E.L.K., and L.M.O. and a loving daughter of Plaintiffs Cal and Kim and was a source of companionship, joy, happiness, service, love, affection, guidance, and counsel to her parents and children, who have sustained substantial damages for her wrongful death."  *Id*. at ¶76.

14. For compensatory relief, Plaintiffs' seek damages for Lisa Ostler as the loving daughter of Cal and Kim Ostler and natural mother of the three minor children and for her as a "source of companionship, joy, happiness, service, love, affection, guidance, and counsel" to her children and surviving parents and "in the nature of a wrongful death action.". *Id*. at ¶62.

15. The minor children further claim damages for the deprivation to their own "inheritance and financial support" and that they are entitled to damages "jointly and severally." *Id*.

**ARGUMENT**

I.       **STANDARD FOR DISMISSAL.**

In considering a motion to dismiss under Rule 12(b)(6), the Court should accept all-well plead facts as true and draw inferences from those facts in the plaintiffs' favor to determine whether the complaint contains enough facts to state a claim for relief that is plausible on its face. *GFF Corp. v. Assoc Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997). In doing so, the Court must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). "A pleading that [only] offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-557 (2007)) (alteration in original). In other words, "[f]actual allegations in a complaint must be enough to raise a right to relief above the speculative level," and "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for his claim." *Smith v. Millett*, 2009 WL 3181996 (D. Utah 2009) (citing *Robbins v. Oklahoma*,

519 F.3d 1242, 1247 (10th Cir. 2008) and *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174,

1177 (10th Cir. 2007)). "The requirement of plausibility serves not only to weed out claims that do

not (in the absence of additional allegations) have a reasonable prospect of success, but also to

inform the defendants of the actual grounds of the claim against them." *Id*. (citing *Robbins*, 519

F.3d at 1248).

Where, as here, Plaintiffs have failed to state a claim for which relief may be granted,

dismissal is warranted and the court should terminate those claims that "are fatally flawed in their

legal premises and destined to fail . . . ." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys.,

Inc.*, 988 F.2d 1157, 1160 (10th Cir. 1993).

## II.   THE INDIVIDUAL PLAINTIFFS LACK STANDING AND ARE NOT PROPER PARTIES TO ASSERT CONSTITUTIONAL CLAIMS ON BEHALF OF THE DECEDENT'S ESTATE NOR TO ASSERT A WRONGFUL DEATH ACTION AND THOSE CLAIMS SHOULD BE DISMISSED.

This Court should dismiss all of the individually named plaintiffs - Calvin Ostler (in his

individual capacity and not as personal representative of the decedent's estate), Kim Ostler and the

decedent's minor natural children (now adopted by Calvin and Kim Ostler[3]) as none are real parties

in interest to the underlying constitutional claims, and because there exists  no separate "wrongful

death" cause of action under 42 U.S.C. § 1983.  Instead, the only real party in interest is Calvin

Ostler in his capacity as the personal representative of the estate of Lisa Marie Ostler.

Plaintiffs' first amended claim for relief attempts to state a survival claim rooted in

wrongful death under 42 U.S.C. § 1983.  (Amend. Comp. at ¶19.)  Specifically, Plaintiffs' allege

---

[3] C.K., E.L.K, and L.M.O. were adopted by Calvin and Kim Ostler in May of 2016, just a short time after Ms. Ostler's passing.  Their rights to inherit from their mother as a parent were further cut-off and judicially terminated as of the time they were adopted.  They are no longer legal heirs of Ms. Ostler's estate.  Utah Code §§ 78B-3-105, 78B-3-107, 75-2-114, 78B-2-114(2).

that prior to Ms. Ostler's death, she was "a loving mother to C.K., E.L.K., and L.M.O. and a loving daughter of Plaintiffs Cal and Kim and was a source of companionship, joy, happiness, service, love, affection, guidance, and counsel to her parents and children, who have sustained substantial damages for her wrongful death." *Id*. at ¶76.  For relief, Plaintiffs' seek damages for Lisa Ostler as the natural mother of the three minor children and for her as a "source of companionship, joy, happiness, service, love, affection, guidance, and counsel" to her children and surviving parents. *Id*. at ¶62.  The children further claim damages for the deprivation to their own "inheritance and financial support" and seek damages to them "jointly and severally."  *Id*.

However, Federal Rule of Civil Procedure 17 mandates "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  Respecting Section 1983, the Tenth Circuit has made clear that as result of an alleged wrongful death, the federal cause of action "should be a survival action, brought by the *estate* of the deceased victim, in accord with § 1983's express statement that the liability is 'to the party injured.'"  *Berry v. City of Muskogee,*, 900 F.2d 1489, 1506-1507 (10th Cir. 1990) ( quoting 42 U.S.C. § 1983).  And though the Supreme Court expanded potential awardable damages to  "include medical and burial expenses, pain and suffering before death, loss of earnings based upon the probable duration of the victim's life had not the injury occurred, the victim's loss of consortium, and other damages recognized in common law tort actions" the Court did not at the same time expand Section1983 actions beyond survival claims.  *Id*.

Simply, "a plaintiff cannot recover damages under §1983 for harms they suffered as a result of another's death.  Instead, the Tenth Circuit has held that the federal remedy to be applied to §1983 death cases 'should be a survival action, brought by the estate of the deceased victim, in

accord with §1983's express statement that liability is 'to the party injured.'" *Webster v. Gower*, 2010 WL 520522 (D. Utah 2010) (*quoting Berry*, 900 F.2d at 1506-07) (citing 42 U.S.C. § 1983) (noting deceased individual is the party whose constitutional rights were allegedly violated and that plaintiffs lack standing under §1983 to bring a wrongful death action in their individual capacities. Neither can "[a] federal §1983 lawsuit . . . [be] a substitute for a state claim. Section 1983 remedies are 'to the party injured.' The estate of a deceased victim must be the one to bring suit." *Harold v. University of Colo. Hosp.*, 680 Fed. Appx. 666, 672 (10th Cir. 2017) (quoting 42 U.S.C. § 1983). And no specific wrongful death claim can be alleged. *See e.g. Berrett v. Albertsons Inc.*, 2012 UT App 371, ¶50, 293 P.3d 1108 (holding that "[b]y their nature, survival statutes do not give rise to new causes of action; rather, they regulate the viability and scope of preexisting causes of action.").

This district and sister states have in fact applied and relied "on *Berry* to conclude that the estate of a deceased victim is the only real party in interest in a §1983 action." *George v. Beaver ex rel. Beaver County Bd. of Comm'rs*, 2017 WL 782287 (D. Utah 2017) (holding that plaintiffs who were relatives of deceased and brought action on their own behalves and that of themselves and the deceased's minor children lacked standing because they suffered no injury in their own right and the only proper party to suit would be the personal representative of the estate); *see also A.B. v. City of Woodland Park,* 174 F.Supp.3d 1238, 1246 (D. Colo. 2016) (holding minor plaintiff lacked standing to assert survival action related to the death of his father as that survival action should be brought for the benefit of the decedent's estate); *Naumoff v. Old*, 167 F.Supp.2d 1250, 1253 (D. Kan. 2001) (holding plaintiff lacked standing to assert a § 1983 action against defendant in her individual capacity and claim should be brought by the estate of the deceased victim).

Accordingly, the only action that can be maintained under 42 U.S.C. §1983 is a survival action, brought by the estate.

Based on abundant law, the individual plaintiffs - Calvin Ostler individually, as well as Kim Ostler and the natural children of Lisa Ostler, are not proper parties to this suit and they therefore lack standing to proceed and should be accordingly dismissed.  Further, the wrongful death claim, to the extent one is brought on behalf of individuals and the children of Lisa Ostler, cannot stand as a separate cause of action, but is rather a measure of the damages that may be recovered for alleged constitutional violations to Ms. Ostler.  That claim too must fail.

### III.    PLAINTIFFS' FIFTH AMENDMENT DUE PROCESS CLAIM AGAINST ALL DEFENDANTS FAILS AS A MATTER OF LAW.

In their first stated cause of action, Plaintiffs contend the Defendants acted with deliberate indifference to Lisa Ostler's serious medical needs as a detainee at the Salt Lake County Metro Jail in violation of both the Fifth and Fourteenth Amendments to the United States Constitution for which damages are recoverable under 42 U.S.C. § 1983.  (Amend. Comp. at ¶19-64).[4]  State pretrial detainees', as compared to convicted inmates', § 1983 claims, however, exist only under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 528 (1979); *see also*, *Olsen v. Layton Hills Malls*, 312 F.3d 1304 (10th Cir. 2002) (citing *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999)). Indeed, long standing precedent makes clear that the Fifth Amendment due process clause "applies only to the federal government, while the Fourteenth

---

[4] Plaintiffs' also allege in the first claim relief pursuant to 42 U.S.C. § 1983 that Lisa Ostler was also deprived of due process under the Utah Constitution Article I, Section 7 of the Utah Constitution and suffered "unnecessary rigor" under Article I, Section 9 of the Utah Constitution. (Amend. Comp. ¶¶19, 55.)  §1983 does not give a right of action of state constitutional claims and therefore to the extent Plaintiffs' Complaint attempts to assert those claims under §1983, they should be dismissed.  42 U.S.C. §1983.

Amendment due process clause applies to states." *Estate of Conner ex rel. Conner v. Ambrose*, 990 F. Supp. 606, 615 (N.D. Ind. 1997); *Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997) (Fifth Amendment due process clause only protects against actions by the federal government).

There are no federal actors or defendants involved in this case and the Fifth Amendment is therefore not implicated. (*See*, generally Amend. Comp.)  Consequently, Plaintiffs possess no Fifth Amendment due process claim and it should be dismissed as to all Defendants.

## IV.  DEFENDANTS WINDER, LOFGREEN, AND BELL ARE ENTITLED TO DISMISSAL OF ALL CLAIMS ASSERTED AGAINST THEM IN THEIR OFFICIAL CAPACITIES.

Categorically, Plaintiffs have failed in their Amended Complaint to delineate whether they are suing Defendants Winder, Lofgreen, Bell, and/or Wilcox in their individual or official capacity. (Amend. Comp. at ¶¶7-10.)   Although Plaintiffs may sue a governmental employee in their personal or official capacity, or both, the distinction is material to maintain an action for damages against them, particularly when the municipality is also named in suit.  *Kentucky v. Graham*, 473 U.S. 159, 165-66, 168 n.14 (1985).

In *Kentucky v. Graham*, the Supreme Court established "as long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.*, 473 U.S. at 165-66. In so holding, the Supreme Court explained that the election and distinction between personal and official capacity suits is imperative because it affects not only the persons from whom Plaintiffs may recover damages, including whether they can seek fee liability, but it is also determinative of the defenses that may asserted in the action. *Id.* at 165-169.

Recognizing the importance of this issue, the Court provided express guidance to determine whether the Defendants were sued in their personal-capacity or official-capacity. *Id*. at 165-166. The Court explained that "personal-capacity suits seek to impose personal liability upon a governmental official for actions he takes under color of state law." *Id*. at 165.   "Official capacity suits, in contrast, 'generally represent only another way of pleading an action against and entity in which an officer is agent.'" *Id*. at 165-166 (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)).

Applying the contours of *Graham*, a review of the Amended Complaint evinces that Plaintiffs are suing Defendants Winder, Lofgreen, Bell, and Wilcox as "agents" of the County in their official capacities.   (Amend. Comp. at ¶¶ 7-10, 55 – 56.)   Specifically. the Amended Complaint expressly names:

(1) Winder as the "Salt Lake County Sheriff, the highest supervisory person in charge of the Salt Lake County Metro Jail";

(2) Lofgreen as the "Salt Lake County Sheriff's Office Chief Deputy and Commander . . . in charge of setting and implementing the policies and procedures for, and providing supervision" for the County and its employees;

(3) Wilcox as the "Medical Director" at the jail and "responsible for the training and supervision of all medical personnel and for the formulation, adoption, execution, implementation, and enforcement of all policies, procedures, . . [and ] customs. . . ."; and

(4) Bell as the "Responsible Health Authority" responsible for arrangement of all levels of health care and "the formulation, adoption, execution, implementation, and enforcement of all policies, procedures, and sanctioned customs" at the County.

(Amend. Comp. at ¶¶ 7-10.)  The substantive allegations of the Amended Complaint are in accord, and collectively aver that Salt Lake County and Defendants Winder, Lofgreen, Bell, and Wilcox (without distinction among them) acting in their roles as "supervising officials" and "high-ranking officials and administrators of Salt Lake County," are liable because they "followed, established, and implemented" policies or customs that "constituted and reflected deliberate indifference to the serious medical needs and constitutional right of Lisa to receive proper and necessary medical care" while she was detained at the Salt Lake City Metro Jail.  (Amend. Comp. ¶55-59.)

Clearly, Plaintiffs' intent was to assert claims against Defendants Winder, Lofgreen, Bell and Wilcox as "agents" of the County and constitute claims against these Defendants in their official capacities. (Amend. Comp. ¶55-59.); *Graham*, 473 U.S. at 167 n.14; *Monell*, 436 U.S. at 691 n.55.  In doing so, however—and in naming the governmental entity that employs them—those claims become duplicative and redundant of the claims against Salt Lake County and cannot be maintained. (Amend. Comp. at ¶12); *Graham*, 473 U.S. at 165-66. Indeed, under similar facts as here, courts in applying *Graham* in cases where the governmental entity is also a named defendant in the action have routinely concluded that claims asserted against defendants in their official capacities should be dismissed as duplicative or redundant.  *See McMillan v. Monroe Cnty., Ala.,* 520 U.S. 781, 785, n. 2 (1997) (citing  *Graham,* 473 U.S. at 165) (quoting , 436 U.S. at 690, n. 55 )); *see also Atiya v. Salt Lake Cnty.,* No. 87–C–260J, 1991 WL 511072 at *1, *4 (D. Utah Jan. 21,

1991) (holding that suits against government employees are essentially suits against the governmental entity that employs them).

This same principle of duplicative or redundant claims equally applies to Plaintiffs' state constitutional claims against Defendants in their official capacities. (Amend. Comp. at ¶¶ 65-78). Again, official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent and where the governmental entity may be held liable for damages resulting from its official policy. Graham, 473 U.S. at 1676-167.  Therefore, a suit naming public officers in their official capacity is redundant irrespective of whether the claim arises from the federal or a state Constitution.

In sum, Plaintiffs' first and second claims for relief against Winder, Lofgreen, Bell, and Wilcox in their official capacities must be dismissed because they are suits against the entity, irrespective of the name, and Salt Lake County, a named party, is the real party in interest.

**V.    ANY POTENTIAL INDIVIDUAL LIABILITY CLAIMS AGAINST DEFENDANTS WINDER, LOFGREEN, BELL, AND WILCOX NECESSARILY FAIL IN THE ABSENCE OF AN "AFFIRMATIVE LINK" BETWEEN THOSE DEFENDANTS' AND ANY CONSTITUTIONAL VIOLATION.**

As above, "[p]ersonal-capacity suits, [as opposed to official-capacity suits] . . ., seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Even though Defendants do not dispute their status as officers acting under the color of state law, Plaintiffs' assertion of individual liability based on section 1983 against them must include facts that show a deprivation of a right, privilege, or immunity secured by the Constitution or federal laws and also facts that show the official was *personally involved* in the alleged constitutional violation. *See Gallagher v. Shelton,* 587 F.3d

1063, 1069 (10th Cir. 2009).  In other words, Plaintiffs must allege an "affirmative link" between the defendants' conduct and any constitutional violation. *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988))

Through two separate claims for relief, Plaintiffs allege that Defendants Winder, Lofgreen, Bell and Wilcox "as supervising officials" and "high-ranking officials and administrators" were personally involved in violations of Lisa Ostler rights under and Fifth and Fourteenth Amendment of the United States Constitution, and Article I, Sections 7 and 9 of the Utah Constitution because they: (1) "failed to remedy serious incompetence and serious deficiencies in the health care system"; (2) "followed, established, and implemented a policy or custom of failing to train or adequately supervise its officers, agents, or employees who they assigned to work, and who they were responsible for supervising"; and (3) "developed, adopted, implemented, condoned, and administered policies, practices, patterns, customs, and a widespread culture of callousness . . . deliberate indifference[, and "unnecessary rigor] toward" medical needs of those incarcerated, including Lisa Ostler. (Amend. Compl. ¶¶ 55-59; 74.) However, supervisory status alone does not create liability under § 1983 or the Utah Constitution Article I. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *see also Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotation marks omitted); *Gallagher*, 587 F.3d at 1063; *Brown v. Larsen*, 653 Fed. Appx. 577, 57 ("The inquiry under the Eighth Amendment—whether the conditions objectively posed a 'substantial risk of serious harm' . . . is the same as the inquiry under the unnecessary rigor clause—whether the injurious act presented a 'substantial risk of serious injury.'"); *See also Redmond v. Crowther*, 882 F.3d 927, 942 (10th Cir. 2018); *Childress v. Midvale City*, 2:09CV500DAK (D. Utah Aug. 27, 2010). Rather, "supervisors are only liable under § 1983 for their

own culpable involvement in the violation of a person's constitutional rights." *Id*. Accordingly, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation[,]" his/her exercise of control or direction, or his/her failure to supervise. *Gallager*, 587 F.3d at 1069 (citing *Branson,* 108 F.3d at 1302). Therefore, to withstand a motion for dismissal, Plaintiffs must allege facts with specificity of not only prison conditions that rose to the level of constitutional violations but also facts that establish an "affirmative link" between each defendant and the constitutional deprivation. *Branson*, 108 F.3d at 1302 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)).

Plaintiffs' Amended Complaint haphazardly blends Defendants Winder, Lofgreen, Bell, Wilcox and Salt Lake County as the "persons" responsible for the customs, practices, and policies that resulted in the deprivation of Lisa Ostler's constitutional rights. (Amend. Comp. 55 – 59, 67.) Those allegations fail, however, to articulate with any sufficient particularity each of the Defendants' conduct that created the alleged widespread practice nor identify any decision, ratification, or failure to train or supervise the employees they allege were deliberately indifferent.[5] (*See*, general Amend. Comp.) Absent a showing of Defendants' Winder, Lofgreen, Bell and Wilcox's personal participation[6] in the events complained of, and an affirmative link between their deliberate actions and the alleged constitutional violations of the subordinates, Plaintiffs' claims based on supervisory liability fail and should be dismissed.

## VI. PLAINTIFFS' UTAH CONSTITUTIONAL CLAIMS ARE NOT COGNIZABLE.

---

[5] In order for Plaintiffs to establish municipal liability under § 1983, a plaintiff must demonstrate: that an officer committed an underlying constitutional violation. *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

[6] Significant here, both Lofgreen and Wilcox have been deposed.

Plaintiffs' may not assert a damages claim under the Utah State Constitution because they have an adequate remedy at law.  The Utah Supreme Court in *Spackman v. Bd. of Ed. of Box Elder County*, 16 P.3d 533 (Utah 2000), acknowledged, "aside from the Takings Clause, there is no textual constitutional right to damages for one who suffers a constitutional tort." *Id*. at 537. The Court held "a plaintiff must establish that existing remedies do not redress his or her injuries." *Id*. at 538.

"To ensure that damage actions are permitted only under appropriate circumstances," the court set forth the following three elements: 1) a plaintiff must establish that he or she suffered a flagrant violation of constitutional rights; 2) existing remedies do not redress his or her injuries; and 3) that equitable relief, such as an injunction, was and is wholly inadequate to protect plaintiff's rights or redress his or her injuries. In this case, Plaintiffs' allegations reveal that an adequate remedy exists under 42 U.S.C. § 1983 and address the exact same harm claimed to have been suffered under Article I, Sections 7 and 9 of the Utah Constitution. (Amend. Comp. at ¶¶ 19-78.)

Prior decisions by this court have addressed this same issue with the same conclusion.  *See*, *Nielson v City of South Salt Lake*, No. 2:06-CV-335-CW, 2009 WL 3562081 at *9 (D. Utah Oct. 22, 2009) (stating that "[t]he state constitutional claims [of due process, cruel and unusual punishment, unreasonable search and seizure, and slavery] do not provide for any further redress than [plaintiff] can obtain under § 1983"); *Cavanaugh v. Woods Cross City*, No. 1:08-CV-32-TC-BCW, 2009 WL 4981591 at *6 (D. Utah Dec. 14, 2009), aff'd 625 F.3d 661 (10th Cir. 2010) (holding that plaintiffs that brought a claim under Article I, Sections 7, 9, and 14, of the Utah Constitution "cannot state a claim for damages . . . because their injuries can be fully redressed through their 42 U.S.C. §1983 claim.").

Although the Utah Supreme Court in *Dexter v. Bosko*, recognized that the Utah Constitution and the Federal Constitution have textual and framework differences, the Amended Complaint fails to set forth why or how §1983 fails to fully redress Plaintiff's injuries. "[W]here a plaintiff's federal remedies fully redress the state constitutional violation, the state constitutional claims should be dismissed. *Cavanaugh v. Woods Cross City*, No. 1:08-CV-32-TC-BCW, 2009 WL 4981591 at *6 (stating the crucial issue is not whether the two constitutions have 'different contours,' but whether existing remedies redress the plaintiffs' injuries.").

On the face of the Amended Complaint it appears that Plaintiffs' state constitutional claims are encompassed in their § 1983 claims and can be fully redressed by that remedy. Therefore, because Plaintiffs have not pled, nor can they be pled, that existing remedies under § 1983 do not redress their injuries, Plaintiffs' Second Claim for Relief of the Amended Complaint should be dismissed against all Defendants.

Furthermore, this analysis equally applies to Plaintiffs' state constitutional claims, and at minimum, Defendants' urge the court to dismiss Plaintiffs' Article I, Section 7 due process claim as it is subsumed in the "unnecessary rigor" claim under Article I, Section 7 of the Utah Constitution. When as here, an Article I, Section 7 claim is based on alleged unlawful punishment, deliberate indifference of, and failure to treat a pretrial detainee, the claim is properly analyzed under the "unnecessary rigor" clause of Article I, Section 9. *See e.g. Dexter*, 184 P.3d at 592. Therefore, because the particular Article I, Section 9 addresses Plaintiffs claims, the more generalized due process claim under Article I, Section 7 is not controlling and should be dismissed as redundant. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 31 U.S. 266, 273 (1994) (holding where a "particular Amendment provides an explicit

19

textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.")).

## VII.     THIS COURT SHOULD DISMISS PLAINTIFFS' THIRD CAUSE OF ACTION IN ITS ENTIRETY.

Plaintiffs challenge Utah Code § 78B-3-104 (the bond statute) and Utah Code § 63G-7-601 (the undertaking statute), claiming each statute is unconstitutional on its face and as applied. Plaintiffs, however, lack standing to challenge either statute.  But nowhere have Plaintiffs alleged the statutes will or have unduly burdened them.  Plaintiffs do not contend they are impecunious, nor aver they lack sufficient financial resources to post a bond and comply with either statute. Instead, Plaintiffs contend, generally, that each provision places an undue and oppressive burden on persons injured by the actions of law enforcement, thus depriving persons with limited financial resources access to the courts.  Accordingly, Plaintiffs lack the requisite standing to proceed. Therefore, this Court should dismiss, entirely and with prejudice, Plaintiffs' newly stated Third Cause of Action.

### A.  Plaintiff's Lack Standing to Challenge the Constitutionality of the Bond and Undertaking Statutes.

As an initial matter, Plaintiffs are not required to file either a bond or undertaking to pursue their *federal* constitutional claims. But each statute pertains – if at all – only to Plaintiffs' state constitutional contentions.[7]  And to possess standing to challenge either provision, Plaintiffs must show that applying the statutes to them will deprive Plaintiffs of a constitutional right.  *See Hoyle*

---

[7] Which state constitutional claims are independently subject to dismissal under *Spackman ex rel. Spackman v. Bd. of Educ.,* 2000 UT 87, 16 P.3d 533.  *See supra* Point XXX.

*v. Monson,* 606 P.2d 240, 242-243 (Utah 1980) (refusing to consider challenge to fee statute in absence of showing plaintiff was impecunious or would be deprived of any rights); *see also State v. Roberts,* 2015 UT 24, ¶¶ 46-47, 354 P.3d 1226 ("Standing requires [court to] to review constitutionality of a statute from the perspective of the party raising the challenge . . . a party may only challenge a statute 'to the extent the alleged basis of its infirmity is, or will be, applied to his detriment.'"); *accord Colo. Outfitters Ass'n v*. Hickenlooper, 823 F.3d 537, 543, 551-552 (party seeking to challenge statute on constitutional grounds must satisfy Article III case or controversy requirements and allege actual threat of harm which may be remedied by a favorable outcome). This, Plaintiffs cannot do.  Instead, a party whose rights are not diminished in the face of a state statute lacks standing to proceed.

Here, Plaintiffs challenge the constitutionality of Utah's bond and undertaking statutes, Utah Code §§ 78B-3-104 and 63G-7-601, respectively.  Plaintiffs do so by alleging each statute places an unreasonable and oppressive burden on persons injured by the wrongful acts of law enforcement by depriving persons with limited financial resources of access to the courts.  Amend. Compl. ¶ 80.  With respect to latter, Plaintiffs' amended complaint comes up short.  Plaintiffs have not alleged here, nor either in their initial complaint filed nearly a year ago, that they lack sufficient resources to comply with either statute, such that either provision can be shown to adversely impact them.  But the traditional rule of constitutional standing posits that one to whom a statute may be applied constitutionally lacks standing to challenge the statute on the basis it may conceivably harm another in a situation not then before the court.  *See New York v. Ferber*, 458 U.S. 747, 768 (1982).  But such a ruling, the United States Supreme Court has held, reflect the "'personal nature of constitutional rights'" and the "'precedential considerations of constitutional adjudication.'"  *Id.*

21

(quoting *McGowan v. Maryland,* 366 U.S. 420, 429 (1961) and *U.S. v. Raines,* 362 U.S. 127, 21 (1960), respectively).

### i. The undertaking statute does not apply to state constitutional claims.

The first rule of standing requires that a plaintiff seeking judicial relief must satisfy the court the plaintiff has or will suffer harm.  Respecting the undertaking statute, Plaintiffs cannot do so.  Namely, in 2011, in *Jensen v. Cunningham*, 2011 UT 17, 250 P.3d 465, the Utah Supreme Court held that the Utah Governmental Immunity Act, of with the undertaking statute is a necessary part, "does not apply" to state constitutional claims. *Id.* 2011 UT 17, ¶ 51 (citing *Spackman,* 2000 UT 87, ¶ 20 n.7; *Bott v. Deland*, 922 P.2d 732, 736 (Utah 1996)).  The text of the undertaking statute reiterates the wisdom of that ruling.  On its face, Utah Code § 63G-7-601 applies only to "action[s] brought under" the Act.  Actions brought under the Utah Constitution are not actions under the Governmental Immunity Act.  Consequently, the undertaking statute plainly does not apply here. But as to that statute, Plaintiffs can show no harm, and therefore cannot establish they have standing.  To this end, Plaintiffs' third cause of action is without basis and should simply be dismissed.

### ii. Plaintiffs have not alleged harm under the bond statute.

Consistently, Plaintiffs couch their third cause of action in monetary terms, alleging that "access to money alone determines whether Plaintiffs in this action, and similarly situated plaintiffs in other actions, get into court at all."  Amend. Compl. ¶¶ 84, 80. Plaintiffs, however, have not in turn alleged nor shown any undue financial burden to them.  This lack is Plaintiffs' doom.

Addressing a similar circumstance, the Utah Supreme Court in *Hoyle v. Monson,* found that plaintiffs, who were also not impecunious, lacked standing to challenge the constitutionality of a filing fee statute because the statute did nothing to deny plaintiffs access to the courts. Reaching that conclusion, the Court offered that "the right and power of the judiciary to declare whether legislative enactments exceed constitutional limitations is to be exercised with considerable restraint and in conformity with fundamental rules." *Hoyle,* 606 P.2d at 242. "One such rule," the court stated "is that unnecessary decisions are to be avoided and that the courts should pass upon the constitutionality of a statute only when such a determination is essential to the decision" at hand. *Id.* Here, it is not. But a constitutional question cannot exist in a vacuum; rather a valid question exists only when the person who raises it has standing to do so:

> A constitutional question does not arise merely because it is raised and a decision is sought thereon; rather, the constitutionality of a statute is to be considered in [] light of the standing of the one who seeks raise [it]. An attack on the validity of a statute cannot be made by parties whose interests have not been, and are not about to be, prejudiced by operation of the statute.

*Id.* Here, Plaintiffs have not even begun to make that showing.

But in *Hoyle* just as here, the validity of the statute turns, in part, on Plaintiffs' financial status – something Plaintiffs have not put at issue. But at the outset of this matter – nearly one year ago, Plaintiffs paid into the Court the sum of $300 as required under the bond statute and directed by DUCivR 67-1(c).[8] On doing so, Plaintiffs did not then claim, nor in their amended

---

[8] That rule provides: "In any case involving a civil action against the State of Utah, its officers, or its governmental entities, for which the filing of a written undertaking or cost bond is required by state law as a condition of proceeding with such an action, the clerk of court may accept an undertaking or bond at the time the complaint is filed in an amount not less than $300.00. The court may review, fix, and adjust the amount of the required undertaking or bond as provided by law. The court may dismiss without prejudice any applicable case in which the required undertaking or bond is not timely filed." DUCivR. 67-1(c). At the time of the filing of their

complaint now contend, paying this sum harmed them financially.  But absent any showing or allegation that establishes Plaintiffs' lack of financial resources, it is not necessary for this Court to reach the constitutionality of the bond statute.  Here, Plaintiffs' lack standing to mount such a challenge, and "it is not sufficient that, at some future time, an application of the statute might infringe upon the constitutional rights of differently situated persons."  *Id; see also Ferber,* 458 U.S. at 758.   Based on Plaintiffs' wholesale lack of standing to maintain this claim, Plaintiffs' third cause of action must be dismissed.

## CONCLUSION

For the reasons and arguments set forth above, Defendants respectfully submit dismissal of the individual plaintiffs and claims as set forth above.

Respectfully submitted this 20th day of February, 2019.

Sim Gill
SALT LAKE COUNTY DISTRICT ATTORNEY

/s/ Jacque M. Ramos
Jacque M. Ramos
Tajha Ferrara
Deputy District Attorneys

---

original complaint and in accordance with this rule, Plaintiffs paid into the Court the sum of $600 - $300 in furtherance of the bond statute and $300 as reflected in the undertaking statute.  At no time have Defendants nor the Court asked that the amount paid under the bond statute be reviewed or fixed at a higher rate.

## CERTIFICATE OF SERVICE

I certify that on February 20, 2019, a true and correct copy of the foregoing Salt Lake

County's Partial Motion to Dismiss was electronically filed with the Clerk of the Court, utilizing

the Court's CM/ECF electronic filing system.

Ross C. Anderson
Walter Mason
LAW OFFICES OF ROCKY ANDERSON
The Judge Building
8 East Broadway, Suite 450
Salt Lake City, Utah 84111
rocky@andersonlawoffices.org
walter@andersonlawoffices.org

/s/ Iris Pittman
Paralegal