IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CALVIN DONALD OSTLER, individually and as personal representative of the Estate of Lisa Marie Ostler, KIM OSTLER, and the minor children of Lisa Marie Ostler, C.K., E.L.K., and L.M.O., through their adoptive parents and next friends, CALVIN DONALD OSTLER and KIM OSTLER, <br><br>Plaintiffs, <br><br>v. <br><br>HOLLY PATRICE HARRIS, ZACHARY PAUL FREDERICKSON, TODD ALLAN BOOTH, TODD RANDALL WILCOX, M.D., RONALD PAUL SEEWER, JR., BRENT LEE TUCKER, JAMES M. WINDER, PAM LOFGREEN, RICHARD BELL, JOHN DOE, whose true name is unknown, and SALT LAKE COUNTY, a political subdivision of the State of Utah, <br><br>Defendants. | **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** <br><br><br>Case No. 2:18-cv-00254 <br><br><br>Judge: Bruce S. Jenkins |

Before the court is Plaintiff's[1] Motion for Leave to File a Second Amended Complaint (ECF No. 165). Defendants filed an objection. After the Motion was fully briefed and oral argument was heard on August 9, 2019, with Ross Anderson and Walter Mason appearing for Plaintiff and Jacque Ramos appearing for Defendants, the court took the matter under advisement. Having considered the written and oral arguments as well as the relevant law, the court hereby DENIES the Motion to the extent it attempts to reinstate previously dismissed

---

[1] The Estate is the only remaining Plaintiff at this point. In their briefing, the parties use Plaintiffs, plural, to reflect the desire to reinstate certain heirs as plaintiffs. However, the court uses the singular to reflect the accurate state of litigation.

1

plaintiffs and defendants. The court, however, GRANTS leave for Plaintiff (the Estate) to file the proposed amendments as they relate to its *Monell* claim against Salt Lake County.

## BACKGROUND

On April 26, 2019, the court dismissed without prejudice certain plaintiffs and defendants from this action. *See* Mem. Op. Order, ECF No. 139. It affirmed that decision and clarified its reasoning for doing so on June 7, 2019. *See* Am. Mem. Op. Order, ECF No. 163. Through their Motion and Proposed Second Amended Complaint, Plaintiff seeks to reinstate (1) decedent Lisa Ostler's parents and children (the Heirs) as plaintiffs, and (2) Chief Deputy Pam Lofgreen and Responsible Health Authority Richard Bell (the Supervisors) as defendants in their individual capacities. Plaintiff asserts that the proposed amendments relating to the Heirs and Supervisors clarify the claims and resolve pleading deficiencies previously identified by the court.

## DISCUSSION

The court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the court may deny leave in its discretion if there is "undue delay, undue prejudice to the opposing party, . . . or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). Defendants raise these three reasons for the court to deny leave to amend.

### I. Undue Delay

In the Tenth Circuit, when a court examines "undue delay," emphasis is on the adjective—undue. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). To this end, courts focus "primarily on the reasons for delay." *Id.* at 1206. Here, although Defendants argue the Motion could have and should have been filed sooner, Plaintiff counters that Defendants and their belated disclosures are the reason for delay, so it is not undue.

2

The court finds Plaintiff's Motion is timely as it was filed two weeks after the court's amended order dismissing the Heirs and one month after Plaintiff received Defendants' belated disclosures. It is concerning that Defendants' documents still trickle in, even on the morning of oral argument when discovery had closed more than two months prior. Defendants claim they have attempted full compliance with discovery requests despite several setbacks, but it is clear these best efforts have fallen short. For example, Defendants acknowledged at oral argument that they have not fully complied with the court's discovery order entered nearly six months ago. *See* Order on Pls.' Mot. Compel, ECF No. 77. Once Plaintiff received belated disclosures, it acted quickly and accordingly to file this Motion, without undue delay.

## II.     Undue Prejudice

Like undue delay, courts examine whether any prejudice from granting leave would be "undue" to the defendants, meaning the amendments would "unfairly" affect their ability to prepare a defense. *Minter*, 451 F.3d at 1208. This occurs when a plaintiff raises "an entirely new and different claim" or "significant new factual issues." *Id.* Here, Defendants argue Plaintiff raises a new claim and new factual issues that cannot be addressed now that discovery is closed. Yet in Plaintiff's view, there are no new claims or new factual issues.

The court finds Plaintiff raises a new claim as to the Heirs, but it is not so new that Defendants were not on notice of it. As well, Plaintiff added about forty-three pages of new factual allegations as to the Supervisors, but this is not—or should not be—new information to Defendants. The information was at all times known to Defendants or could have been known through reasonably diligent research into the claims against them. Because Defendants have been on notice of the claims and factual issues from the beginning, there is no undue prejudice by amendment.

3

### III. Futility of Amendment

An amendment to a claim is futile if the claim would not survive a motion to dismiss. *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). The court, therefore, analyzes a motion to amend through a motion-to-dismiss lens: It takes all "well-pleaded facts" as true but need not consider "[t]hreadbare recitals of the elements," "mere conclusory statements," and "legal conclusion[s] couched as fact." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Further, although all reasonable inferences are drawn in the plaintiff's favor, ultimately the proposed complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

*A. Amendments to Reinstate the Heirs as Plaintiffs*

The court previously dismissed the Heirs for failure to claim damages for alleged violations of their own constitutional rights, but the court noted that *Berry v. City of Muskogee*, 900 F.2d 1489 (10th Cir. 1990), "does not foreclose wrongful death actions [for heirs] brought as 'pendent state claims.'" ECF No. 163 at 6, n.4. Plaintiff argues the Proposed Second Amended Complaint clarifies that the Heirs were and are pursuing these "pendent state wrongful death claims." ECF No. 165 at 8, n.7. Specifically, Plaintiff has added a reference to Utah's wrongful death statute under the Second Cause of Action, which otherwise asserts violations of Lisa's rights under the Utah Constitution.

The Heirs as Proposed Plaintiffs still do not allege violation of their own Utah constitutional rights. Rather, they allege that violations of Lisa's constitutional rights give the Heirs a statutory wrongful death claim. Under Utah's wrongful death statute, an heir must allege a relative's death was caused by the "wrongful act" of another. Utah Code § 78B-3-106. Here,

4

Lisa's death was allegedly caused by the "wrongful act" of Defendants "violat[ing] her constitutional rights." ECF No. 165 at 8.

The Heirs as Proposed Plaintiffs concede, however, that the wrongful death statute does not preclude ordinary defenses such as immunity. As Defendants note, Utah's Governmental Immunity Act (the UGIA) would bar a statutory wrongful death claim in this action. The Proposed Plaintiffs attempt to circumvent that bar by arguing the UGIA does not apply if they allege violations of *Lisa's* state constitutional rights as a cause of her death. For this they cite *Jensen ex rel. Jensen v. Cunningham*: "[The UGIA] does not apply to claims alleging state constitutional violations." 250 P.3d 465, 479 (Utah 2011). But *Jensen* involved plaintiffs alleging violations of their *own* rights, not the rights of another such as Lisa. *Id.* at 481. The Proposed Plaintiffs also cite two cases—*Tiscareno v. Anderson*, 421 Fed. App'x 842 (10th Cir. 2011) and *Brock v. Herbert*, 435 Fed. App'x 759 (10th Cir. 2011)—for the proposition that *Jensen* is not limited to its facts, suggesting *Jensen*'s holding could be extended to heirs asserting the constitutional rights of another. The court rejects this argument for three reasons. First, *Tiscareno* and *Brock* also involved plaintiffs alleging violations of their own constitutional rights. Second, both are unpublished cases. Third, *Tiscareno* itself expressly acknowledges "it is within the district court's discretion to continue to exercise jurisdiction in [a] pendent state matter." *Tiscareno*, 421 Fed. App'x at *1, n.1. When pressed at oral argument, the Heirs as Proposed Plaintiffs concede they have found no on-point authority supporting their view that a statutory wrongful death claim, otherwise barred, is not barred if based on alleged violations of a deceased relative's constitutional rights. The court also cannot find any on-point authority.

The Proposed Plaintiffs ask the court to make a novel statutory interpretation—that there is no governmental immunity defense so long as a plaintiff alleges a violation of another's constitutional right. Law and logic suggest against such a sweeping interpretation.

First, the court considers the plain language of the UGIA, the Utah Constitution, and Utah Supreme Court decisions. Through the UGIA, the State codified its consent to be sued in certain circumstances. It plainly did not consent to statute-based wrongful death actions arising out of incarceration. *See* Utah Code § 63G-7-201(4)(j) (retaining immunity where injury occurred during incarceration in a county jail). And although the Utah Constitution provides an alternative, a constitution-based claim for wrongful death, that action too is limited by plain language: "The right of action to recover damages for injuries resulting in death, shall never be abrogated . . . *except in cases where compensation for injuries resulting in death is provided for by law.*" Utah Const. Art. XVI, § 5 (emphasis added). Compensation is provided by law in Utah's wrongful death statute, which is then subject to the UGIA. In a case challenging the UGIA as allegedly abrogating this constitutional provision, the Utah Supreme Court held the State's immunity bars a constitutional wrongful death claim. *See Tiede v. State*, 915 P.2d 500, 504 (Utah 1996). The Court later that year again faced the question of immunity, this time against an unnecessary rigor claim, one of the same claims raised here by Lisa's Estate and vicariously by the Heirs. But the Court there expressly noted that a plaintiff's ability to bypass governmental immunity depends on alleged violations of "his" own constitutional rights. *Bott v. DeLand*, 922 P.2d 732, 736 (Utah 1996) *overruled on other grounds by Spackman ex rel. Spackman v. Bd. of Educ.*, 16 P.3d 533 (Utah 2000). In short, the law has closed the door the Proposed Plaintiffs seek to open. Allowing their claims to enter through a backdoor in provisions

for due process and unnecessary rigor—provisions based on another's constitutional rights—would undermine determinations by Utah's Legislature and its highest court.

Lastly, the Proposed Plaintiffs' interpretation reaches too far in logic. On the one hand they insist the Heirs' statutory claim is separate from a constitutional claim, citing *Kinzer v. Metro. Gov't of Nashville*, 451 F. Supp. 2d 931 (M.D. Tenn. 2006), on the other hand their argument conflates the two claims, seeking the best of both worlds without the worst of either. A statutory wrongful death claim is held by the Heirs but barred here by the UGIA. Constitutional due process and unnecessary rigor claims are not barred by the UGIA but are held by Lisa alone. Yet the Proposed Plaintiffs seek a claim held by the Heirs and exempt from the limitations of the UGIA. Of the two claims that do exist, they are not to be conflated. They have different foundations (in statute vs. constitution), different elements (based on another's injury vs. one's own), different effects under the UGIA (barred vs. not), and different corresponding case law (cases interpreting one do not necessarily implicate the other).

For these reasons, the court concludes the Heirs as Proposed Plaintiffs allege a statutory wrongful death claim, but that claim is barred by the UGIA. *See* Utah Code § 63G-7-201(4)(j). This is consistent with *Berry* and *Kinzer*: A plaintiff may raise pendent state claims but must still plausibly plead and surmount defenses like immunity. Because the Heirs as Proposed Plaintiffs have not done so, the proposed amendments reinstating them are futile.

*B. Amendments to Reinstate the Supervisors as Defendants*

The court previously dismissed four Supervisor Defendants, including Bell and Lofgreen, for Plaintiff's failure to allege "affirmative links" between those Defendants' alleged misconduct

and the violation of Lisa's federal constitutional right to due process. ECF No. 163 at 3. Plaintiff argues it has now shown the "affirmative links" for Bell and Lofgreen. ECF No. 165 at 1.

To establish an "affirmative link" for supervisory liability, Plaintiff must plausibly allege a supervisor's (1) personal involvement, (2) causation, and (3) state of mind. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). The Proposed Second Amended Complaint hits two out of these three targets. First, personal involvement is plausibly alleged, as Plaintiff details several problematic policies, customs, and failures to train and supervise over forty-three new pages. Second, causation is alleged as well because these policies, customs, and failures "set in motion a series of events" the Supervisors "knew or should have known" could cause constitutional violations, specifically, inadequate medical care for pretrial detainees with a history of gastrointestinal conditions and substance abuse, like Lisa. *Id.* at 678.

However, Plaintiff's allegations of state of mind fall short of the Tenth Circuit standard. The state of mind for a substantive due process claim, as raised here under the Fourteenth Amendment, is "deliberate indifference," a "stringent" standard of fault. *Id.* at 679. In 2018 the Tenth Circuit charted its three elements: (1) the supervisor must have been "aware of facts" from which the inference could be drawn that "a substantial risk of serious harm" existed; (2) "he actually drew that inference," and (3) he was "aware of and fail[ed] to take reasonable steps to alleviate the risk." *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018); *Arocho v. Nafziger*, 367 Fed. App'x 942, 956 (10th Cir. 2010) ("The traditional standard for supervisory liability in this circuit requires . . . actual knowledge and acquiescence.") (internal marks omitted).[2] In line with the *Perry* test, over the last two decades the Tenth Circuit has consistently

---

[2] The deliberate indifference analysis for Fourteenth Amendment claims is "identical" to § 1983 claims under the Eighth Amendment. *Perry*, 892 F.3d at 1122. Accordingly, the court relies on both Fourteenth and Eighth Amendment cases in its analysis.

8

found supervisors were aware of a risk to inmates when the allegations or the circumstantial evidence indicated a supervisor was exposed to prior complaints,[3] prior similar incidents,[4] prior reports or audits,[5] or prior notice of the plaintiff's condition or vulnerabilities.[6] In short, the supervisor must have been somehow "informed" of the particular alleged risk to inmates like the plaintiff. *Crocker v. Glanz*, 752 Fed. App'x 564, 569 (10th Cir. 2018). When this awareness was not sufficiently alleged, the Tenth Circuit has affirmed dismissal,[7] or it has reversed and remanded for the district court to dismiss.[8]

Here, analyzing Plaintiff's allegations in light of the elements required to show deliberate indifference, Plaintiff repeatedly alleges the Supervisors did not alleviate risks despite their duties to do so, but they fail to plausibly allege two necessary elements: that Bell and Lofgreen were each aware of *facts* suggesting a substantial *risk* to inmates and that they actually *acknowledged* that risk before disregarding it. Instead, all allusions into the Supervisors' state of mind are conclusory or insufficient, as the facts cited would not put the Supervisors on notice of a risk to inmates with a history of gastrointestinal issues and substance abuse, like Lisa. Because the proposed amendments are extensive and detailed, the court takes a similar approach to address them below.

---

[3] *See, e.g., Perry v. Durborow*, 892 F.3d 1116, 1119 (10th Cir. 2018); *Keith v. Koerner*, 843 F.3d 833, 849 (10th Cir. 2016); *Tafoya v. Salazar*, 516 F.3d 912, 917 (10th Cir. 2008).
[4] *See, e.g., Poore v. Glanz*, 724 Fed. App'x 635, 640 (10th Cir. 2018); *Keith v. Koerner*, 707 F.3d 1185, 1189 (10th Cir. 2013); *Tafoya*, 516 F.3d at 917.
[5] *See, e.g., Keith v. Koerner*, 707 F.3d 1185, 1189 (10th Cir. 2013); *Layton v. Bd. of Cty. Comm'rs of Oklahoma Cty.*, 512 Fed. App'x 861, 864 (10th Cir. 2013).
[6] *See, e.g., Poore*, 724 Fed. App'x at 640 (10th Cir. 2018); *Arocho v. Nafziger*, 367 Fed. App'x 942, 952 (10th Cir. 2010).
[7] *See, e.g., Peterson v. Creany*, 680 Fed. App'x 692, 696 (10th Cir. 2017); *Krug v. Kastner*, 661 Fed. App'x 507, 509 (10th Cir. 2016); *Arocho*, 367 Fed. App'x at 955.
[8] *See, e.g., Crocker v. Glanz*, 752 Fed. App'x 564, 569 (10th Cir. 2018); *Vega v. Davis*, 572 Fed. App'x 611, 619 (10th Cir. 2014).

| Allegations of State of Mind | Pleading Deficiencies |
|---|---|
| Plaintiff repeats throughout that the Supervisors acted "with deliberate indifference" when failing to train, supervise, or remedy certain policies and customs. Pls.' Prop. Sec. Am. Compl. ¶ 56, 59, 63–64, 67–68, 78, 84, 96, 100, 102, 104, 108, 111, 115, ECF No. 165-1. | Other than "[t]hreadbare recitals" of an element and "legal conclusion[s] couched as fact," *Iqbal*, 556 U.S. at 678–79 (2009), Plaintiff does not also assert the Supervisors were aware of facts suggesting substantial risk to inmates, such as prior complaints, prior instances of injury, prior audits, or prior notice of Lisa's susceptibility to abdominal pain. *See Vega v. Davis*, 572 Fed. App'x 611, 618 (10th Cir. 2014) (holding plaintiff's allegations—that warden "knew about or was willfully ignorant of" the plaintiff's serious medical needs yet "failed and refused" to address them—were "not supported by facts, and thus not presumed to be true"); *cf. Arocho v. Nafziger*, 367 Fed. App'x 942, 952 (10th Cir. 2010) (holding "the facts alleged make out a plausible case of deliberate indifference" where prison director "knew" of plaintiff's "serious disease" yet he refused to approve treatment); *Tafoya v. Salazar*, 516 F.3d 912, 917 (10th Cir. 2008) (noting sheriff was "aware" of a sexual assault risk because he knew of prior sexual assaults at the prison).[9] |
| Lofgreen allegedly "knew" that the policies, customs, and failures would cause employees to violate rights, and she "knowingly failed" to properly train her staff on how to recognize life-threatening abdominal conditions. ECF No. 165-1 at ¶ 105, 132. | Without more, the allegations are "naked assertions devoid of further factual enhancement." *Peterson v. Creany*, 680 Fed. App'x 692, 696 (10th Cir. 2017) (holding allegations were "conclusory" where plaintiff stated "only that [the health services administrator] had failed to properly supervise his staff"); *see Arocho*, 367 Fed. App'x at 956 (holding, despite allegations that warden "was in position to correct plaintiff's rights violation and failed to do so," "there [were] no facts to suggest the [warden] knew of and acquiesced in any act of deliberate indifference by [his subordinates]."). |

---

[9] The court here and elsewhere occasionally cites cases decided at the summary-judgment stage but cites them "for the relevant § 1983 standards for legal liability, not for the procedural review standards used to determine if a § 1983 complaint is subject to dismissal." *Soto for estate of Jimenez v. Bd. of Cty. Commissioners of Caddo Cty., Okla.*, 748 Fed. App'x 790, 794 (10th Cir. 2018) (holding district court did not misapply Rule 12(b)(6) standard when relying on some summary-judgment cases).

10

| | |
|---|---|
| Plaintiff alleges the policies and customs themselves "reflect" or "demonstrate" the Supervisors' deliberate indifference. ECF No. 165-1 at 125, 128. The "gross deficiencies" in medical care also "demonstrated [the Supervisors] deliberate disregard for a known" risk to Lisa and others. *Id.* at ¶ 136. | There are no allegations that the Supervisors had reason to know of gross deficiencies in medical care or that policies and customs were putting inmates like Lisa at a "known" risk. *See Krug v. Kastner*, 661 Fed. App'x 507, 509 (10th Cir. 2016) (holding plaintiff failed to allege warden's deliberate indifference because pleadings made "no allegation that any other inmate had complained" about the temperature policy and "never alleged that the warden had reason to know about [plaintiff's] susceptibility to the cold"); *cf. Layton v. Bd. of Cty. Comm'rs of Oklahoma Cty.*, 512 Fed. App'x 861, 864 (10th Cir. 2013) (noting sheriff was aware of "several [reports]—all of which involve matters preceding [plaintiff's] death—that evince deficiencies in medical care"). |
| Plaintiff alleges the Supervisors condoned customs that contravened official policy, arguing this shows their deliberate indifference. ECF No. 165-1 at ¶ 70, 74, 111–13, 116. | Although contravening policies could put inmates at risk, Plaintiff does not allege that the Supervisors knew of facts suggesting the condoned customs created that risk. *Cf. Perry*, 892 F.3d at 1119, 1122 (noting sheriff knew of sexual assault risk because he knew that male officers regularly entered female pods, despite contrary to policy, as well as knew of a prior complaint of sexual assault and "blind spots" in the surveillance system). |
| Plaintiff alleges that Bell, knowing of Lisa's death, did nothing to change the policies or customs, suggesting his deliberate indifference. ECF No. 165-1 at ¶ 58. | This alleges Bell at least became aware of a risk after Lisa's death. It does not allege that he was on notice of a risk to Lisa or others *before* her death. *See Peterson*, 680 Fed. App'x at 696 (noting allegations against the responsible health authority, that he did "nothing after learning of [plaintiff receiving a harmful] prescription," were too "conclusory" and "insufficient to allow the reasonable inference that [he] incurs liability under § 1983"). |
| Plaintiff lists several other inmates who died or were seriously injured at the jail. ECF No. 165-1 at ¶ 137. | Some instances are not similar to put the Supervisors on notice of a risk to inmates like Lisa—*e.g.*, a death by inmate attack is unlike death by inadequate medical care. And for the similar instances, there is no allegation that they happened *before* Lisa's death such that the Supervisors were "on notice" of a similar risk to Lisa and others. *Tafoya v. Salazar*, 516 F.3d at 917; *cf. Keith v. Koerner*, 707 F.3d 1185, 1189 (10th Cir. 2013) (holding plaintiff plausibly alleged deliberate indifference where prison warden "was aware of multiple incidents of unlawful sexual conduct" preceding plaintiff's rape). |

11

| Plaintiff alleges Bell disregarded an "obvious risk." ECF No. 165-1 at 136. And Lofgreen "reasonably should have known," that the policies, customs, and failures would cause employees to violate rights. *Id.* at ¶ 132. | Even if a risk was obvious to others, there are no facts to suggest it was obvious to Bell. *See Tafoya*, 516 F.3d at 916 ("An official's failure to alleviate a significant risk of which he was unaware, *no matter how obvious the risk* or how gross his negligence in failing to perceive it, is not . . . a constitutional violation.") (emphasis added). And alleging that Lofgreen "should have known" confuses the supervisory liability standard with the one for municipal liability. *See Barney v. Pulsipher*, 143 F.3d 1299, 1308 n.5 (10th Cir. 1998) ("In the prison conditions context, deliberate indifference is a subjective standard requiring actual knowledge of a risk by the official. In the municipal liability context, deliberate indifference is an objective standard which is satisfied if the risk is so obvious that the official should have known of it."). |

In sum, what is alleged is insufficient, what is not alleged is telling. Plaintiff does not allege that the Supervisors knew of prior complaints, prior instances of inadequate medical care for abdominal pain, or prior audits suggesting deficiencies in the Jail's medical care. Plaintiff does not allege that the Supervisors knew of Lisa's gastrointestinal condition or the events leading up to her death, *e.g.*, if a nurse told Bell of Lisa's complaints. To the contrary, it is alleged at least as to Bell, "nothing indicated [to him] that Lisa was experiencing a medical emergency." ECF No. 165-1 at ¶ 72(a). Thus, the Proposed Second Amended Complaint does not allege enough "factual content" for the court to "draw the reasonable inference" that the Supervisors had the actual knowledge required for deliberate indifference and are therefore "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Because the § 1983 claim for supervisory liability would not survive a motion to dismiss, the amendments as to the Supervisors are futile.

However, the proposed amendments go beyond Plaintiff's claims for supervisory liability; they also affect the *Monell* claim for municipal liability. Municipal liability requires "an official policy or custom," which may include "a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider*, 717 F.3d at 769. Although the court

concludes the proposed amendments would be futile against the Supervisors, they may not be futile against the County. Therefore, the proposed amendments should proceed against the County subject to further review, should Defendants choose to raise the issue.

## ORDER

Plaintiff's Motion is DENIED to the extent it attempts to reinstate the previously dismissed Heirs and Supervisors as Proposed Parties. It is GRANTED to the extent the proposed amendments support Plaintiff's *Monell* claim against the County.

**IT IS SO ORDERED.**

DATED this 9th day of September, 2019.

Hon. Bruce S. Jenkins
United States District Court, District of Utah